# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| No. 23-3758 | No. 23-3760 |
|---|---|
| WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, | WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, |
| Plaintiffs-Appellees, | Plaintiffs-Appellees, |
| vs. | vs. |
| SHELBY COUNTY, IOWA, et al., | STORY COUNTY, IOWA, et al., |
| Defendants-Appellants. | Defendants-Appellants. |

Appeal from the United States District Court for the
Southern District of Iowa

(1:22-cv-00020-SMR)
(4:22-cv-00383-SMR)

---

**ADDENDUM**

---

Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515 243-7611
Facsimile: 515-243-2149
jcraig@ahlerslaw.com
ATTORNEYS FOR
DEFENDANTS-APPELLANTS

**ADD-1**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify on April 23, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
jcraig@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS-APPELLANTS

**ADD-2**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SHELBY COUNTY IOWA, SHELBY COUNTY BOARD OF SUPERVISORS, STEVE KENKEL, in his official capacity as a Shelby County Supervisor, CHARLES PARKHURST, in his official capacity as a Shelby County Supervisor, and DARIN HAAKE, in his official capacity as a Shelby County Supervisor,<br><br>　　　　Defendants. | Case No. 1:22-cv-00020-SMR-SBJ<br><br>ORDER ON MOTION FOR PRELIMINARY INJUNCTION |

Last year, the Shelby County Board of Supervisors ("the Board") promulgated Shelby County Ordinance 2022-4 ("the Ordinance") in response to planned construction of a hazardous liquid pipeline. Plaintiffs filed this suit to enjoin enforcement of the Ordinance on the grounds that it is preempted by federal and state law. When the Board sought to enforce the Ordinance, Plaintiffs filed a Motion for Preliminary Injunction to prevent its enforcement. For the reasons discussed in detail below, the Motion is GRANTED.

## I.　　BACKGROUND

### A. Carbon Capture Technology in Iowa

The State of Iowa produces a significant volume of corn, much of which is used to produce ethanol through a fermentation process. [ECF No. 26 at 9]. Many byproducts are created during this process, including carbon dioxide ("$CO_2$"). [ECF No. 26-1 at 3 (Pirolli Decl.)]. This $CO_2$ can be captured at the time of generation, transported to another location, and stored through a carbon

capture and sequestration procedure ("CCS").  *Id.*  CCS technology uses an extensive network of pipelines to transport the captured $CO_2$ from its original location to its desired destination.  *Id.*

Plaintiff Summit Carbon Solutions, LLC ("Summit") is developing an interstate network of pipelines "to implement CCS technology" in the Midwest.  [ECF No. 26-1 at 3].  This project will transport $CO_2$ from thirty-one facilities, including twelve ethanol and fertilizer plants located in Iowa, to various destinations.  [ECF Nos. 26-1 at 3; 47-2 at 1–2].  The proposed project will lead to the construction of more than six hundred and fifty miles of pipeline across thirty counties, including Shelby County.  [ECF No. 47-2 at 2].  The proposed pipeline will cross both private and public land in Shelby County.  *Id.* at 7.

### B.  *Application Process with the Iowa Utilities Board*

The process for constructing the proposed pipeline began when Summit held informational meetings in each of the thirty counties identified as being impacted by the project, which included Shelby County.  [ECF No. 26-1 at 4].  After the meetings, Summit filed a Petition for a Hazardous Liquid Pipeline Permit with the Iowa Utilities Board ("IUB") on January 28, 2022.  *See* [ECF No. 47-1].  The application included a description of the "proposed main line route," identified the watersheds that may be impacted, and described the facilities along the proposed route.  [ECF No. 47-2 at 8].  It explained how the applicant "performed extensive analyses utilizing Geographic Information Systems . . . to avoid or minimize features identified as moderate risk, and exclude features identified as high risk."  *Id.*  It provided "an explanation of the purpose of the project" and the "products carried" in the pipelines.  [ECF No. 47-1 at 2].  The permit application has also been involved in extensive administrative proceedings before the IUB since its submission.[1]

---

[1] The docket for the proceeding before the Iowa Utilities Board may be found at this link: https://efs.iowa.gov/efs/ShowDocketSummary.do?docketNumber=HLP-2021-0001

**ADD-4**

Appellate Case: 23-3760     Page: 4     Date Filed: 04/24/2024 Entry ID: 5386923

*C.  Enactment of the Shelby County Ordinance*

While the IUB proceedings were ongoing, residents of Shelby County submitted a petition to the Board requesting that it implement an ordinance regulating hazardous liquid pipelines.  [ECF No. 30-1 at 60–77].  The Board referred the petition to the Shelby County Planning and Zoning Commission on August 16, 2022.  [ECF No. 30-1 at 29 (Notice)].  The Commission conducted a hearing on the proposed ordinance on September 23, 2022.[2]  [ECF No. 30-1 at 6–14 (Minutes of the Commission Meeting), 30].  The Planning and Zoning Commission drafted a report to the Board, explaining that the Board should adopt a zoning ordinance to address community concerns about the impact and safety of the pipeline.  [ECF No. 30-1 at 121–125].

Following this report, the Board conducted three hearings on a proposed ordinance, which were held on October 18, October 25, and November 1, 2022.  [ECF No. 30-1 at 32–45, 46–57, 250–63 (Minutes)].  The Board officially approved the proposal at the last meeting.  *Id.* at 263.  The Ordinance went into effect on November 11, 2022 upon publication in the official papers of record in Shelby County.  [ECF No. 30-1 at 120 (Proof of Publication)].

*D.  Components of the Challenged Ordinance*

The Ordinance contains numerous sections that are directly challenged by Plaintiffs and are relevant to the Motion for Preliminary Injunction.  The Court briefly reviews each below.

i.  Introductory Section

The Ordinance begins by identifying the federal and state laws governing the transportation of hazardous liquids.  [ECF No. 26-2 at 3].   The Ordinance then explicitly names Summit in its text, explaining Summit has "submitted to the IUB a Petition for a Hazardous Liquide Pipeline

---

[2] Community members provided spoken and written comments in support of the proposal. [ECF No. 30-1 at 6–14, 130–138, 221–230].

ADD-5

Permit" and "the IUB has not yet issued a permit to the Company." *Id.* at 4. After identifying Summit, the next few lines of the Ordinance expressly state how the pipeline "would influence human safety in the event of a rupture." *Id.* The Ordinance declares a pipeline rupture "could threaten the health and lives of county residents, emergency response personnel, and animals" by asphyxiation or poisoning. *Id.* Based on the stated concerns, the Ordinance concludes the pipeline is a safety risk that should be regulated based on the framework described therein. *Id.*

### ii.  Conditional Use Structure

The Ordinance creates a "conditional use class" for all hazardous liquid pipelines in Shelby County. [ECF No. 26-2 at 10]. Under the conditional use class, "no land or property interest in the County, regardless of the zone or area, shall be used for purposes of a Hazardous Liquid Pipeline except in conformity with this Article." *Id.* To conform with the Ordinance, landowners and pipeline companies must apply for and receive a conditional use permit. *Id.*

### iii.  Conditional Use Permits for Pipeline Companies

Under the Ordinance, a pipeline company seeking to "construct, maintain, or operate a new Pipeline . . . in th[e] County shall submit an Application to the County Zoning Administrator for a conditional use permit." [ECF No. 26-2 at 10]. The pipeline company must include its complete IUB application, maps identifying the impacted county residents and roadways, dimensions of the pipeline, information on compliance with abandonment and removal requirements, an emergency response and hazard mitigation plan, the written template that will be used to negotiate easements with landowners in the County, and certain fees. *Id.* at 11–12. Under the Ordinance, the application must be submitted to the Board within seven days of the pipeline company filing its petition for a permit with the IUB. *Id.* at 10.

**ADD-6**

Appellate Case: 23-3760   Page: 6   Date Filed: 04/24/2024 Entry ID: 5386923

After submission, the Ordinance tasks the Shelby County Zoning Administrator ("the Administrator") with verifying that "the Pipeline Company permit application requirements are met." [ECF No. 26-2 at 13]. Specifically, the Administrator "shall make a report to the Board of Adjustment recommending approval, denial, or modification of the Application." *Id.* The Board of Adjustment shall "set the date of one or more public hearings in the County on the question of granting a conditional use permit to the Pipeline Company." *Id.* "Once the application, public hearing, and other requirements of the Article are met, the Board of Adjustment shall consider each application." *Id.* If all "applicable standards are met . . . [t]he Board of Adjustment shall issue a permit." *Id.* The burden of proof is "on the Applicant for the conditional use permit." *Id.*

The Ordinance imposes certain fees for conditional use permits. [ECF No. 26-2 at 12]. For pipeline owners, the Ordinance requires payment of "$100 for each Affected Person identified in the application." *Id.* An affected person is "any Person with a legal right or interest in the property, including but not limited to a landowner, a contract purchaser of record, a Person possessing the property under a lease, a record lienholder, and a record encumbrancer of the property." *Id.* at 6. There is also "an annual assessment fee in the amount of $116.92 per mile of Pipeline constructed, operated, and maintained in the County or an amount equal to the most current user fee assessed to the operators of Hazardous Liquid Pipelines by PHMSA [the Pipeline and Hazardous Materials Safety Administration], whichever is greater." *Id.* The Ordinance explains that the secondary fee is used for "emergency planning and hazardous mitigation costs, including expenses for law enforcement and emergency response." *Id.*

### iv. Emergency Preparedness Requirements

As noted in the preceding section, an application for a conditional use permit by a pipeline company must include extensive information on emergency response and hazard mitigation. The

**ADD-7**

Appellate Case: 23-3760   Page: 7   Date Filed: 04/24/2024 Entry ID: 5386923

application must include "documentation of compliance with PHMSA regulations" if applicable. [ECF No. 26-2 at 14]. It should identify how the "Company will work with the County's law enforcement, emergency management personnel, and first responders in the event of a spill, leak, rupture, or other emergency." *Id.* If there are no application PHMSA regulations, a pipeline company must provide a map and description of the proposed route, a description of the health risks, an estimate of the worst-case scenario for a carbon discharge, a list of structures and facilities in a fallout zone, a list of "high consequence areas" where a rupture would be more likely to result in the loss of life, alternative routes through the county designed to minimize risk, and "all information needed by county first responders . . . to engage in local emergency management." *Id.* at 14–15. Lastly, the pipeline company may need to provide "a Carbon Dioxide Pipeline rupture emergency response training program" and equipment for "response personnel." *Id.* at 15.

v. Conditional Use Permits for Landowners

A landowner that "intends to negotiate or sell an easement to a Pipeline Company by means of an Independent Agreement shall submit an application to the County Zoning Administrator for a conditional use permit." [ECF No. 26-2 at 10]. The application must include "[t]he information required for a conditional use permit as described in section 4.151 of this Zoning Regulation, including all required forms." *Id.* at 12. The landowner must provide a "copy of the Independent Agreement the Property Owner proposes to execute with the Pipeline Company, including a map and a legal description of the proposed Line Location, and a statement of verification of compliance with the separation requirements." *Id.* The landowner must pay a fee. *Id.* at 13. The approval process for conditional use permits for landowners is similar to the one for pipeline companies; the primary difference is landowners do not face a public hearing. *Id.* Only after receiving approval can the landowner sign an Independent Agreement. *Id.* at 10.

6

vi.   Abandonment, Discontinuance, and Removal of Pipelines

Beyond the conditional use permit regime, the Ordinance requires a pipeline company who is granted a conditional use permit to "notify the County and all Affected Persons in the County of [its] intent to discontinue the use of the Pipeline."  [ECF No. 26-2 at 16].  The notice must be provided by certified mail and must state a "proposed date of discontinuance."  *Id.*  The Ordinance requires a pipeline owner to "offer to each property owner the option to have the Pipeline and all related facilities physically dismantled and removed, including both the below and above ground facilities."  *Id.*  The costs of removal and reclamation of the land are borne by the pipeline operator.  *Id.*  Once removal is complete, the Ordinance states that "the Pipeline Owner shall restore the land according to the requirements of Iowa Code § 479B.20."  *Id.*

vii.   Distance and Separation Requirements

The Ordinance provides minimum set-back requirements for the placement of pipelines. [ECF No. 26-2 at 10].  Under its terms, a hazardous liquid pipeline can be no less than two miles from the city limits of an incorporated city.  *Id.* at 11.  It may be no less than one half mile from a church, school, nursing home, long-term care facility, or hospital.  *Id.*  A pipeline must be at least one-quarter of a mile from a public park or recreation area.  *Id.*  Any project must be "not less than 1,000 feet" from a confined animal feeding operation, an electric power generating facility, an electric transmission substation, a public drinking water treatment plant, a public wastewater treatment facility, or an "occupied structure."  *Id.*  A proposed pipeline may not be within two hundred feet of "any public water system or any nonpublic water supply well."  *Id.*

II.     PROCEDURAL HISTORY

On November 15, 2022, Plaintiffs William Couser and Summit Carbon Solutions, LLC, filed this suit against Shelby County, Iowa, the Shelby County Board of Supervisors, and the

**ADD-9**

Appellate Case: 23-3760     Page: 9     Date Filed: 04/24/2024 Entry ID: 5386923

Shelby County Supervisors in their official capacities.  [ECF No. 1].  The lawsuit alleges that the Ordinance is preempted by the Pipeline Safety Act ("PSA"), a federal law regulating many aspects of pipeline safety, and Iowa Code § 479B, which provides the IUB with authority to issue permits approving the construction of pipelines.  *Id.* at 15–19.  Defendants filed a reply.  [ECF No. 16].

On January 26, 2023, the Shelby County Planning and Zoning Commission sent letters to local landowners.  [ECF No. 26-3].  The letters stated the landowners had recorded an easement conveying certain rights of access to property, but they had not received the appropriate conditional use permit prior to conveyance.  *Id.* at 2.  The letters explained that "the county may assess penalties against any person who violates the ordinance" and fine them $750.00 per day.  *Id.* at 3.  The notices concluded by stating, "[i]f the easement agreement is not terminated by 02/10/2023 in addition to the penalties described above, the county may seek involuntary termination of the easement agreement by a court."  *Id.*

On February 6, 2023, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction.  [ECF No. 23].  The Motion asked the Court to prohibit Shelby County from: "(1) enforcing Ordinance 2022-[4], (2) implementing any other ordinances on the permitting, construction, or development of Summit's pipeline project, and (3) implementing any ordinance or other regulation that regulates safety or permitting aspects of Summit's pipeline project."  *Id.* at 2.  The next day, the Court directed Defendants to file an expedited response.  [ECF No. 27].  After conferring, the parties agreed to the entry of a temporary restraining order until they could fully brief the relevant case law and facts.  [ECF Nos. 28; 29].

The parties briefed case law and provided relevant factual information over the next month.  [ECF Nos. 30; 33; 41].  On March 31, 2023, the Court held a hearing on the Motion for Preliminary Injunction in accordance with Federal Rule of Civil Procedure 65.  [ECF No. 46].  At the end of

8

argument, the Court asked the parties to provide more information on the scope of $CO_2$ that could be captured by the project. *Id.* The requested information was submitted. [ECF Nos. 47; 48].

Upon submission of these materials, the case is fully briefed and ready for review. For the reasons below, the Motion for Preliminary Injunction is GRANTED.

## III. GOVERNING LAW

### A. Article III Standing

Under Article III, Section II of the United States Constitution, the federal courts are limited to hearing disputes that present a "case" or "controversy." *Raines v. Byrd,* 521 U.S. 811, 818 (1997). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case, in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines*, 521 U.S. at 819). To establish constitutional standing, a party must demonstrate three elements: "(1) a plaintiff must have suffered an 'injury in fact' (2) that is 'fairly traceable to the challenged conduct,' and (3) is 'likely to be redressed by a favorable judicial decision.'" *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) (quotation omitted). "[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (citing *McCarney v. Ford Motor Co*., 657 F.2d 230, 233 (8th Cir. 1981)); *Iowa League of Cities v. E.P.A*., 711 F.3d 844, 869 (8th Cir. 2013) ("If a litigant lacks Article III standing to bring his claim, then [courts] have no subject matter jurisdiction over the suit."). Article III imposes an "independent obligation [on courts] to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp v. Friend*, 559 U.S. 77, 94 (2010) (citation omitted).

**ADD-11**

Appellate Case: 23-3760   Page: 11   Date Filed: 04/24/2024 Entry ID: 5386923

*B.   Preliminary Injunctions*

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008) (citation omitted).   District courts must consider four factors before granting a preliminary injunction:  "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other [] litigant[s]; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc).  "No single factor in itself is dispositive." *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).  However, the last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

*C.   Relationship Between Iowa Home Rule Authority and Preemption*

In 1978, an amendment to the Iowa Constitution granted local authorities the power "to determine their local affairs and government." *Goodell v. Humboldt Cnty.*, 575 N.W.2d 486, 492 (Iowa 1998) (quoting Iowa Const. art. III, § 39A).  This power, known as home rule authority, allows counties and local authorities to enact ordinances on matters of their choosing "unless a particular power has been denied [to] them by statute." *City of Des Moines v. Master Builders of Iowa*, 498 N.W.2d 702, 703–04 (Iowa 1993).  The Iowa Legislature may preempt or deny local municipalities authority to enact measures on certain subjects in an express or an implied manner. *Goodell*, 575 N.W.2d at 492.  Express preemption occurs when the Iowa Legislature has directly prohibited local action in an area. *Chelsea Theater Corp. v. City of Burlington*, 258 N.W.2d 372, 373 (Iowa 1977) (holding a law passed by the Iowa Legislature preempted local regulation of obscene materials because the statute imposed "uniform[ity].").  Implied preemption occurs if a municipality "prohibits an act permitted by a statute or permits an act prohibited by a statute." *City*

10

*of Des Moines v. Gruen*, 457 N.W.2d 340, 342 (Iowa 1990) (quotation omitted).  It may occur if the Legislature has "cover[ed] a subject by statutes in such a manner as to demonstrate a legislative intention that the field is preempted by state law."  *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 812 (Iowa 1983).

### D.  Iowa Regulation of Pipelines

The Iowa Legislature has enacted a statute to govern the construction of pipelines.  Iowa Code § 479B.1.  Under the statute, "[a] pipeline company shall not construct, maintain, or operate a pipeline or underground storage facility under, along, over, or across any public or private highways, grounds, waters, or streams of any kind . . . except in accordance with this chapter."  Iowa Code § 479B.3.  To receive permission to construct a pipeline, the company must "file a verified petition with the board asking for a permit to construct, maintain, and operate a new pipeline."  Iowa Code § 479B.4(1).[3]  The permit application must include a "legal description of the route of the proposed pipeline and a map of the route," "[a] general description of the public or private highways, grounds, waters, streams, and private lands of any kind," "the possible use of alternative routes," and "the relationship of the proposed project to the present and future land use and zoning ordinances."  Iowa Code § 479B.5(3–7).

Once a petition is filed, the statute directs the IUB to "fix a date for a hearing."  Iowa Code § 479B.6(1)  Prior to the hearing, any individual or entity "whose rights or interests may be affected by the proposed pipeline or hazardous liquid storage facilities may file written objections . . . not less than five days before the date of the hearing on the application."  Iowa Code § 479B.7. At the hearing, the board shall consider the petition, any objections, or testimony "in making its determination regarding the application."  Iowa Code § 479B.8.  In addition, "[t]he board may

---

[3] Iowa Code § 479B's usage of "the Board" refers to the Iowa Utilities Board.

examine the proposed route of the pipeline and location of the underground storage facility" at the hearing.  *Id.*

After a hearing, the IUB "may grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper."  Iowa Code § 479B.9.  A permit "shall not be granted to a pipeline company unless the board determines that the proposed services will promote the public convenience and necessity."  *Id.*  The applicant is responsible for "all costs of the informational meetings, hearing, and necessary preliminary investigation . . . [and] the actual unrecovered costs directly attributable to inspections conducted by the board."  Iowa Code § 479B.10.

### E.  *Federal Preemption*

The Supremacy Clause of the United States Constitution states that "the laws of the United States" are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  This means state laws that conflict with federal laws or regulations are invalid and unenforceable.  *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978).  This rule applies "in several different ways."  *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).  First, Congress may engage in express preemption by stating its intent to do so.  *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).  Second, Congress may preempt state laws "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation."  *Hillsborough Cnty.*, 471 U.S. at 713 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Third, federal law nullifies state law if they conflict.  *Id.* (citing *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)).  Fourth, implied preemption occurs when Congress "intended to oust state law in order to achieve its objective."

**ADD-14**

Appellate Case: 23-3760     Page: 14     Date Filed: 04/24/2024 Entry ID: 5386923

*Kinley Corp v. Iowa Util. Bd.*, 999 F.2d 354, 358 n.3 (8th Cir. 1993). Both federal statutes and regulations can preempt state law. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984).

## F.   Federal Legislation and Regulation of Pipelines

Federal statutes and regulations govern nearly every part of the construction and operation of hazardous liquid pipelines. In 1994, Congress enacted the Pipeline Safety Act ("PSA") in an attempt to provide uniformity to the federal laws governing the construction of various types of pipelines.[4] Under the PSA, the United States Department of Transportation, through the Secretary of Transportation, "shall prescribe minimum safety standards for pipeline transportation and for pipeline facilities." 49 U.S.C. § 60102(a)(2). Authority given to the Secretary of Transportation is, in turn, vested with PHMSA. 49 U.S.C. § 108. The PHMSA promulgates regulations on "the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2)(B).

The PHMSA has promulgated many pipeline regulations that are relevant to this dispute. One regulation states that "[p]ipeline right-of-way must be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly." 49 C.F.R. § 195.210(a). The regulations describe how pipelines must prepare for emergencies. 49 C.F.R. § 195.402(e). Companies must implement procedures on facility abandonment that "includ[e] safe disconnection from an operating pipeline system, purging of combustibles, and sealing abandoned facilities." 49 C.F.R. § 195.402(c)(10).

In addition to regulations, the statute provides a "[s]tate authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."

---

[4] The statute incorporated previous statutes into its framework. 49 U.S.C. § 60102(a)(1). This means that decisions interpreting said statutes are relevant to interpreting the PSA. *Id.*

13

49 U.S.C. § 60104(c).  This language is understood to preclude "state decision-making in this area altogether."  *Kinley Corp.*, 999 F.2d at 359.  "[It] leaves no regulatory room for the state to either establish its own safety standards or supplement the federal safety standards."  *Id.* (citing *ANR Pipeline Co. v. Iowa State Com. Comm'n*, 828 F.2d 465, 472 (8th Cir. 1987)).  Put simply, the PSA is a sweeping exercise of express preemption.  *Id.*

## IV.    STANDING ANALYSIS

The first issue is whether Plaintiffs have standing to pursue their claims in federal court. *See Summers v. Earth Island Inst*., 555 U.S. 488, 499 (2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[I]t is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.").  For the reasons below, Summit has Article III standing to pursue its claims in this Court, but Couser does not.  Therefore, Couser must be DISMISSED.

### A.  *Plaintiff Summit Carbon Solutions*

#### i.   Injury in Fact

An injury-in-fact is an "invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560.  The injury-in-fact must "actually exist."  *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 690 (8th Cir. 2017).  "Certain harms readily qualify as concrete injuries under Article III," of which "the most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 141 S. Ct. at 2204.  An individual may not establish an injury-in-fact solely based on claims of future injury that rely on a general intent to engage in conduct.  *Lujan*, 504 U.S. at 564 (discussing how an individual asserting a future injury must have a "description of concrete plans" or "specification of when the some day will be.")

The record provides numerous instances of Summit suffering an injury-in-fact or facing a sufficiently concrete future injury.  First, the Ordinance requires Summit to apply for a conditional use permit and pay certain fees before operating in the county.  [ECF No. 26-2 at 10–11].  Second, the Ordinance imposes fees on Summit for every mile of the pipeline for the purposes of hazard mitigation and emergency response.  *Id.* at 12.  Third, Shelby County has attempted to use the Ordinance to fine landowners who have an easement agreement with Summit in an effort to force said landowners to "voluntarily" terminate the easements.  [ECF No. 26-3].  Fourth, Shelby County threatened to "seek involuntary termination" of the easement agreements by court action if the agreements were not "voluntarily" terminated within thirty days of receipt of the notice.  *Id.*

These facts establish the injury-in-fact element in two ways.  First, the application of an extensive regulatory regime to a corporation or individual creates an injury-in-fact.  *Iowa League of Cities*, 711 F.3d at 871 (holding that individuals challenging a regulatory regime suffered an injury-in-fact when they had to comply with regulations).  Second, attempts at past enforcement and concrete threats of future enforcement establish an injury-in-fact.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Thus, Summit has shown this first element of standing.

## ii. Causation

To have standing, a party's injury-in-fact must be "fairly traceable" to the conduct at issue.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (noting that a plaintiff need not show "but-for" causation).  Lawsuits challenging enforcement of a statute meet this element when "there is a 'causal connection'" between the law and the asserted injury.  *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 779 (8th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560).  "[A]n injury is fairly traceable when the named defendants have the authority to enforce

the complained-of provision of law." *Northland Baptist Church of St. Paul, Minn. v. Walz*, 530 F. Supp. 3d 790, 800 (D. Minn. 2021) (citing *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015)).

This lawsuit names the Shelby County Board of Supervisors and its individual members. [ECF No. 1].  The County Supervisors – Steve Kenkel, Darin Haake, and Charles Parkhurst – have the authority to enact ordinances on zoning and oversee the individuals who enforce them.  [ECF No. 30-1 at 252 ("Whereas, the County may by ordinance lawfully regulate and restrict the use of land.")].  The Supervisors, acting in their official capacity, unanimously voted to enact the Ordinance.  [ECF No. 30-1 at 45, 263].  The Ordinance is the reason Summit must engage a wide range of compliance measures.  It is why Summit has faced threats of involuntary termination of its easements.  Summit's injuries are fairly traceable to the Ordinance and, by extension, Defendants.  The causation element is met.

### iii.   Redressability

The last requirement of Article III standing is that Plaintiffs' injuries must be redressable by a favorable ruling.  *Lujan*, 504 U.S. 560–61.  "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered."  *Calif. v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Allen v. Wright*, 466 U.S. 737, 753 n.19 (1984)).  This element requires a plaintiff to provide more than speculation.  *Planned Parenthood of Mid-Mo. and E. Kan., Inc. v. Ehlmann*, 137 F.3d 573, 577 (8th Cir. 1998).  An injury is redressable when there is some "likelihood that the requested relief will redress the alleged injury."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

Federal courts have the authority to find that state and local laws are preempted by federal law or regulations under the Supremacy Clause.  *ANR Pipeline*, 828 F.2d at 474 (holding that Iowa

**ADD-18**

Code § 479B was preempted by the Natural Gas and Pipeline Safety Act); *Kinley Corp.*, 999 F.2d at 357 (concluding Iowa Code § 479B was preempted by the Hazardous Liquid Pipeline Safety Act).  They may enjoin enforcement of preempted laws.  *Arizona v. United States*, 567 U.S. 387, 394 (2012) (affirming in part and reversing in part a grant of a preliminary injunction that held certain portions of an Arizona law were preempted).  Taken together, the cases suggest that the Court can grant an injunction prohibiting Defendants from enforcing the Ordinance.  This injunction can prohibit enforcement of the permit regime, the fines and fees provisions, threatened enforcement, as well as any future enforcement.  Such an order would relieve Summit from the injuries it has or would likely suffer.  In light of this, the injury is redressable.

iv.  Summary

For the reasons discussed above, Summit has demonstrated that it has Article III standing.

*B.  Plaintiff William Couser*

Based on the review detailed below, the Court concludes Couser has not suffered an injury-in-fact and will not suffer a sufficiently concrete future injury.  Dismissal is appropriate.

First, Couser is not impacted directly by the statute.  He does not reside in Shelby County; he is a resident of Story County.  [ECF No. 1 at 2].  He does not own land in Shelby County, instead possessing land in Story County.  [ECF No. 1 at 9].  This means that Couser will not be subject to the conditional use permit regime or the fees imposed by the Ordinance.  Nor has he signed an Independent Agreement that the County is attempting to invalidate.  This means the Ordinance does not impose an "actual or threatened injury." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, Inc., 454 U.S. 464, 472 (1982)).

17

Second, Couser's remaining alleged injuries are insufficient.  Couser states he is "directly interested in the pipeline's success" because he owns a 5,200-head feed lot.  [ECF No. 1 at 9].  This lot produces hundreds of bushels of corn per acre that he sells to Lincolnway Energy for ethanol production.  *Id.*  Couser maintains he will be able to sell his corn for an increased price when the pipeline is built because the ethanol could be sold in new markets.  *Id.* at 10.  This might earn him money through the sales and Couser's ownership stake in Lincolnway Electric.

This alleged future injury is speculative and lacks enough detail to establish standing.  *Lujan*, 504 U.S. at 564.  A future injury must be supported with a "description of concrete plans" or "specification of when" it will occur.  *Id.*  No supporting facts are in the record and the Court cannot determine how or when future sales would occur.  Nor can the Court determine if he would actually make additional sales or would earn more money from the construction of the pipeline.  Accordingly, Couser has not established a sufficiently  concrete future injury related to the sales.

The Court cannot conclude Couser has suffered or would suffer an injury-in-fact because he is not subject to the Ordinance and any future sales are too remote and speculative under *Lujan*.  In short, Couser lacks Article III standing and must be DISMISSED.

## V.        PRELIMINARY INJUNCTION ANALYSIS

After concluding that Summit has standing to challenge the Ordinance, the Court examines whether Summit has shown it is entitled to a preliminary injunction based on the four *Dataphase* factors.  Each *Dataphase* factor supports the grant of a preliminary injunction.

### A.  *Likelihood of Success on the Merits*

Summit maintains that the Ordinance is preempted by federal and state law.  [ECF No. 26].  Defendants respond that "Plaintiffs cannot demonstrate a substantial likelihood of success on their

**ADD-20**

claims that the County's ordinance is preempted by either state or federal law." [ECF No. 33 at 8]. For the reasons below, Summit has demonstrated it is likely to succeed on its preemption claims.

                i.   Determining the Governing Standard for Success on the Merits

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citation omitted). "There are two standards a district court may apply when assessing a movant's probability of success on the merits." *Raak Law v. Gast,* -- F. Supp. 3d --, 2022 WL 17337601 (S.D. Iowa. 2022) (quoting *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019)). "The first, which applies in most instances, directs the district court to ask whether the party requesting a preliminary injunction has a 'fair chance of prevailing.'" *Id.* (quoting *Planned Parenthood Minn., N.D, S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). This requires a party to "show a 'fair chance of prevailing.'" *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC,* 953 F.3d 1041, 1045 (8th Cir. 2020) (quoting *Rounds*, 530 F.3d at 732). Under this standard, a movant need not show they "will ultimately win." *PCTV Gold, Inc. v. SpeedNet, LLC.*, 508 F.3d 1137, 1143 (8th Cir. 2007) (citation omitted).

A second test applies to preliminary injunctions seeking to enjoin enforcement of a statute. *D.M. by Bao Xiong*, 917 F.3d at 999. This requires a moving party to show it is "likely to prevail on the merits." *Rounds*, 530 F.3d at 732. This heightened standard "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference." *Id.* (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)). A court must evaluate whether "the full play of the democratic process" was involved in the creation and implementation of these laws and then determine the applicability of the elevated standard. *D.M. by Bao Xiong*, 917 F.3d

ADD-21

at 1000 (quoting *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016)).  Although courts examine the process by which the laws were enacted, "[s]tate and federal statutes are the output of presumptively reasoned democratic processes." *Eggers v. Evnen*, 48 F.4th 561, 565 (8th Cir. 2022) (quotation omitted).

The record demonstrates that the Ordinance was enacted after a full play of the democratic process.  The enactment process began when Shelby County residents submitted petitions to the Board.  [ECF No. 30-1 at 60–77].  The Board referred the petition to the Shelby County Planning and Zoning Commission.  [ECF No. 30-1 at 29].  The Commission then conducted a hearing and heard testimony on the proposal.  [ECF No. 30-1 at 6–14].  The Commission drafted a report to the Board, explaining that the zoning ordinance should be adopted to address community concerns about the pipeline.  [ECF No. 30-1 at 121–125].  The Board held three hearings on the proposed ordinance.  [ECF No. 30-1 at 32–45, 46–57, 250–63].  At the end of the final hearing, the Board adopted the resolution.  Given this democratic process, Summit must show it is "likely to prevail on the merits" to be entitled to a preliminary injunction.  *Rounds*, 530 F.3d at 732

## ii.  Statutory Interpretation Under Iowa Law

"A trial court's determination of whether a local ordinance is preempted by state law is a matter of statutory construction." *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 339 (Iowa 2015) (quoting *City of Davenport v. Seymour*, 755 N.W.2d 533, 537 (Iowa 2008)).  "In construing statutes, [the] goal is to ascertain legislative intent." *Mall Real Estate, L.L.C v. City of Hamburg*, 818 N.W.2d 190, 194 (Iowa 2012) (citation omitted).  "In ascertaining legislative intent, we consider the language used in the statute, the object sought to be accomplished, and the wrong to be remedied." *Swainston v. Am. Fam. Mut. Ins. Co.*, 774 N.W.2d 478, 482 (Iowa 2009) (quoting *Mortenson v. Heritage Mut. Ins. Co.*, 590 N.W.2d 35, 39 (Iowa 1999)).  "We consider all parts of

**ADD-22**

an enactment together and do not place undue importance on any single or isolated portion." *Id.*
"In the context of state-local preemption, the silence of the legislature is not prohibitory but
permissive." *Bellino Fireworks, Inc. v. City of Ankeny, Iowa*, No. 4:17-cv-212-RGE-CFB, 2017
WL 11446135, at *6 (S.D. Iowa June 29, 2017) (quoting *Seymour*, 755 N.W.2d at 543).

### iii.  Iowa State Law Claims

Summit argues that two provisions of the Ordinance are preempted by Iowa Code § 479B.
[ECF No. 26].  Specifically, it contends the distance and permitting components are unenforceable
because Iowa Code § 479B delegates exclusive authority to the IUB.  *Id.* at 14–16.  Defendants
respond that the Ordinance is not preempted because Iowa Code § 479B does not limit their ability
to engage in ordinary zoning.  [ECF No. 33 at 9–10].  The Court agrees that Summit is likely to
prevail in its claim that the Ordinance cannot be enforced because of implied preemption.

### a.  Distance and Siting Requirements – Express Preemption

The first question is whether the Ordinance's distance and siting requirements are expressly
preempted by Iowa Code § 479B.  The Court finds that they are not.

Under the statute, a pipeline company seeking a permit must conduct meetings where it
provides the public "[a] map showing the route or location of the proposed project."  Iowa Code
§ 479B.4(5)(a)(5).  When a pipeline company applies for a permit with the IUB, it must furnish
"[a] legal description of the route of the proposed pipeline and a map of the route."  Iowa Code
§  479B.5(3).  An application must include "[m]aps showing the location of proposed machinery,
appliances, fixtures, wells, and stations necessary for the construction, maintenance, and operation
of the hazardous liquid storage facilities."  Iowa Code § 479B.5(5)(b).  "The board may examine
the proposed route of the pipeline and location of the underground storage facility" at a hearing.
Iowa Code § 479B.8.  The IUB "may grant a permit in whole or in part upon terms conditions and

**ADD-23**

Appellate Case: 23-3760     Page: 23     Date Filed: 04/24/2024 Entry ID: 5386923

restrictions as to location and route as it determines to be just and proper."  Iowa Code § 479B.9.

After issuance of a permit, the Board is directed to "keep a record . . . showing . . . the location and

route of the pipeline."  Iowa Code § 479B.14(5).

This statutory language does not expressly assign a role to counties when determining the

location of a pipeline.  It also does not expressly provide that counties have no role in the process.

This means there is no "specific language used by the legislature" to explain how the Court should

resolve the dispute.  *Seymour*, 755 N.W.2d at 538 ("the specific language used by the legislature

ordinarily provides the courts with the tools necessary to resolve any remaining . . . problems in

statutory interpretation.").  Without a direct and specific prohibition by the Iowa Legislature, there

can be no express preemption of "local action in an area."  *Goodell*, 575 N.W.2d at 493 (citing

*Chelsea Theater*, 258 N.W.2d at 373).  In short, Iowa Code § 479B does not expressly preempt

the distancing and siting requirements of the Ordinance.

b.  Distance and Siting Requirements – Implied Preemption

After concluding the Ordinance's distance requirements are not expressly preempted by

Iowa Code § 479B, the next issue is whether the provisions are nonetheless preempted by

implication.  The Court finds they are.

The Ordinance imposes many limitations on the placement of a hazardous liquid pipeline.

It requires Summit to place a pipeline more than two miles from the "limits of an incorporated

city" and more than half a mile from any "church, school, nursing home, long-term care facility,

or hospital."  [ECF No. 26-2 at 11].  A proposed pipeline would have to be at least a quarter of a

mile from public parks or recreation areas.  *Id.*  The pipeline must be one thousand feet from "any

occupied structure."  *Id.*  An occupied structure is defined as "a building or structure that has been

inhabited or used for residential, commercial, industrial, or agricultural purposes at any time during

**ADD-24**

the twelve (12) months" before a conditional use permit application.  *Id.* at 7.  In addition, a pipeline must be at least one thousand feet from a confined animal feeding operation or facility, an electric generating facility, an electric transmission line, an electric transmission substation, a public drinking water treatment plant, or a public wastewater treatment plant.  *Id.*

Common sense suggests these restrictions would eliminate all or almost all land in Shelby County on which an IUB approved pipeline could be built.  This creates a serious possibility the IUB would approve the construction of the pipeline but Summit would be unable to build because it could not comply with the requirements of the Ordinance.  Put another way, the Ordinance would prohibit "an act permitted by statute."  *Gruen*, 457 N.W.2d at 342.  This situation is the one that preemption is designed to avoid; so long as the situation exists, the Ordinance is unenforceable under implied preemption.  *Seymour*, 755 N.W.2d at 538 (citation omitted).

Other portions of the statute support this interpretation.  Specifically, the statute directly assigns a role to the county boards of supervisors in some provisions but not in others.  A notable example is the land restoration provisions, which requires a board of supervisors to consider certain topics, hire a professional engineer, and conduct detailed inspections.  Iowa Code § 479B.20.  This stands in sharp contrast to the location provisions of the statute, which do not mention counties.  Iowa Code §§ 479B.8, 479B.9.  This omission is evidence that the Legislature did not envision a role for counties in regulating the location of pipelines.  *State of Iowa v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001) ("the express mention of one thing implies the exclusion of other things not specifically mentioned"); *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995) (same).

Pursuant to the above discussion, the Court concludes the distance and siting requirements in Art. 8.4 of the Ordinance, are implicitly preempted by Iowa Code § 479B.

c.   Pipeline Company Permitting Requirement

The parties contest whether the Ordinance's permitting requirements as related to pipeline facilities are preempted by the permitting provisions of Iowa Code § 479B.  For the reasons discussed below, these permitting provisions are impliedly preempted by Iowa Code § 479B.

Iowa law provides that "[a] pipeline company doing business in the state shall file a verified petition with the board asking for a permit to construct, maintain, and operate a new pipeline along, over, or across the public or private highways, grounds, waters, and streams . . . in this state."  Iowa Code § 479B.4(1).  The petition must include information about the company filing the application, a legal description of the pipeline, locations of storage facilities, alternative routes, and potential interactions with "present and future land use and zoning ordinances."  Iowa Code § 479B.5.  The IUB "may grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper."  Iowa Code § 479B.9.

The Ordinance provides that a pipeline company seeking to "construct, maintain, or operate a new Pipeline . . . in th[e] County shall submit an Application to the County Zoning Administrator for a conditional use permit."  [ECF No. 26-2 at 10].  The company must include its complete IUB application, maps identifying impacted county residents, and dimensions of the pipeline.  *Id.*  The application must furnish information on compliance with abandonment and removal requirements, an emergency response and hazard mitigation plan, the written template a company will use to negotiate easements with landowners, and fees for a conditional use permit.  *Id.* at 11–12.  It also implements a lengthy public hearing and decision making process.  *Id.* at 13.

As explained earlier, the law does not expressly preempt county regulations of pipelines.  Rather, the Iowa Code preempts the Ordinance to the extent it interferes with the construction of an IUB-approved pipeline.  The permitting provision of the Ordinance interferes with the IUB's

24

**ADD-26**

authority because it requires companies to submit an extensive application for a county permit after submission of a petition to the IUB. [ECF No. 26-2 at 9]. The purpose for this process, by Defendants' own admission, is to change the route of the pipeline during or after the IUB process. This will lead to a situation where the IUB may grant a permit to construct a pipeline and Summit is unable to do so. Where compliance with state law is not possible because of a local ordinance, the local law is unenforceable under preemption. *Seymour*, 755 N.W.2d at 538.

This conclusion is supported by the implementing regulations of Iowa Code § 479B. Iowa. Admin. Code Reg. 199-13.3(479B). Under these regulations, pipeline companies must seek and receive permission from numerous entities and submit this information with their application for a petition. Iowa Admin. Code Reg. 199-13.3(1)(e). They must obtain consent from "appropriate public highway authorities, or railroad companies" who would be affected by the pipeline. Iowa Admin. Code Reg. 199-13.3(1)(e)(1). They shall list and acquire any permits required by "federal agencies" or "state agencies." Iowa Admin. Code Reg. 199-13.3(1)(e)(3–4). The regulations do not mention permits from local municipalities as being required for consideration for building a pipeline. Put another way, the exclusion of municipalities from these regulations suggests that they were intended to not have a role in the permitting process.

Given this discussion of Iowa law and implementing regulations, the Court concludes the conditional use permit requirements in the Ordinance related to pipeline companies, *i.e.*, Arts. 8.3, 8.5, 8.7, and 8.8., are preempted by Iowa Code § 479B.

### d.   Landowner Permitting Requirement

The parties also disagree on whether landowner permitting requirements are permissible in light of Iowa Code §§ 6B.2B, 479B. For many of the same reasons discussed in the preceding section, the landowner requirements cannot be enforced due to implied preemption.

25

**ADD-27**

Iowa law requires an agency or an individual acting with agency approval "make a good faith effort to negotiate with the owner to purchase [] private property or property interest before filing an application for condemnation."  Iowa Code § 6B.2B.  Administrative regulations require good faith effort to negotiate easements with landowners prior to constructing any pipelines.  Iowa Admin. Code Reg. 199-10.3(1)(k)(2) (the applicant must identify "when the easement negotiations will be completed.").  Once a permit is issued by the IUB, the pipeline company "shall be vested with the right of eminent domain."  Iowa Code § 479B.16.

The Ordinance requires a landowner who "intends to negotiate or sell an easement to a Pipeline Company by means of an Independent Agreement [to] submit an application to the County Zoning Administrator for a conditional use permit."  [ECF No. 26-2 at 10].  They must provide a "copy of the Independent Agreement the Property Owner proposes to execute with the Pipeline Company, including a map and a legal description of the proposed Line Location, and a statement of verification of compliance with the separation requirements."  *Id*.  The approval process for landowners is substantially the same as the one for pipeline companies; the primary difference is landowner approvals are not subject to a public hearing.  *Id*.  Only after receiving approval from Shelby County may the landowner sign the agreement.  *Id.* at 10.

The statute preempts the Ordinance to the extent it restricts Summit's ability to negotiate easements with landowners.  The County's permitting application, which prohibits consummation of an Independent Agreement without a conditional use permit, has already been used as the basis to send threatening letters to landowners in Shelby County.  [ECF No. 26-3 at 1–50].  Attempted enforcement of the provisions has stymied attempts by Summit to negotiate with landowners, as

**ADD-28**

well as interrupted its relationships with current landowners.  [ECF No. 50 at 14].  To the extent the Ordinance's conditional use permit regime impacts this negotiation process, it is preempted.[5]

In light of Iowa law, the conditional use permit requirements in the Ordinance related to landowners, *i.e.*, Arts. 8.3, 8.6, and 8.7, are preempted by Iowa Code § 479B.

### e.   Summary

For the reasons above, Arts. 8.3, 8.4, 8.5, 8.6, 8.7., 8.8. 8.9., and 8.10 of the Ordinance are preempted by state law.  Accordingly, Defendants will be enjoined from enforcing them.

### iv.   Statutory Interpretation Under Federal Law

Statutory analysis begins "with the plain language of the statute."  *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (citing *United States v. I.L.*, 651 F.3d 817, 820 (8th Cir. 2011)).  The main question is "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute."  *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Robinson*, 519 U.S. at 341.  The inquiry ends if "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (quoting *Barnhart*, 534 U.S. at 450).

---

[5] The Ordinance's landowner permit process is also irrelevant once the IUB issues a permit to Summit.  This is because the permit's issuance vests Summit with the power of eminent domain. Iowa Code § 479B.16.  Once Summit has the power of eminent domain, it may exercise the power to claim the land regardless of the permit necessary under the Ordinance.  The Ordinance could not prohibit Summit from engaging in this activity under preemption.  *Seymour*, 755 N.W.2d at 538 (citing *Goodell*, 575 N.W.2d at 493).

ADD-29

v.  Federal Law Preemption Claims

Summit alleges that two provisions of the Ordinance are preempted by federal law.  [ECF No. 26].  It claims that the hazard and safety plan requirements of the Ordinance, as well as the abandonment and discontinuance provisions, are unenforceable because of the PSA.  *Id.* at 19–23.  Defendants respond that the Ordinance is not preempted by the PSA because the statute governs safety standards, not zoning.  For the reasons discussed below, Summit is likely to prevail in its claim that portions of the Ordinance are preempted by the PSA and its implementing regulations.

a.  Hazard Safety Plan

The parties sharply contest the scope of the PSA's impact on hazard safety, most notably on whether the PSA expressly preempts the Ordinance's requirements.  The Court finds it does.

The PSA provides, "[a] [s]tate authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."  49 U.S.C. § 60104(c).  The statute delegates sole authority to enact safety provisions to the PHMSA.  49 U.S.C. § 60102(a)(2).  The standards cover "the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities."  49 U.S.C. § 60102(a)(2)(B).  Using this authority, the PHMSA requires companies to implement a manual describing its process for responding to "emergencies."  49 C.F.R. § 195.402.  The companies must have certain materials on hand, the ability to provide an effective response to different types of emergencies, and have an emergency shut-off valve.  49 C.F.R. § 195.402(e)(2–4).  The safety procedures must include steps to control the release of materials during "an accident" and minimize "public exposure to injury."  49 C.F.R. § 195.402(e)(5–6).

The Ordinance requires a pipeline company to submit "a plan that meets the requirements of this section."  [ECF No. 26-2 at 14].  The plan must list a description of health and safety risks

28

of the pipeline to animals and humans, the time it would take for injuries to occur, calculations and models about worst-case scenarios, and a list of facilities and structures that could be harmed. *Id*. A company must submit "[a]ll information needed by county first responders, emergency response personnel, and law enforcement personnel in order to engage in local emergency management and hazard response." *Id*. at 15. The owner is required to provide "a Mass Notification and Emergency Messaging System [and] evacuation plans." *Id*.

The statute provides the Secretary of Transportation with the authority to enact emergency response and hazard mitigation plans. 49 U.S.C. § 60102(a)(2)(B). This authority is limited solely by the statute, which provides a framework for the regulations. 49 U.S.C. § 60102(r). Courts have understood the statute to provide the Secretary with "exclusive authority to regulate the safety . . . of interstate hazardous liquid pipelines." *Kinley Corp*., 999 F.2d at 359. This language precludes states and municipalities "from regulating in any manner whatsoever with respect to the safety of . . . facilities." *ANR Pipeline Co.*, 828 F.2d at 470. In light of this, the Court concludes that express preemption invalidates the Ordinance's emergency response and hazard mitigation provisions. Therefore, Art. 8.11 of the Ordinance may not be enforced.

### b.   Abandonment and Discontinuation

The parties next disagree on whether the abandonment and discontinuation provisions of the Ordinance are expressly preempted. As noted below, these provisions are wholly preempted.

The PSA delegates authority to enact safety provisions to the Secretary of Transportation. 49 U.S.C. § 60102(a)(2). The PHMSA regulates abandonment of pipelines under this authority. 49 C.F.R. § 195.402(c)(10). Specifically, a pipeline company must have a plan for "[a]bandoning pipeline facilities" that includes "safe disconnection from an operating pipeline system," the "purging of combustibles," and "sealing abandoned facilities . . . to minimize safety and

29

environmental" issues.  *Id.*  They must provide a report to the Secretary establishing its compliance with the statutory and regulatory provisions.  49 U.S.C. § 60108(b)(6)(A).

By contrast, the Ordinance requires a pipeline owner to "notify the County" of its intent to discontinue the use of the pipeline.  [ECF No. 26-2 at 16].  Once the abandonment process begins, a pipeline owner "shall offer to each Property Owner the option to have the Pipeline and all related facilities physically dismantled and removed, including both the below and above ground facilities."  *Id.*  Removal must be completed within one-hundred and eighty days of "abandonment or discontinuation."  *Id.*  Lastly, the pipeline owner is directly responsible for the costs of removal and following the restoration requirements of Iowa Code § 479B.20.  *Id.*

The statute provides the Secretary with authority to promulgate regulations on construction and maintenance of pipelines and their termination.  49 U.S.C. § 60102(a)(2)(B).  The regulations require the companies to implement procedures on the abandonment of pipelines.  49 C.F.R. § 195.402(c)(10).  The statute provides an exclusive grant of authority to the Secretary, which means that state and local agencies cannot regulate safety matters.  *Kinley Corp.*, 999 F.2d at 359. This means that the Ordinance's abandonment requirements are expressly preempted by the PSA and Art. 8.12 of the Ordinance may not be enforced.

### vi.  Summary

For the reasons discussed above, Summit has shown that the first element of the *Dataphase* factors – success on the merits – weighs in favor of a preliminary injunction.

### B.  Irreparable Injury

Summit asserts several theories of irreparable injury.  First, Summit claims the Court can simply presume irreparable injury.  [ECF No. 26 at 24–25].  Second, it asserts it would suffer an irreparable injury because the Ordinance would prevent it from exercising its legal right to acquire

easements and complete the pipeline project.  *Id.*  Third, it maintains it would face irreparable injury because of unrecoverable costs, loss of goodwill, and confusion about the project.  *Id.* at 25. Defendants resist, explaining each of the irreparable injuries is insufficient under current doctrine. [ECF No. 33 at 31–34].  Summit has sufficiently shown this element for the purpose of preliminary relief.

### i.   Governing Law

The first factor requires a moving party to show they will suffer an irreparable harm if the preliminary injunction is not granted.  *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 318–19 (8th Cir. 2009) (citing *Dataphase,* 640 F.2d at 113).  "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction."  *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted).  "A party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).  A "theoretical possibility" of future harm is not sufficient to warrant relief.  *McFarlin v. Newport Special Sch. Dist.,* 980 F.2d 1208, 1211 (8th Cir. 1992).  There must be no alternative to besides a preliminary injunction.  *CDI Energy Servs. v. W. River Pumps, Inc.,* 567 F.3d 398, 403 (8th Cir. 2009).

### ii.   Presuming Irreparable Injury

Summit asserts that the Court may presume irreparable injury in cases where a plaintiff is likely to succeed on the merits.  [ECF No. 26 at 23].  In support of this position, Summit highlights two separate cases finding irreparable injury in the context of geophysical activities or pipelines. *See Glob. Geophysical Servs., Inc. v. Kuster*, No. 4:15-cv-16, 2015 WL 570918, at *4 (D. N.D. Feb. 11, 2015) (citing *Calvin Klein*, 815 F.2d. at 505); *Paradigm Energy Partners, LLC v. Fox,* Case No.: 1:16-cv-304, 2016 WL 8737873, at *5 (D. N.D. Aug. 23, 2016) (citation omitted).

ADD-33
Appellate Case: 23-3760     Page: 33     Date Filed: 04/24/2024 Entry ID: 5386923

Contrary to the broad interpretation of irreparable injury provided by these cases, the *Calvin Klein* decision limits this presumption of irreparable injury in trademark disputes under the Lanham Act. *Calvin Klein*, 815 F.2d at 505 (citing *Black Hills Jewelry Mfg. Co. v. Goldrush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980)).  This presumption has a lengthy history in federal courts, but "it is unclear whether [it] . . . survived more recent Supreme Court opinions emphasizing the movant's burden to show that 'irreparable injury is likely in the absence of an injunction.'"  *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir.  2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  Given this presumption is limited to trademark disputes and it may not longer be good law, the Court declines to rely upon it.  The Court turns to address the sufficiency of the other harms.

### iii.  Legal Right to Complete the Pipeline Project

Summit alleges that the Ordinance causes irreparable harm because the Ordinance prevents Summit from "exercising its legal right to acquire easements and to complete its pipeline project." [ECF No. 26 at 24].  This argument is foreclosed by statute.  This is because Iowa Code § 479B.3 provides that a pipeline may not be built until the IUB application process is complete and Summit receives a permit.  Iowa Code § 479B.3 ("A pipeline company shall not construct, maintain, or operate a pipeline or underground storage facility . . . except in accordance with this chapter.").  Until Summit receives its permit from the IUB, it does not have a right of construction that could be injured by the Ordinance, let alone irreparably injured.  This is not enough.

### iv.  Loss of Goodwill

Summit claims the Ordinance causes irreparable harm because the Ordinance caused it to experience significant harm to its goodwill.  [ECF No. 26 at 24].  This argument is insufficient.

"Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."  *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citing *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987)).  This includes goodwill among "employees and customers."  *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).  A party must provide sufficient "evidence or analysis to support [the contention]," not mere allegations.  *Id.* (citing *Iowa Utils. Bd.*, 109 F.3d at 426).  Specifically, a movant must present enough evidence to "establish that the risk of harm is so 'certain and great and of such imminence' as to require preliminary injunctive relief."  *Allied Servs., LLC v. Smash My Trash, LLC*, Case No. 21-cv-00249-SRB, 2021 WL 1671675, at *4 (W.D. Mo. Apr. 28, 2021) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013)).

Summit explains it has "earned reputation and goodwill" through its process of voluntarily securing land use agreements and easements from sixty-five percent of Iowans along the proposed pipeline project.  [ECF Nos. 26 at 26; 26-2 at 5].  Summit stated it received several "panicked calls from landowners" upon receiving letters from the County.  [ECF No. 50 at 13].  The individuals allegedly asked Summit "[w]hat are you going to do about it?  How can you help me with this?"  *Id.* at 14.  The Court cannot say these general conversations, which were unsupported by evidence such as affidavits or testimony, are sufficient to show there is irreparable injury to the goodwill of Summit.  *Mgmt. Registry,* 920 F.3d at 1183.  Nor does it show the harm is "of such imminence" to support preliminary relief.  *Allied Servs.*, 2016 WL 1671675, at *4 (quotation omitted).  Given this lack of support, Summit has not shown that this harm supports a finding of irreparable injury.

v.   Unrecoverable Costs

Summit contends that the Ordinance inflicts numerous financial costs that include a loss of a competitive advantage, the loss in the value of future profits caused by delays, and the loss of

third-party contracts.  [ECF No. 26 at 26].  Defendants respond that the Ordinance "may require changes to Summit's proposed route" but the evidence does not support a conclusion that it is entitled to a route of its choice.  These injuries are sufficient to establish irreparable injury.

As a general rule, economic loss "does not, in and of itself, constitute irreparable harm . . . because the party . . . can receive full compensation through monetary damages." *Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.*, 599 F. Supp. 3d 826, 830 (W.D. Mo. 2022) (quoting *Iowa Utils. Bd.*, 109 F.3d at 426).  This is particularly true when economic "losses are quantifiable." *Mgmt. Registry*, 920 F.3d at 1183.  An exception to the rule applies when the losses are not recoverable. *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013) (citing *Iowa Utils. Bd.*, 109 F.3d at 426) ("Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered.").

At oral argument, Summit noted that the lost profits, lost opportunities, delay, and loss of third-party contracts would be an "existential threat" to the project.  [ECF No. 50 at 13].  Although the loss was difficult to estimate, Summit explained the loss could range from hundreds of millions to billions of dollars.  *Id.*  When the Court asked Shelby County whether it had "the ability to pay hundreds of millions of dollars in damages," Defendants responded with a generic "[t]hey do have that ability to satisfy a judgment through a tax levy." *Id.* at 39.  The Court asked again, wondering "do you think the people of Shelby County have the ability to pay millions of dollars in damages [through a levy]?" *Id.* at 40.  Counsel responded, "I can't answer that." *Id.*  This discussion led the Court to posit "[t]he practical answer is no" because "[i]t's uncollectible, right?" *Id.*

The record supports several factual findings.  First, the potential loss is significant, ranging from tens of millions of dollars to hundreds of millions of dollars and maybe more.  [ECF No. 50 at 13].  Second, the amount cannot be quantified outside of this range because of factors that are

**ADD-36**

unknowable such as the extent of delay that would occur if the Ordinance were upheld.  *Id.*  Third, Shelby County would not have the ability to pay a monetary judgment because it is a small county with insufficient ability to raise this amount through taxes.  *Id.* at 40.  These facts lead the Court to conclude that the exception to the rule on economic loss, where irreparable injury can be found when the amount of loss is not quantifiable and impossible to recover, applies to this case.  *DISH Network Serv.*, 725 F.3d at 882; *Mgmt. Registry*, 920 F.3d at 1183.  Accordingly, the irreparable injury element has been met.

### *C.  Merged Factors*

Summit maintains the third and fourth factors support a preliminary injunction because continued enforcement would be harmful and "Shelby County . . . can suffer no harm" from being allowed to not enforce an invalid law.  [ECF No. 26 at 27].  It explains Shelby County has a proper avenue to address its concerns: the IUB hearing process.  *Id.* at 27.  Defendants respond that both factors "weigh in favor of the County" because the "proposed carbon capture pipeline poses health and economic risks to residents of the County."  [ECF No. 33 at 35].   For the reasons discussed below, these factors weigh in favor of the preliminary injunction.

On the first part of the merged factors, balance of the equities, the inquiry requires a court to "weigh 'the threat of irreparable harm' shown by the movant against 'the injury that granting the injunction will inflict on other parties.'"  *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (quoting *Dataphase Sys.*, 640 F.2d at 113).  "This factor requires the examination of the harm granting or denying the injunction poses to both parties to the dispute, as well as other interested parties."  *Johnson v. Moody*, No. 4:16-cv-00449-RGE-SBJ, 2016 WL 8839427, at *9 (S.D. Iowa Nov. 14, 2016) (citing *Dataphase*, 640 F.2d at 114).

On the second element, public interest, the court must balance "the specific public interests that might be harmed and what public interests might be served." *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 801 (S.D. Iowa 2022) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011)). Preliminary relief will only be granted when the benefits of granting the injunction outweigh the specific harms. *Id.* (citation omitted).

With respect to the equities, the strongest equity in favor of a preliminary injunction is the full enforcement of valid federal and state laws. *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020) ("It is in the public interest to uphold the will of the people, as expressed by acts of the state legislature, when such acts appear harmonious with the Constitution."). This equity favors the preliminary injunction because the Ordinance attempts to circumvent properly enacted federal and state laws that regulate pipeline safety. In comparison, Defendants lack a meaningful equity in attempting to enforce a patently preempted ordinance.

On public interest, the strongest interest in favor of Summit is the loss of an enormous sum of money. This amount, which ranges from hundreds of millions to billions of dollars, is hard to define and will be impossible to recover. [ECF No. 50 at 14]. Another strong interest is a potential reduction in carbon emissions because of the pipelines. [ECF No. 47-2 at 1]. The strongest interests in favor of Defendants are safety concerns. While the safety concerns are genuinely held, these concerns must be expressed through the appropriate political process, *i.e.,* engaging the IUB, the Iowa Legislature, and the United States Congress. They do not have an interest in enforcing invalid laws, particularly when they Defendants have yet to produce information on why the aforementioned avenues are insufficient to address their concerns. Upon balancing these interests, this element supports Summit. Defendants may not pass unenforceable ordinances in a roundabout attempt to undermine valid federal and state laws.

**ADD-38**

Accordingly, the Court concludes that this merged third element shows that Summit would suffer more harm than Defendants if the preliminary injunction were not granted.  In short, this merged factor weighs in favor of granting the preliminary injunction.

## VI.    CONCLUSION

For the reasons above, Plaintiffs' Motion for a Preliminary Injunction is **GRANTED**.

## VII.    SCOPE OF PRELIMINARY INJUNCTION

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction " must . . . state its terms specifically . . . and describe in reasonable detail . . . the act or acts restrained."  Fed. R. Civ. P. 65(d)(1)(B–C).  The scope of the preliminary injunction is defined as follows:

1. **IT IS ORDERED** that Defendants Shelby County, Iowa, the Shelby County Board of Supervisors, and each of the Supervisors in their official capacities are enjoined from enforcement of Shelby County Ordinance No. 2022-4 effective immediately.  They may not enforce Arts. 8.3, 8.4., 8.5. 8.6., 8.7., 8.8., 8.9., 8.10., 8.11., or 8.12 of the law in any capacity or through any instrumentality available to them.
2. **IT IS FURTHER ORDERED** that Defendants shall immediately issue a written notice to all employees in the County who are involved in enforcing Ordinance No. 2022-04 or have oversight of such enforcement and notify them of the injunction prohibiting enforcement of the Ordinance.
3. **IT IS FURTHER ORDERED** that Defendants shall demonstrate its compliance with the Order by submitting an affidavit detailing its efforts to the Court within ten (10) days of entry of this Order.


IT IS SO ORDERED.

Dated this 10th day of July, 2023.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**ADD-39**

Appellate Case: 23-3760     Page: 39     Date Filed: 04/24/2024 Entry ID: 5386923

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| SUMMIT CARBON SOLUTIONS, LLC, | ) | Case No. 1:22-cv-00020-SMR-SBJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON CROSS-MOTIONS FOR |
| v. | ) | SUMMARY JUDGMENT |
| | ) | |
| SHELBY COUNTY, IOWA, SHELBY | ) | |
| COUNTY BOARD OF SUPERVISORS, | ) | |
| STEVE KENKEL, in his official capacity as | ) | |
| a Shelby County Supervisor, CHARLES | ) | |
| PARKHURST, in his official capacity as a | ) | |
| Shelby County Supervisor, and DARIN | ) | |
| HAAKE, in his official capacity as a Shelby | ) | |
| County Supervisor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Last year, the Shelby County Board of Supervisors ("the Board") promulgated Shelby County Ordinance 2022-4 ("the Ordinance") in response to planned construction of a hazardous liquid pipeline. Plaintiff Summit Carbon Solutions, LLC ("Summit") filed this suit to enjoin enforcement of the Ordinance on the grounds that it is preempted by federal and state law. When the Board sought to enforce the Ordinance during the course of this litigation, Plaintiff obtained a preliminary injunction. On August 4, 2023, the parties filed cross-motions for summary judgment. For the reasons discussed in detail below, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED.

I.     BACKGROUND[1]

On November 15, 2022, Plaintiff filed this suit against Defendants Shelby County, Iowa, the Board, and each Shelby County Supervisor in their official capacities.[2]  The lawsuit alleges that the Ordinance is preempted by the Pipeline Safety Act ("PSA"), a federal law regulating many aspects of pipeline safety, and Iowa Code § 479B, which provides the Iowa Utilities Board ("IUB") with authority to issue permits approving the construction of pipelines.   Plaintiff seeks a declaratory judgment that the Ordinance is preempted by federal and state law and injunctive relief restraining Defendants from: (i) "enforcing or implementing Ordinance No. 2022-4," (ii) "enforcing or implementing any other ordinances on the permitting, construction, or development of Summit's pipeline project," and (iii) "enforcing or implementing any resolution, ordinance, moratorium, ban, or other regulation that purports or intends to regulate any safety or permitting aspect of Summit's pipeline project."  [ECF No. 1 at 18].

On January 26, 2023, the Shelby County Planning and Zoning Commission sent letters to local landowners.  The letters stated the landowners had recorded an easement conveying certain rights of access to property, but they had not received the appropriate conditional use permit prior to conveyance.  The letters explained that "the county may assess penalties against any person who violates the ordinance" and fine them $750.00 per day.  [ECF No. 26-3 at 3].  The notices concluded by stating, "[i]f the easement agreement is not terminated by 02/10/2023 in addition to the penalties described above, the county may seek involuntary termination of the easement agreement by a court." *Id.*

---

[1] The Court refers to its Preliminary Injunction Order, ECF No. 51, for other facts relevant to the parties' cross-motions.

[2] The complaint was originally filed by Summit and William Couser.  The Preliminary Injunction Order dismissed Couser for lack of Article III standing.  The action proceeds with Summit as the sole plaintiff.

In response to those letters, Plaintiff requested a preliminary injunction to enjoin enforcement of the Ordinance until a final resolution of this action.  On March 31, 2023, the Court held a hearing in this matter.  At the end of argument, the Court asked the parties to provide more information.  The requested information was subsequently submitted.  [ECF Nos. 47; 48].

Prior to the hearing, Defendants filed a counterclaim against Summit for failure to comply with sections 8.31 and 8.32 of the challenged Ordinance.  "Under section 8.31 of the Ordinance, Summit was required to submit an application to the County for a conditional use permit by November 18, 2022."  [ECF No. 44 at 2].  Under section 8.32, Summit was prohibited from executing easement agreements with landowners before it obtained a conditional use permit from the County.  *Id*. at 2–3.  Defendants claimed Summit violated both sections and requested infraction penalties against Summit.  Plaintiff resisted.

On July 10, 2023, the Court issued an Order granting Plaintiff's request for a preliminary injunction.  [ECF No. 51].  In that Order, the Court found that the issuance of a preliminary injunction was appropriate due in part because Summit was likely to prevail on its preemption claims.  The Court ordered that (i) "Defendants Shelby County, Iowa, the Shelby County Board of Supervisors, and each of the Supervisors in their official capacities are enjoined from enforcement of Shelby County Ordinance No. 2022-4 effective immediately," (ii) "Defendants shall immediately issue a written notice to all employees in the County who are involved in enforcing Ordinance No. 2022-04 or have oversight of such enforcement and notify them of the injunction prohibiting enforcement of the Ordinance," and (iii) "Defendants shall demonstrate its compliance with the Order by submitting an affidavit detailing its efforts to the Court within ten (10) days of entry of this Order."  *Id*. at 37.

On August 4, 2023, the parties filed cross-motions for summary judgment.  Defendants also filed a supplement briefing to which Plaintiff responded.[3]  For the reasons discussed in detail below, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if the movant 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *United States v. Meyer,* 914 F.3d 592, 594 (8th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)).  "If the moving party has met this burden . . . the non-moving party must set forth specific facts showing that there are genuine issues for trial."  *Bankston v. Chertoff*, 460 F. Supp. 2d 1074, 1085 (D. N.D. 2006) (citations omitted).  To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element for which it has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  When considering a summary judgment motion, a court must view "evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences from that evidence in favor of the nonmoving party."  *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016) (quoting *Smith v. URS Corp*., 803 F.3d 964, 968 (8th Cir. 2015)).  However, a court must reject an interpretation of events in favor of a party if it is blatantly contradicted by the record.  *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010)

---

[3] On that same day, Defendants filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit from this Court's Preliminary Injunction Order.  As of the date of this present Order, the appeal remains pending.

(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2010)).  Summary judgment is most appropriate when the "issues are primarily legal rather than factual" in nature.  *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir. 1996).

### III.   ANALYSIS

In the Preliminary Injunction Order, the Court found Summit was likely to prevail on its preemption claims under federal and state law.  [ECF No. 51].  For the state preemption claims, Defendants contend on summary judgment that the Court erred in finding the distance and siting requirements, the permitting requirement, and the landowner permitting requirement were conflict preempted.  Concerning the claim of preemption under federal law, Defendants argue the Court erred in granting the injunction by finding any provision under the Ordinance was expressly preempted, taking the position that none of the county requirements qualify as "safety standards" within the meaning of the federal statute.  [ECF No. 62 at 36–37].  Specifically, they claim the Ordinance's Hazard Safety Plan "[does] not dictate the contents of the pipeline company's federally mandated, internal response plan" and merely request "information necessary to allow the County to perform its legal obligations under Iowa Code chapter 29C to engage in emergency response and hazard mitigation planning."  *Id*. at 40–41.  Put another way, they appear to argue that the Ordinance's Hazard Safety Plan is akin to an information sharing requirement, not a safety standard.   Defendants also claim that the Ordinance's abandonment and discontinuation requirements are not federally preempted, arguing that regulations of abandoned or discontinued pipeline facilities fall outside of federal jurisdiction.  *Id*. at 42.

The Court disagrees.  For reasons fully articulated in its Preliminary Injunction Order, the Court finds the Ordinance is preempted by federal and state law.  Notwithstanding Defendants' assurances that the Ordinance and Iowa Code § 479B are not irreconcilable, the challenged

restrictions impose severe limitations that will lead to a situation where the IUB may grant a permit to construct a pipeline and Summit is unable to do so. This situation is the one that preemption is designed to avoid; so long as the situation exists, the Ordinance is unenforceable under implied preemption. *City of Davenport v. Seymour*, 755 N.W.2d 533, 538 (Iowa 2008).

For the federal law preemption claims, Defendants' argument that the Ordinance's emergency preparedness requirements are merely requests for information, not components dictating safety standards, is unconvincing. As noted in the Preliminary Injunction Order, an application for a conditional use permit by a pipeline company must include extensive information on emergency response and hazard mitigation. If PHMSA regulations exist, pipeline companies must still provide documentation of compliance with those regulations. The companies must also include "a detailed plan describing how the Pipeline Company will work with the County's law enforcement, emergency management personnel, and first responders in the event of a spill, leak, rupture or other emergency or disaster related to the Pipeline." [ECF No. 59-2 at 14]. If no PHMSA regulations exist and the pipeline is a carbon dioxide pipeline, the pipeline companies must "submit a plan that meets the requirements of this section." *Id*. The requirements include a map and description of the proposed route, a description of the health risks, an estimate of the worst-case scenario for a carbon discharge, a list of structures and facilities in a fallout zone, a list of "high consequence areas" where a rupture would be more likely to result in the loss of life, alternative routes through the county designed to minimize risk, and "all information needed by county first responders . . . to engage in local emergency management." *Id*. at 14–15. Lastly, the pipeline companies may need to provide "a Carbon Dioxide Pipeline rupture emergency response training program" and equipment for "response personnel." *Id*. at 15.

As plainly evident, the Ordinance's Hazard Safety Plan imposes restrictions beyond merely information sharing to assist the County with its own emergency preparedness planning.  Because the statute provides the Secretary of Transportation with the authority to enact emergency response and hazard mitigation plans, and local governments are preempted from regulating the safety of facilities addressed by federal law, "from regulating in any manner whatsoever with respect to the safety of . . . facilities," the Court reiterates its earlier conclusion that express preemption invalidates the Ordinance's emergency response and hazard mitigation provisions.  49 U.S.C. § 60102(a)(2)(B); *see also ANR Pipeline Co. v. Iowa State Com. Comm'n*, 828 F.2d 465, 470 (8th Cir. 1987) (holding that, in the context of interstate transmission facilities, that local governments are precluded "from regulating in any manner whatsoever with respect to the safety" when Congress has set federal standards).

Defendants' unusual argument that the PSA jurisdiction does not extend to abandoned or discontinued pipeline facilities is equally unconvincing.  The statute provides the Secretary with authority to promulgate regulations on construction and maintenance of pipelines.  49 U.S.C. § 60102(a)(2)(B).  The regulations require the companies to implement procedures on the abandonment of pipelines.  *See* 49 C.F.R. § 195.402(c)(10) (requiring that a pipeline company must have a plan for "[a]bandoning pipeline facilities" that includes "safe disconnection from an operating pipeline system, purging of combustibles, and sealing abandoned facilities . . . to minimize safety and environmental hazards.").  They must also provide a report to the Secretary establishing its compliance with the statutory and regulatory provisions.  49 U.S.C. § 60108(b)(6)(A).  In light of this, the Court finds that PSA does extend to abandoned and discontinued pipelines.  As put forth in the Preliminary Injunction Order, the Ordinance's abandonment requirements are expressly preempted by the PSA.

IV.    CONCLUSION

For the reasons above and for reasons more fully articulated in its Preliminary Injunction Order, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED**.  [ECF Nos. 58; 59].

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction "must . . . state its terms specifically . . . and describe in reasonable detail . . . the act or acts restrained."  Fed. R. Civ. P. 65(d)(1)(B–C).  The scope of the permanent injunction is defined as follows:

1. **IT IS ORDERED** that Defendants Shelby County, Iowa, the Shelby County Board of Supervisors, and each of the Supervisors in their official capacities are permanently enjoined from enforcement of Shelby County Ordinance No. 2022-4 effective immediately.  They may not enforce Arts. 8.3, 8.4., 8.5. 8.6., 8.7., 8.8., 8.9., 8.10., 8.11., or 8.12 of the law in any capacity or through any instrumentality available to them.

2. **IT IS FURTHER ORDERED** that Defendants shall immediately issue a written notice to all employees in the County who are involved in enforcing Ordinance No. 2022-4 or have oversight of such enforcement and notify them of the permanent injunction prohibiting enforcement of the Ordinance.

3. **IT IS FURTHER ORDERED** that Defendants shall demonstrate its compliance with the Order by submitting an affidavit detailing its efforts to the Court within ten (10) days of entry of this Order.

IT IS SO ORDERED.

Dated this 4th day of December, 2023.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**ADD-47**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, | ) ) ) | Civil No. 4:22-cv-00383-SMR-SBJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| STORY COUNTY, IOWA, STORY COUNTY BOARD OF SUPERVISORS, LATIFAH FAISAL, in her official capacity as a Story County Supervisor, LINDA MURKEN, in her official capacity as a Story County Supervisor, and LISA HEDDENS, in her official capacity as a Story County Supervisor, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

On May 16, 2023, the Story County Board of Supervisors ("the Board") promulgated Story County Ordinance No. 311, repealing an earlier enactment, Story County Ordinance No. 306, that imposed setbacks and other requirements for hazardous materials pipelines.  Plaintiffs William Couser and Summit Carbon Solutions, LLC (collectively, "Plaintiffs") originally filed this suit in November 2022 to enjoin the enforcement of Ordinance No. 306, asserting that it was preempted by federal and state law.  They later amended their complaint after the enactment of Ordinance No. 311 claiming invalidity on the same grounds.  The parties filed cross-motions for summary judgment.  For the reasons discussed in detail below, Plaintiffs' Motion is GRANTED and Defendants' Motion is DENIED.

1

# I.   BACKGROUND

## A.  *Carbon Capture Technology in Iowa*

The State of Iowa's most valuable agricultural commodity is corn.  A significant volume of the corn produced in the state is used for ethanol fuel production.  Many byproducts are created during the production of ethanol.  One of those byproducts is carbon dioxide ("$CO_2$"), a greenhouse gas that traps heat in the atmosphere and impacts the global temperature.  Consequently, the release of large quantities of $CO_2$ into the atmosphere poses significant environmental concerns.

An alternative to the release of $CO_2$ into the atmosphere is a three-step process known as carbon capture and sequestration ("CCS").  The three steps in the CCS process entail capturing, transporting, and storing $CO_2$ in another location.  This CCS technology uses an extensive network of pipelines to transport the captured $CO_2$ from its original source to its desired destination. Plaintiff Summit Carbon Solutions, LLC ("Summit") has initiated a multi-state project to develop an interstate network of pipelines to receive, transport, and deliver captured $CO_2$ from more than thirty facilities—primarily ethanol and fertilizer plants.  The extensive network spans more than two thousand miles of underground pipelines, traveling across five Midwest states: South Dakota, North Dakota, Minnesota, Nebraska, and Iowa.  In Iowa, Summit's project will lead to the construction of more than seven hundred miles of pipeline through thirty counties, including Story County.

## B.  *Application Process with the Iowa Utilities Board*

In accordance with Iowa law, Summit began the process to obtain a siting permit for a new pipeline by holding informational meetings in each of the thirty counties identified as being impacted by the project, including in Story County.  After the meetings, Summit filed a Petition for a Hazardous Liquid Pipeline Permit with the Iowa Utilities Board ("IUB") on January 28, 2022.

**ADD-49**

Appellate Case: 23-3760   Page: 49   Date Filed: 04/24/2024 Entry ID: 5386923

The petition included, among other things, (a) the purpose of the proposed project; (b) a description of the proposed main line route; (c) an overview of the land uses of the areas impacted by the pipeline; (d) a consideration of alternative routes generated by software programs based on various datasets; and (e) information on present and future land use.  [ECF No. 31-1 at 108–120].  Summit explained that "[a]pproximately 94% of the proposed route is in agricultural lands" and anticipated "[n]o significant impacts . . . as a result of the construction and operation of the Project and associated facilities, and the Project can be constructed and operated consistent with present and future land uses."  *Id.* at 115.  It also wrote how the company "performed extensive analyses utilizing Geographic Information Systems . . . to avoid or minimize features identified as moderate risk, and exclude features identified as high risk."  *Id.*  The permit application has also been in the subject of extensive administrative proceedings before the IUB since its submission.[1]

### C.  *Enactment of the Story County Ordinance No. 306*

While the IUB proceedings were ongoing, the Board conducted a hearing on October 18, 2022 on a proposed ordinance establishing setbacks and other requirements for hazardous materials pipelines.  Specifically, this hearing concerned the enactment of Ordinance No. 306, a predecessor of Ordinance No. 311.

Before the hearing, the Story County Planning and Development Department drafted a memorandum to the Board, explaining that the Board should adopt Ordinance No. 306 to address safety concerns surrounding the recently proposed hazardous materials pipeline that would run through Story County.  [ECF No. 30-3 at 21].  At the hearing, the Planning and Development

---

[1]  The docket for the proceedings before the IUB may be found at this link: https://efs.iowa.gov/efs/ShowDocketSummary.do?docketNumber=HLP-2021-0001 (last visited November 28, 2023).

**ADD-50**

Appellate Case: 23-3760     Page: 50     Date Filed: 04/24/2024 Entry ID: 5386923

Director, Amelia Schoeneman, presented the proposed ordinance to the Board and stated it would be limited to requirements that regulate "hazardous materials pipelines that pose . . . health and safety risks."[2]  After her presentation, the Board opened the hearing for public comment and then unanimously approved the proposed ordinance on first consideration.  A week later, the Board conducted a second public hearing on Ordinance No. 306.  The Board approved the ordinance on second consideration and waived third consideration.  With this approval, Ordinance No. 306 officially amended Chapters 85 and 86 of the Story County Code of Ordinances.

In response, Summit filed this suit on November 14, 2022 against Story County (the "County"), the Board, and each Story County Supervisor in their official capacities.  Summit sought to enjoin the enforcement of Ordinance No. 306 on the grounds it is preempted by federal and state law.

### D.  Components of the Challenged Ordinance No. 306

Ordinance No. 306 contains numerous sections that are directly challenged by Plaintiffs and are relevant to the motions for summary judgment. The Court briefly reviews each below.

#### i.   Setback Requirements

Ordinance No. 306 establishes a complex distance and siting scheme for all new hazardous materials pipelines.  This scheme first categorizes new hazardous materials pipelines based on type and use.  The three categories are gas, liquid, and carbon dioxide (dense or supercritical phase). Each of the three categories is further divided into two sub-categories based on a pipeline's distance from: (1) residential developments and places of public assembly and (2) dwellings and other developments.

---

[2] Audio of Story Cnty. Bd. of Supervisors Meeting at 53:28 (Oct. 18, 2022).  The audio may be found at this link: https://www.storycountyiowa.gov/Archive.aspx?AMID=54 (last visited November 28, 2023).

4

For gas pipelines, the ordinance provides a setback formula based on the size of the pipeline and its maximum operating pressure. Natural gas has its own specific inputs to determine setbacks distinct from those of other gas pipelines.

For liquid pipelines, the ordinance requires setbacks as established under 49 C.F.R. § 195.210, as follows: "[n]o pipeline may be located within 50 feet (15 meters) of any private dwelling, or any industrial building or place of public assembly in which persons work, congregate, or assemble, unless it is provided with at least 12 inches (305 millimeters) of cover in addition to that prescribed in 49 C.F.R. § 195.248." [ECF No. 30-3 at 18-19].

For carbon dioxide (dense or supercritical phase) pipelines, the ordinance provides a different setback formula based on a pipeline's size. The formula again varies based on location. For example, a setback from a place of public assembly, such as a school or golf course, is greater than that from other developments.

ii. Emergency Plan Option

Ordinance No. 306 also includes an option to reduce these minimum setbacks "to the point at which no occupied structure is located within a risk area." *Id*. at 16. A "risk area" is defined as "the area where a professionally accepted level of concern threshold (where the concentration or other effect of a material is immediately dangerous to life or health) may be exceeded." *Id*. This option is triggered by the submission of an emergency plan. A proposed emergency plan that complies with Ordinance No. 306 must include a copy of all emergency plans required by federal regulations; outline potential emergency events (including the operator's ability to respond to such emergency); describe in detail the immediate response procedures; lay out a notification process to local authorities (including identifying potential concerns for the local authorities); attach computer models that predict the chemical reactions and risks to potential emergencies; outline an

5

evacuation plan for affected areas; and describe a consultation process with applicable cities to discuss the relationship of the proposed pipeline routes to the city's future growth plans.  The plan must also describe in specified detail any unique concerns that may affect local emergency responders and any specialized equipment that may be needed.  The pipeline companies are required to provide drills and training to local emergency responders.

### iii.  Minimum Cover Requirement

Ordinance No. 306 details a minimum cover requirement for all new hazardous materials pipelines, which dictates the depth in which an underground pipeline must be buried beneath certain landmarks.  If there is an applicable federal standard, the ordinance requires the pipeline operator to abide by those minimum depth of cover standards.  If there are no governing federal regulation, the ordinance requires a "minimum depth of 36 inches or greater" for agricultural land. *Id*. at 20.  The ordinance also includes the following catch-all provision:  "[a] greater depth shall be required when determined necessary to withstand external loads anticipated from deep tillage of 18 inches, as required by Iowa Administrative Code Chapter 9.5(6), Restoration of Agricultural Lands During and After Pipeline Construction." *Id*.

### iv.  Critical Natural Resource Area Protections Requirement

Ordinance No. 306 establishes additional standards for new hazardous materials pipelines in ordinance-designated  "Critical Natural Resource Areas."  First, a hazardous materials pipeline is prohibited in such areas unless specifically permitted by ordinance.  This includes the maintenance of buffer areas.  Second, the pipeline operator must explain "why rerouting around a Critical Natural Resource Area is unavoidable." *Id*.  Once a determination is made that rerouting is unavoidable, the pipeline operator may only build a pipeline in Critical Natural Resource Areas, including in the undisturbed buffer areas, by utilizing trenchless construction methods.

6

v.   Rezoning Consultation Requirement[3]

The last provision under Ordinance No. 306 is an obligation on the County, not on pipeline operators.   When new developments are proposed near the pipeline facilities, the County is required to consult with the pipeline operators to discuss potential risks.

*E.   Enactment of the Story County Ordinance No. 311*

During the pendency of this litigation, the Board held a public hearing on May 9, 2023 to consider Ordinance No. 311, a new amendment that would repeal Ordinance No. 306. Schoeneman presented the newest amendment to the Board and recommended a standard one-quarter mile setback from dwellings, various residential and commercial areas, certain places of assembly, city boundaries, and urban expansion areas.   Ordinance No. 311 also included a trenchless construction requirement in Critical Natural Resource Areas; the submission of an emergency response or preparedness plan to assist the County with its emergency response planning; and an authorization requirement that prohibits the commencement of construction until the applicant "obtain[s] all required federal, state, and local permits and any private easements or other land use permissions prior to commencing construction and submit[s] documentation of such authorizations."   [ECF No. 30-3 at 8–9].   The new ordinance eliminated all prior standards for hazardous *materials* pipelines and only established new requirements for hazardous *liquid* pipelines.

The avowed purpose of the proposed regulation also changed.   By admission of the parties, the primary purpose of Ordinance No. 306 was to address the safety concerns of hazardous materials pipelines.   [ECF No. 34 at 26].   Seven months later, the Board entertained a new

---

[3] Summit argues the Rezoning Consultation Requirement is preempted by state law.   [ECF No. 30-1 at 17 n.6].   It is unclear, however, how an obligation *on the County* affects the IUB's permit process or Summit's ability to construct an IUB-approved pipeline.

**ADD-54**

Appellate Case: 23-3760   Page: 54   Date Filed: 04/24/2024 Entry ID: 5386923

amendment with an entirely different interest for regulating hazardous liquid pipelines.   In recommending the approval of Ordinance No. 311, Schoeneman now claimed a general interest in regulating hazardous liquid pipelines consistent with "how Story County has developed historically."[4]   Schoeneman reiterated this sentiment at the next hearing before the Board:

> I just want to clarify one point on the ordinance . . . that it is about orderly development of land.  It doesn't have to do with safety.  We're looking at historic patterns of development here, . . . coordinating with our cities and how they're going to grow in the future, preserving the County's rural character, and [ensuring there is] adequate spacing [for] uses that . . . could interfere with each other.[5]

On May 16, 2023, the Board convened for a second public hearing.  At the close of the hearing, the Board waived third consideration to approve Ordinance No. 311.

### F.  Components of the Challenged Ordinance No. 311

Ordinance No. 311 contains numerous sections that are directly challenged by Plaintiffs and are relevant to the motions for summary judgment.  The Court briefly reviews each below.

### i.  Preamble

The newly passed Ordinance No. 311 also contains a four-page preamble that describes the purported historical background and legal authority behind this amendment, and ultimately sets forth what the Board believes favors the validity of Ordinance No. 311 against federal and state preemption.   The Board concludes the preamble by stating the new purpose for regulating hazardous liquid pipelines:

> [T]o adopt standards, including setbacks, for hazardous liquid pipelines consistent with (1) historic patterns of development; (2) goals of the Plan for protection of (a) the County's rural character, (b) reduction of

---

[4] Audio of Story Cnty. Bd. of Supervisors Meeting at 1:23:17 (May 9, 2023).  The audio may be found under the same link provided in footnote 2.

[5] Audio of Story Cnty. Bd. of Supervisors Meeting at 1:10:49-1:11:12 (May 16, 2023).  The audio may be found under the same link provided in footnote 2.

ADD-55

> incompatibilities between land uses including utilities,
> (c) intergovernmental coordination related to future urban development,
> (d) appropriate siting of new development, (e) preservation of existing rural
> residential development, (f) communication and collaboration with
> partnering agencies and organizations on emergency preparedness; and
> (3) to achieve the intent and purpose of the Ordinance to ensure orderly
> growth and development and address social, economic, and environmental
> concerns related to conflicts between different uses of land.

[ECF No. 30-3 at 5-6].  The lengthy preamble is followed by a brief section describing the purpose of the ordinance, the proposed amendments, a repealer and severability clause, and the effective date of the ordinance.

### ii.   Setback Requirements

The parties' dispute largely centers on the validity of the new standards for hazardous liquid pipelines.  Four new standards are challenged.  The first of those standards is the setbacks.

The new setbacks eliminated the formula-based setbacks of the previous ordinance and, in its place, provided a standard one-quarter mile setback from various locations.  Specifically, the new setback standards provide:

> A setback of one-quarter mile shall be required from dwellings, areas zoned
> A-R Agricultural Residential, R-1 Transitional Residential, R-2 Urban
> Residential, RMH Residential Manufactured Housing District, C-LI
> Commercial/Light Industrial District, HI Heavy Industrial District,
> retirement and nursing homes, family homes, schools, childcare homes and
> centers, group homes, hospitals, detention facilities, human service
> facilities, campgrounds, day camps, cemeteries, stables, amphitheaters,
> shooting ranges, golf courses, stadiums, parks, houses of worship, and
> auditoriums . . [and] from city boundaries and areas identified as Urban
> Expansion by the C2C Plan Future Land Use Map.

*Id*. at 8.  The ordinance also states the "setback shall be measured from the pipeline to the closest point of the building or property line, depending on the identified use type." *Id*.

**ADD-56**

Appellate Case: 23-3760    Page: 56    Date Filed: 04/24/2024 Entry ID: 5386923

### iii.  Critical Natural Resource Area Protections Requirement

The second standard is a trenchless construction methods requirement in areas designated as Critical Natural Resource Areas under ordinance.  This provision under Ordinance No. 311 restricts the construction of a hazardous liquid pipeline in Critical Natural Resource Areas in the same manner as Ordinance No. 306.  The new ordinance similarly requires a pipeline company may only utilize trenchless construction methods to install its pipeline in such areas, including in its buffer areas.

### iv.  Emergency Plan Requirement

The third standard is a narrower version of the previous ordinance's emergency planning requirement.  Under this narrower version, a pipeline operator proposing to construct a hazardous liquid pipeline within Story County must submit a copy of an emergency response or preparedness plan "to assist with the County's emergency response planning."  *Id*. at 9.  "The plan may be a preliminary or draft version of an emergency response plan that would meet the requirements of the federal Pipeline and Hazardous Materials Safety Administration."  *Id*.  Importantly, the "County will [then] determine whether the information in the plan is sufficient for the County to plan its own emergency response and may request additional information."  *Id*.

### v.  Authorization Requirement

The fourth and last standard is an authorization requirement.  It imposes a strict prohibition against commencing construction until "all required federal, state, and local permits and any private easements or other land use permissions" are obtained.  *Id*.  A pipeline operator must also "submit documentation of such authorizations with the permit application."  *Id*.

10

**ADD-57**

## II.    PROCEDURAL HISTORY

The original complaint alleged that Ordinance No. 306 is preempted by the Pipeline Safety Act ("PSA"), a federal law regulating many aspects of pipeline safety, and Iowa Code § 479B, which provides the IUB with authority to issue permits approving the construction of pipelines.

After the Board passed Ordinance No. 311, which repealed many of the provisions in Ordinance No. 306, Plaintiffs filed an Amended Complaint alleging that the new ordinance was also preempted.   The Amended Complaint takes the position that both ordinances are invalid because they are preempted by federal and state law.

On August 21, 2023, both parties filed a Motion for Summary Judgment.   Plaintiffs ask the Court to prohibit the County: "(1) from enforcing Ordinance No. 311 or its predecessor (Ordinance No. 306); (2) from implementing other ordinances on the permitting, construction, or development of Summit's pipeline project; and (3) from implementing any ordinance (or comparable regulation) that regulates any safety, permitting, or siting aspect of Summit's pipeline project."   [ECF No. 30 at 2].

On the other hand, Defendants request that the Court to find: "(A) Plaintiffs' challenges to Ordinance No. 306 are moot; (B) the County's hazardous liquid pipeline ordinance is not preempted by state law, and (C) the County's hazardous liquid pipeline ordinance is not preempted by federal law."   [ECF No. 31 at 2].

On October 27, 2023, Defendants filed a supplementary briefing informing the Court that Summit is working closely with counties in South Dakota to ensure it complies with their local ordinances, and they suggest that Summit could similarly work with counties in Iowa, including Story County.   Defendants argue Summit's conduct in South Dakota shows "it is not impossible

**ADD-58**

for Summit to likewise comply with Iowa Code chapter 479B *and* the County's ordinance" and thus no conflict preemption exists.  [ECF No. 46 at 2].

In their supplement, Defendants also include two additional updates: (1) Summit's recent changes to its pipeline routes in North Dakota and South Dakota outside of the landowner easement process, which they argue undercuts Summit's earlier contention that it cannot do the same in Iowa, and (2) Pipeline and Hazardous Materials Safety Administration ("PHMSA") recently issued a letter to Summit, which Defendants argue supports a different, more collaborative, understanding of the roles of the different levels of government in addressing safety concerns associated with hazardous liquid pipelines.  Plaintiffs respond that Summit's conduct in other states is irrelevant to the legal issues before the Court and that the content of the PHMSA letter was fully briefed in prior filings, as the federal administration's recent letter mirrors a 2014 letter that was already submitted to the Court.

For the reasons below, Plaintiffs' Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED.

### III.    GOVERNING LAW

#### A.  *Summary Judgment Standard*

"Summary judgment is proper if the movant 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *United States v. Meyer,* 914 F.3d 592, 594 (8th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)).  "If the moving party has met this burden . . . the non-moving party must set forth specific

**ADD-59**
Appellate Case: 23-3760     Page: 59     Date Filed: 04/24/2024 Entry ID: 5386923

facts showing that there are genuine issues for trial." *Bankston v. Chertoff*, 460 F. Supp. 2d 1074, 1085 (D. N.D. 2006) (citation omitted).   To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element for which it has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   When considering a summary judgment motion, a court must view "evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences from that evidence in favor of the nonmoving party." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016) (quoting *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015)).   However, a court must reject an interpretation of events in favor of a party if it is blatantly contradicted by the record.   *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2010)).   Summary judgment is most appropriate when the "issues are primarily legal rather than factual" in nature.  *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir. 1996).

### B.  Relationship Between Iowa Home Rule Authority and Preemption

In 1978, an amendment to the Iowa Constitution granted local authorities the power "to determine their local affairs and government." *Goodell v. Humboldt Cnty.*, 575 N.W.2d 486, 492 (Iowa 1998) (quoting Iowa Const. art. III, § 39A).   This power, known as home rule authority, allows counties and local authorities to enact ordinances on matters of their choosing "unless a particular power has been denied [to] them by statute." *City of Des Moines v. Master Builders of Iowa*, 498 N.W.2d 702, 703–04 (Iowa 1993).   The Iowa Legislature may preempt or deny local municipalities authority to enact measures on certain subjects in an express or an implied manner. *Goodell*, 575 N.W.2d at 492.   Express preemption occurs when the Iowa Legislature has directly prohibited local action in an area.  *Chelsea Theater Corp. v. City of Burlington*, 258 N.W.2d 372, 373 (Iowa 1977) (holding a law passed by the Iowa Legislature preempted local regulation of

**ADD-60**

obscene materials because the statute imposed "uniform[ity].").  Implied preemption occurs if a municipality "prohibits an act permitted by a statute, or permits an act prohibited by a statute." *City of Des Moines v. Gruen*, 457 N.W.2d 340, 342 (Iowa 1990) (citation omitted).  It may occur if the Legislature has "cover[ed] a subject by statutes in such a manner as to demonstrate a legislative intention that the field is preempted by state law."  *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 812 (Iowa 1983).

### C.  Iowa Regulation of Pipelines

The Iowa Legislature has enacted a statutory scheme to govern the construction of pipelines.  *See* Iowa Code § 479B *et. seq.*  Under Iowa law, "[a] pipeline company shall not construct, maintain, or operate a pipeline or underground storage facility under, along, over, or across any public or private highways, grounds, waters, or streams of any kind . . . except in accordance with this chapter."  *Id.* § 479B.3.  To receive permission to construct a pipeline, the company must "file a verified petition with the board asking for a permit to construct, maintain, and operate a new pipeline."  *Id.* § 479B.4(1).[6]  The permit application must include, among other information, a "legal description of the route of the proposed pipeline and a map of the route," "[a] general description of the public or private highways, grounds, waters, streams, and private lands of any kind," "the possible use of alternative routes," and "the relationship of the proposed project to the present and future land use and zoning ordinances."  *Id*. § 479B.5(3–7).

Once a petition is filed, the statute directs the IUB to "fix a date for a hearing." *Id.* § 479B.6(1).  Prior to the hearing, any individual or entity "whose rights or interests may be affected by the proposed pipeline or hazardous liquid storage facilities may file written objections . . . not less than five days before the date of the hearing on the application."  *Id.* § 479B.7.  At the

---

[6] Iowa Code § 479B's usage of "the board" refers to the Iowa Utilities Board.

**ADD-61**
Appellate Case: 23-3760     Page: 61     Date Filed: 04/24/2024 Entry ID: 5386923

hearing, the board shall consider the petition, any objections, or testimony "in making its determination regarding the application." *Id.* § 479B.8.  At the hearing, "[t]he board may [also] examine the proposed route of the pipeline and location of the underground storage facility." *Id.*

After a hearing, the IUB "may grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper." *Id.* § 479B.9. A permit "shall not be granted to a pipeline company unless the board determines that the proposed services will promote the public convenience and necessity." *Id.*  The applicant is responsible for "all costs of the informational meetings, hearing, and necessary preliminary investigation . . . [and] the actual unrecovered costs directly attributable to inspections conducted by the board." *Id.* § 479B.10.

### D.  Federal Preemption

The Supremacy Clause of the United States Constitution states that "the laws of the United States" are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  This means state laws that conflict with federal laws or regulations are invalid, unenforceable, and unconstitutional. *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978).  This rule applies "in several different ways." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).  First, Congress may engage in express preemption by stating its intent to do so. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).  Second, Congress may preempt state laws "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough Cnty.*, 471 U.S. at 713 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Third, federal law nullifies state law if they conflict. *Id.* (citing *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43

(1963)).  Fourth, implied preemption occurs when Congress "intended to oust state law in order to achieve its objective."  *Kinley Corp v. Iowa Util. Bd.*, 999 F.2d 354, 358 n.3 (8th Cir. 1993). Both federal statutes and regulations can preempt state law.  *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984).

### E.   Federal Legislation and Regulation of Pipelines

Federal statutes and regulations govern nearly every part of the construction and operation of hazardous liquid pipelines.  In 1994, Congress enacted the Pipeline Safety Act ("PSA") in an attempt to provide uniformity to the federal laws governing the construction of various types of pipelines.[7]  Under the PSA, the Secretary of Transportation "shall prescribe minimum safety standards for pipeline transportation and for pipeline facilities."   49 U.S.C. § 60102(a)(2). Authority given to the Secretary of Transportation is, in turn, delegated to PHMSA.  *See id.* § 108. The PHMSA promulgates regulations on "the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities."  *Id.* § 60102(a)(2)(B).

The PHMSA has promulgated many pipeline regulations that are relevant to this dispute. One regulation states that "[p]ipeline right-of-way must be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly."  49 C.F.R. § 195.210(a).  In addition, "[n]o pipeline may be located within 50 feet (15 meters) of any private dwelling, or any industrial building or place of public assembly in which persons work, congregate, or assemble, unless it is provided with at least 12 inches (305 millimeters) of cover in addition to that prescribed in § 195.248."  *Id.* § 195.210(b).

---

[7] The statute incorporated previous statutes into its framework.  49 U.S.C. § 60102(a)(1). This means that decisions interpreting said statutes are relevant to interpreting the PSA.  *Id.*

16

Pipeline companies must also abide by certain construction standards.  These include minimum cover standards.  *Id*. § 195.248 (mandating covers by pipeline location and excavation type); § 195.210(b) (near private dwellings, industrial buildings, or places of public assembly); *Id*. § 192.327 (transmission lines).

Other relevant regulations describe how pipelines must prepare for emergencies. *Id*. § 195.402(e) (requiring pipeline operators to implement emergency procedures, including "[r]eceiving, identifying, and classifying notices of events that need immediate response," "[h]aving personnel, equipment, instruments, tools, and material available as needed at the scene of an emergency," and "assisting with evacuation of residents.").

In addition to regulations, the statute provides a "[s]tate authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c).  This language is understood to preclude "state decision-making in this area altogether."  *Kinley Corp.*, 999 F.2d at 359.  The statute "leaves no regulatory room for the state to either establish its own safety standards or supplement the federal safety standards."  *Id.* (citing *ANR Pipeline Co. v. Iowa State Com. Comm'n*, 828 F.2d 465, 472 (8th Cir. 1987)).  Put simply, the PSA is a sweeping exercise of express preemption.  *Id.*

## IV.   PRELIMINARY QUESTIONS

### A.  Enforcement of Ordinance No. 306

Plaintiffs' Motion addresses both ordinances to avoid confusion regarding whether Ordinance No. 306 would survive the invalidation of Ordinance No. 311.  Defendants respond in their Motion that Ordinance No. 306 has been "repealed and replaced" so any challenges to it are "moot."  [ECF No. 34 at 11–12].  Given these representations to the Court, and Defendants' concession that the challenged provisions of Ordinance No. 306 are preempted anyway, the

**ADD-64**

Appellate Case: 23-3760   Page: 64   Date Filed: 04/24/2024 Entry ID: 5386923

Court's analysis will include both ordinances but focus primarily on Ordinance No. 311.  Such analysis would apply equally to any subsequent effort to enforce Ordinance No. 306.  For the sake of clarity, the Court will rely on Defendants' representations that Ordinance No. 306 do not survive regardless of any determination of the validity of Ordinance No. 311.

### B.  The Intent of Ordinance No. 311

Much enthusiastic debate in the summary judgment record, albeit ultimately irrelevant, was aimed at dissecting the real intent of the Board underlying the adoption of Ordinance No. 311. Plaintiffs argue that "Story County enacted both Ordinance No. 306 and Ordinance No. 311 for the very purpose of regulating pipeline safety," regardless of the purported reasons under the Ordinance No. 311 and at the Board's public hearings.  [ECF No. 30-1 at 13].  Defendants disagree. Defendants acknowledge that Ordinance No. 306 imposed safety standards to regulate interstate hazardous materials pipelines, stating that "[a]t the time Ordinance No. 306 was enacted, safety was a primary consideration and the specifications reflected that focus."  [ECF No. 34 at 26].  They argue instead that the two ordinances are distinct amendments with an entirely different intent behind their approval and should be examined by the Court as such.  This argument, in its most credulous iteration, would ask the Court assessing the validity of the new ordinance: (1) to ignore the Board's admittedly singular focus of regulating pipeline safety when passing Ordinance No. 306 and (2) accept that the Board's new regulations under Ordinance No. 311 were adopted approximately seven months later—*in the middle of litigation*—for reasons other than regulating pipeline safety.  This argument is particularly unconvincing when the "changes" comprise substantially the same components as those in the repealed ordinance: the ordinances establish

**ADD-65**

(a) distance and siting requirements, (b) certain other controls over hazardous liquid pipelines delegated to the IUB through its permitting process, and/or (c) emergency planning requirements.[8]

Ultimately, the intent of the County in passing Ordinance No. 311 is not relevant for the determination at summary judgment. The Board could pass an ordinance which is specifically intended to fall within the bounds of preemption under federal or state law but fails to do so. It could also enact an ordinance with the purest motives but ultimately conflicts with federal law or transgresses the boundaries of Iowa home rule authority. Intent of the Board is not the issue when considering whether either ordinance is preempted. For reasons set forth in this Order, the challenged components of both ordinances are expressly or impliedly preempted by federal and state law, as both Congress and the Iowa Legislature did not envision a role for local governments to impose these restrictions on pipelines.

## V.  STATE PREEMPTION ANALYSIS

### A.  Statutory Interpretation Under Iowa Law

"A trial court's determination of whether a local ordinance is preempted by state law is a matter of statutory construction." *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 339 (Iowa 2015) (quoting *City of Davenport v. Seymour*, 755 N.W.2d 533, 537 (Iowa 2008)). "In construing statutes, [the] goal is to ascertain legislative intent." *Mall Real Estate, L.L.C v. City of Hamburg*, 818 N.W.2d 190, 194 (Iowa 2012) (citation omitted). "In ascertaining legislative intent, we consider the language used in the statute, the object sought to be accomplished, and the wrong to be remedied." *Swainston v. Am. Fam. Mut. Ins. Co.*, 774 N.W.2d 478, 482 (Iowa 2009) (quoting *Mortenson v. Heritage Mut. Ins. Co.*, 590 N.W.2d 35, 39 (Iowa 1999)). "We consider all parts of

---

[8] The Court cautions that Defendants' proposition, if adopted by other courts, could lead to the regular use of superficial repeals and amendments by state or local governments to evade federal preemption challenges in the middle of litigation.

19

an enactment together and do not place undue importance on any single or isolated portion." *Id.* "In the context of state-local preemption, the silence of the legislature is not prohibitory but permissive." *Bellino Fireworks, Inc. v. City of Ankeny, Iowa*, No. 4:17-cv-212-RGE-CFB, 2017 WL 11446135, at \*6 (S.D. Iowa June 29, 2017) (quoting *Seymour*, 755 N.W.2d at 543).

## B. Iowa State Law Claims

Summit argues two components of Ordinance No. 306 and one component of Ordinance No. 311 are preempted by Iowa Code § 479B. For Ordinance No. 306, it contends the components pertaining to (i) distance and siting and (ii) certain other controls over hazardous liquid pipelines under the IUB permitting scheme are unenforceable because Iowa Code § 479B delegates authority over such matters to the IUB.

For Ordinance No. 311, it contends the distance and siting components are unenforceable for the same reason. Defendants argue the disputed provisions of both ordinances are not preempted because Iowa Code § 479B does not limit their ability to engage in ordinary zoning and "does not directly contradict any provision in chapter 479B or rewrite the state regulatory scheme." [ECF No. 39 at 6-8].[9] The Court finds that the challenged components under this subsection cannot be enforced because of implied preemption.

### i. Distance and Siting Requirements

The first issue is whether the two ordinances' distance and siting requirements are impliedly preempted by Iowa Code § 479B. The Court finds that they are.

Both ordinances impose many limitations on the placement of pipelines. Ordinance No. 306 requires Summit to lawfully place a pipeline based on a complex distance and siting scheme

---

[9] Defendants' resistance to Plaintiffs' Motion addresses Ordinance No. 311 but is equally applicable to Ordinance No. 306.

20

**ADD-67**

that varies depending on the type and use of the pipeline and its distance from certain areas and developments.  For liquid pipelines, it adopts the federal setback standards under 49 C.F.R. § 195.210.  For all other pipelines, formulas are utilized with inputs based on the size of the pipeline, its maximum operating pressure, and other factors.  The limitations under Ordinance No. 311 are restrictive as well.  Ordinance No. 311 provides numerous situations where a one-quarter mile setback is required.[10]  Both ordinances also impose severe restrictions on construction of a pipeline in areas designated as Critical Natural Resource Areas.

These restrictions significantly limit the land in Story County on which an IUB-approved pipeline may be built.  The restrictions by Ordinance No. 306 on hazardous *liquid* pipelines do not eliminate all or almost all land in Story County, as these restrictions mirror the federal minimum setback standards.  However, all other pipelines are restricted significantly enough to prevent their operators from completing, or even beginning, to construct a pipeline in Story County after the approval from IUB.  The same problem exists with the restrictions under Ordinance No. 311.

Defendants argue that Plaintiffs have not offered any evidence proving it is impossible to build a pipeline in Story County.  [ECF No. 34 at 21-22].  They state that "[t]he County consists of 572 square miles," while the "largest setback in the ordinance is one quarter mile."  *Id*. at 21.  Defendants' statement, however, misunderstands the nature of an interstate pipeline.  An interstate pipeline is not a single structure that may be placed in one location within the 572 square miles of the County's land area.  The largest setback of one-quarter mile applies to numerous areas as

---

[10]  These includes, dwellings, areas zoned A-R Agricultural Residential, R-1 Transitional Residential, R-2 Urban Residential, RMH Residential Manufactured Housing District, C-LI Commercial/Light Industrial District, HI Heavy Industrial District, retirement and nursing homes, family homes, schools, childcare homes and centers, group homes, hospitals, detention facilities, human service facilities, campgrounds, day camps, cemeteries, stables, amphitheaters, shooting ranges, golf courses, stadiums, parks, houses of worship, auditoriums, city boundaries, and Urban Expansion Areas.

recounted by the Court above.  The ordinance requires a setback from each of those areas while, at the same time, the  pipeline must traverse through Story County, eventually connecting to twenty-nine counties in Iowa and many more counties in the four other Midwest states.  It will create a serious possibility the IUB would approve the construction of the pipeline but Summit would be unable to build because it could not comply with the requirements of the ordinances.  Put another way, the ordinances would prohibit "an act permitted by a statute." *Gruen*, 457 N.W.2d at 342.  This situation is the one that preemption is designed to avoid, and the ordinances are unenforceable under implied preemption. *Seymour*, 755 N.W.2d at 538 (citation omitted).

Other portions of the statute support this interpretation.  Specifically, the statute directly assigns a role to the county boards of supervisors in some provisions but not in others.  A notable example requires a board of supervisors to consider certain topics, hire a professional engineer, and conduct detailed inspections for the purposes of land restoration.  Iowa Code § 479B.20.  This stands in sharp contrast to the location provisions of the statute, which do not mention local governments.  *See id*. §§ 479B.8, 479B.9.  This omission is evidence that the Legislature did not envision a role for local governments in regulating the location of pipelines. *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001) ("the express mention of one thing implies the exclusion of other things not specifically mentioned"); *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995) (same).

Defendants argue that the permit-prohibit test, as reiterated by the Iowa Supreme Court in *Goodell*, should be narrowly interpreted.  Under the permit-prohibit test, implied preemption exists when a local regulation "prohibits an act permitted by a statute, or permits an act prohibited by a statute." *Goodell*, 575 N.W.2d at 493.  Defendants points out a tension with the permit-prohibit test and a municipal's home rule authority under the Iowa Constitution.  They claim that a municipality's home rule authority under Iowa Code § 331.301, which allows local governments

**ADD-69**

to "set standards and requirements which are higher or more stringent than those imposed by state law, unless a state law provides otherwise," is utterly eroded under a strict interpretation of the permit-prohibit test.  They reason that any higher or more stringent standards or requirements imposed by local governments would prohibit an act permitted by state statute.  To harmonize this tension, Defendants cite to a post-*Goodell* case that included a caveat to the permit-prohibit test. In 2002, the Iowa Court of Appeals held that a city tire disposal ordinance is not preempted by state statute unless the two are irreconcilable and not merely adding further restrictions.  *BeeRite Tire Disposal/Recycling, Inc. v. City of Rhodes*, 646 N.W.2d 857, 860 (Iowa Ct. App. 2002). Defendants argue the ordinances and Iowa Code § 479B are not irreconcilable and thus no implied preemption exists.

The Court disagrees.  The *BeeRite* court considered the subject matter of the ordinance as an important part of its reasoning.  The court stated:

> [T]he subject matter here is not livestock confinement as it was in *Goodell* . . . unlike the problem of livestock confinement waste where resulting pollutants enter air and water and thus flow freely throughout the state, *tire piles are confined to one area, and there is consequently less of an inherent need for regulations throughout the state to be uniform in order to make any one regulation enforceable.*

*Id*. at 861 (citations omitted) (emphasis added).  Put another way, a strict interpretation of the permit-prohibit test in *Goodell* does not erode a municipality's home rule authority for certain subject matters, as there is an inherent need for uniform regulations across the state for matters such as livestock confinement (or interstate pipelines).  Of course, many legal principles can inadvertently supersede related laws if interpreted too strictly.  However, in this case, Defendants do not offer such an unduly restrictive interpretation of home rule authority.  The ordinances contain a laundry list of distance and siting requirements—complete with setbacks of one-quarter mile—which apply throughout the County that make the siting of a pipeline essentially impossible.

23

**ADD-70**

The aforementioned discussion provides support that the subject matter at issue here is critical for ascertaining the breadth of home rule authority in regulating the location of pipelines. The very nature of the case necessitates a uniform distance and siting standard throughout the state. Pursuant to the above discussion, the Court concludes the distance and siting requirements of both ordinances are implicitly preempted by Iowa Code § 479B.

ii.   IUB's Permitting Scheme

The next issue concerns whether the following three requirements are preempted by the IUB's permitting scheme under Iowa Code § 479B: the minimum cover requirement, trenchless construction requirement, and authorization requirement.  For the reasons discussed below, these provisions are impliedly preempted by Iowa Code § 479B.

Iowa law provides that "[a] pipeline company doing business in this state shall file a verified petition with the board asking for a permit to construct, maintain, and operate a new pipeline along, over, or across the public or private highways, grounds, waters, and streams . . . in this state."  Iowa Code § 479B.4(1).  The petition must include information about the company filing the application, a legal description of the pipeline, locations of storage facilities, alternative routes, and potential interactions with "present and future land use and zoning ordinances." *Id*. § 479B.5.  The IUB "may grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper."  *Id*. § 479B.9.

This  permitting scheme also includes two components that are relevant for this discussion. First, the implementing regulations of Iowa Code § 479B requires an applicant to submit information related to the construction methods of a proposed pipeline, such as "engineering specifications covering the engineering features, materials and manner of construction of the proposed pipeline."  Iowa Admin. Code 199-13.3(479B).  Second, the implementing regulations

24

of Iowa Code § 479B also require a pipeline company to submit documentation to show it obtained all necessary permissions from the appropriate authorities to begin construction of a pipeline.  Iowa Admin. Code 199-13.3(1)(e)(479B).  If all necessary permissions have not been obtained, a pipeline company may alternatively submit statements ensuring they will get them.  *Id*.  The authorization requirement under the federal regulations is relatively flexible.  Specifically, the federal regulations allow pipeline companies to "request board approval to begin construction on a segment of a pipeline *prior* to obtaining all necessary consents for construction of the entire pipeline."  *Id*. (emphasis added).

The ordinances include three requirements that are relevant to this discussion.  First, Ordinance No. 306 provides that a pipeline company must maintain either the federal minimum cover requirements or, if none exists and the land is in agricultural production, maintain a "minimum depth of 36 inches or greater."  [ECF No. 30-3 at 20].  In addition, "[a] greater depth shall be required when determined necessary to withstand external loads anticipated from deep tillage of 18 inches," as currently required by Iowa regulations.  *Id*.  Second, both ordinances require only trenchless construction methods in areas designated as Critical Natural Resource Areas.  *Id*.  Third, Ordinance No. 311 contains an authorization requirement that prohibits construction until the pipeline company submits documentation that it has "obtain[ed] all required federal, state, and local permits and any private easements or other land use permissions prior to commencing construction."  *Id*. at 9.

The Court finds that Iowa Code preempts the ordinances to the extent they interfere with the construction of an IUB-approved pipeline.  First, the components pertaining to minimum cover and trenchless construction methods interfere with the IUB's authority because it requires pipeline companies to maintain the County's construction standards after the submission of a petition to

the IUB.  By their own admission, Defendants envision Summit changing the route of the pipeline during or after the IUB process to comply with the ordinances.  [ECF No. 34 at 9].  In fact, they argue that any rerouting due to the county's restrictions are "a standard part of the pipeline planning process."  *Id*.  However, this will lead to a situation where the IUB may grant a permit to construct a pipeline and Summit is unable to do so.  Such a situation renders a local law irreconcilable with state law and thus unenforceable under preemption.  *Goodell*, 575 N.W.2d at 500 (explaining the "well established" principle of law that "[a] local law is 'irreconcilable' with state law when the local law 'prohibits an act permitted by statute, or permits an act prohibited by a statute.'") (citations omitted).

A similar conclusion is appropriate for the County's authorization requirement.  Under its permitting scheme, the IUB may allow a pipeline company to commence construction prior to obtaining "all necessary consents for construction of the entire pipeline."  Iowa Admin. Code 199-13.3(1)(e)(479B).  Under Ordinance No. 311, a pipeline company that obtains all necessary permissions in Story County from the appropriate authorities, if any, will be nonetheless prohibited from commencing construction until it has "obtain[ed] all required federal, state, and local permits and any private easements or other land use permissions prior to commencing construction."  [ECF No. 30-3 at 9].  This will once more lead to a situation where the IUB may grant permission to Summit to begin construction of a pipeline in Story County and Summit is unable to do so.  As set forth earlier, such a situation renders a local law unenforceable under preemption.

This conclusion is supported by other provisions under the implementing regulations of Iowa Code § 479B.  Iowa Admin. Code 199-13.3(479B).  Under these regulations, pipeline companies must seek and receive permission from numerous entities and submit this information with their application for a petition.  Iowa Admin. Code 199-13.3(1)(e).  They must obtain consent

**ADD-73**

Appellate Case: 23-3760   Page: 73   Date Filed: 04/24/2024 Entry ID: 5386923

from "appropriate public highway authorities, or railroad companies" who would be affected by the pipeline.  Iowa Admin. Code 199-13.3(1)(e)(1).  They shall list and acquire any permits required by "federal agencies" or "state agencies."  Iowa Admin. Code 199-13.3(1)(e)(3)–(4).  The regulations do not mention permits from local municipalities as being required for consideration for building a pipeline.  Put another way, the exclusion of municipalities from these regulations suggests that they were intended to not have a role in the permitting process.

It is important to note at this juncture that the Court reaches a different conclusion for the last provision under Ordinance No. 306, which requires the County to consult with the pipeline companies when new developments are proposed within the setback areas.  Specifically, the provision states that "[w]hen a rezoning, minor or major subdivision, or other permit for a place of public assembly, as defined by Table 86-11 is proposed within the required setback for new pipelines, consultation with the pipeline operator on the potential risks shall be required." [ECF No. 30-3 at 20].  Summit argues that this mandatory consultation requirement is preempted by state law because "the IUB already considers rezoning in the permit process."  [ECF No. 30-1 at 17 n.6].  Specifically, the IUB considers rezoning in the permitting process by requiring a permit to include "the relationship of the proposed project to the present and future land use and zoning ordinances."  Iowa Code § 479B.5(7).  The issue, however, is not whether IUB considers rezoning at any point under its permitting scheme.  The issue on preemption is whether the ordinance's requirements will lead to a situation where the IUB may grant a permit to construct a pipeline and Summit is unable to do so.  Plaintiffs have not offered such a scenario in this case.  Any failure to abide by the mandatory consultation requirement will neither impact the IUB's ability to grant a permit to construct a pipeline, nor Summit's ability to construct an IUB-approved pipeline. Therefore, the mandatory consultation requirement under Ordinance No. 306 is not preempted.

**ADD-74**

Appellate Case: 23-3760   Page: 74   Date Filed: 04/24/2024 Entry ID: 5386923

Given this discussion of Iowa law and its implementing regulations, the Court concludes the minimum cover requirement, trenchless construction methods requirement, and authorization requirement in the ordinances are preempted by Iowa Code § 479B.

## VI.   FEDERAL PREEMPTION ANALYSIS

The Court next considers whether other components of the ordinances are preempted by federal law.  An examination of federal law supports a permanent injunction of these components.

### A.   *Statutory Interpretation Under Federal Law*

Statutory analysis begins "with the plain language of the statute." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (citing *United States v. I.L.*, 651 F.3d 817, 820 (8th Cir. 2011)).  The main question is "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341.  The inquiry ends if "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (quoting *Barnhart*, 534 U.S. at 450).

### B.  *Federal Law Preemption Claims*

Summit alleges that two provisions of the ordinances are preempted by federal law.  It claims that the emergency plan requirements under the ordinances, as well as the setback requirements, are unenforceable because of the PSA.  As mentioned earlier, Defendants acknowledge that the provisions under Ordinance No. 306 are preempted by federal law.  [ECF No. 34 at 26].  However, they argue the two provisions under Ordinance No. 311 are not preempted

by the PSA because the federal statute governs safety standards, not zoning.  For the reasons discussed below, the two provisions under both ordinances are preempted by the PSA and its implementing regulations.

       i.   Setbacks and Emergency Plan Requirements under Ordinance No. 306

The parties agree that the two provisions under Ordinance No. 306 are preempted by federal law.  [ECF No. 34 at 26].  Therefore, the Court will briefly explain its findings that the setbacks and emergency plan requirements of Ordinance No. 306 are unenforceable.

The PSA provides, "[a] [s]tate authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."  49 U.S.C. § 60104(c).  The statute delegates sole authority to enact safety provisions to the PHMSA.  *Id*. § 60102(a)(2).  The standards cover "the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities."  *Id*. § 60102(a)(2)(B).  This includes setback requirements.  *See* 49 C.F.R. § 195.210(a) (stating "[p]ipeline right-of-way must be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly."); § 195.210(b) ("[n]o pipeline may be located within 50 feet (15 meters) of any private dwelling, or any industrial building or place of public assembly in which persons work, congregate, or assemble.").

Using this authority, the PHMSA requires pipeline operators to implement a manual describing its process for responding to "emergencies."  *Id*. § 195.402.  The operator must have certain materials on hand, the ability to provide an effective response to different types of emergencies, and an emergency shut-off valve.  *Id*. § 195.402(e)(2)–(4).  The safety procedures must include steps to control the release of materials during "an accident" and minimize "public exposure to injury."  *Id*. § 195.402(e)(5)–(6).

**ADD-76**

Appellate Case: 23-3760   Page: 76   Date Filed: 04/24/2024 Entry ID: 5386923

Ordinance No. 306 requires pipeline companies to maintain setback requirements based on the type and use of the pipelines, as well as their size and/or maximum operating pressure.  As plainly evident in the statute, the specifications to determine the setbacks reflect a focus on safety. This is also supported by comments made during the October 18, 2022 meeting of the Board where Schoeneman clarified that these setbacks would be limited to requirements that regulate "hazardous materials pipelines that pose . . . health and safety risks."[11]

Ordinance No. 306 also requires a pipeline company seeking to reduce the minimum setbacks to submit an emergency plan "meeting the following requirements."  [ECF No. 30-3 at 16].  The emergency plan must identify potential emergency events, the company's immediate response to those emergencies, a notification process with local emergency responders, and additional information to assist local emergency response.  The plan must "establish a liaison and emergency contact for the pipeline operator in case local authorities need to notify the operator of an emergency or other issue."  *Id*. at 20.  A company must also submit models about certain emergency scenarios and include an evacuation procedure, as well as consultation process with cities in areas designated as future growth areas.

The PSA provides the Secretary of Transportation with the authority to enact emergency response plans.  49 U.S.C. § 60102(a)(2)(B).  This authority is delineated by the statute, which provides a framework for the regulations which include setback requirements.  *Id*. § 60102(r); 49 C.F.R. § 195.210.  Courts have understood the statute to provide the Secretary with "exclusive authority to regulate the safety . . . of interstate hazardous liquid pipelines."  *Kinley Corp*., 999 F.2d at 359.  This language precludes states and municipalities "from regulating in any manner

---

[11] Audio of Story Cnty. Bd. of Supervisors Meeting at 53:28 (Oct. 18, 2022).  The audio may be found under the same link provided in footnote 2.

whatsoever with respect to the safety of" pipeline facilities. *ANR Pipeline Co.*, 828 F.2d at 470. The Secretary's exclusive authority is even understood by courts to preclude state authorities from "adopt[ing] standards identical to the federal standards." *Id*. at 472. In light of this, the Court concludes that express preemption invalidates Ordinance No. 306's setback and emergency plan provisions.

### ii. Setback Requirements under Ordinance No. 311

The parties sharply contest whether Ordinance No. 311 regulates safety standards. Defendants argue the setbacks fall under a county's ordinary zoning authority, whereas Plaintiffs claim the true purpose of the setbacks is to regulate the safety standards of pipelines. Notwithstanding the avowed intent of the Board, the Court finds the setback provision is unenforceable, as the ordinance creates a dual safety regulation that competes with the Secretary of Transportation's broad spectrum of duties and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015).

The PSA delegates authority to enact safety provisions to the Secretary of Transportation. *See* 49 U.S.C. § 60102(a)(2). The statute provides the Secretary with authority to promulgate regulations on the construction of pipeline facilities. *Id*. § 60102(a)(2)(B). These regulations "prescribe[] minimum requirements for constructing new pipeline systems with steel pipe, and for relocating, replacing, or otherwise changing existing pipeline systems that are constructed with steel pipe." 49 C.F.R. § 195.200. One of those minimum requirements provides that a "[p]ipeline right-of-way must be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly." *Id*. § 195.210(a). The requirement also provides that "[n]o pipeline may be located within 50 feet (15 meters) of any private dwelling, or

**ADD-78**

any industrial building or place of public assembly in which persons work, congregate, or assemble, unless it is provided with at least 12 inches (305 millimeters) of cover in addition to that prescribed in § 195.248." *Id*. § 195.210(b).

By contrast, the setback requirements under Ordinance No. 311 provide a one-quarter mile setback from dwellings, various residential and commercial areas, and certain places of assembly, such as schools, campgrounds, stadiums, and houses of worship. [ECF No. 30-3 at 8]. The county's ordinance also requires a one-quarter mile setback from "city boundaries and areas identified as Urban Expansion by the C2C Plan Future Land Use Maps." *Id*.

Defendants point to what appears to be conflicting language in the PSA and the PHMSA regulations. Under the PSA, the Secretary of Transportation cannot dictate the location or route of a pipeline facility. 49 U.S.C. § 60104(e). The PHMSA regulations, however, require pipeline companies "to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly," and prohibits pipelines "within 50 feet (15 meters) of any private dwelling, or any industrial building or place of public assembly in which persons work, congregate, or assemble," unless certain cover requirements are met. 49 C.F.R. § 195.210.

In light of this purported tension, Defendants argue the "[PHMSA] regulation is unenforceable" because it "expand[ed] the unambiguously expressed preemptive scope set by Congress" that prohibited the federal government from prescribing the location or routing of pipelines. [ECF No. 39 at 21-22]. Defendants claim that "the field of safety standards is distinct from the field of location and routing of pipelines," and that the ordinances' setbacks fall into the latter category. [ECF No. 34 at 4].

The Court disagrees. Federal law preempts Ordinance No. 311 to the extent it serves as an obstacle to the Secretary's authority to promulgate regulations on the construction of pipeline

**ADD-79**

facilities.  The inclusion of setbacks under the federal regulations gives support to a more sensible

explanation: while the Secretary cannot dictate where a pipeline should go through Story County

or along a specific location within the area, once a location or routing of a pipeline is chosen, the

PHMSA regulations dictate it cannot be within the setback requirements set forth in the regulation.

Put another way, setbacks are within the field of safety standards, not within the field of location

and routing.[12]  As setbacks are safety standards, the ordinances' competing requirements intrude

upon the Secretary's exclusive authority to regulate the safety of interstate hazardous liquid

pipelines and is preempted.  *Kinley Corp.*, 999 F.2d at 359.

iii.  Emergency Planning Requirements under Ordinance No. 311

Summit argues that any emergency planning requirement under Ordinance No. 311 is

preempted by the PSA.  Defendants resist.  The Court finds that this emergency planning

requirement is a "standard," not merely an informational requirement, and is expressly preempted

by the PSA and its regulations.

Under the PSA, the Secretary of Transportation "shall prescribe minimum safety *standards*

for pipeline transportation and for pipeline facilities."  49 U.S.C. § 60102(a)(2) (emphasis added).

"Standard" is defined as "[a] model accepted as correct by custom, consent, or authority" or "[a]

---

[12]   While Iowa Code § 479B "gives the [IUB] primary authority over the routing of
pipelines," nowhere in the state statute or its implementing regulations is the authority *over routing*
understood to give the IUB the authority *to establish setbacks*.  Iowa Admin. Code 199-
13.12(479B).  The provision under Iowa Admin. Code 199-13.3(479B) requiring companies to
submit maps that include "[a]ny buildings or places of public assembly within six tenths of a mile
of the pipeline," is not equivalent to a standard prohibiting a pipeline within six tenths of a mile
from any building or places of public assembly.  As set forth earlier, however, the effect of the
ordinances' setbacks would severely limit the available locations for a proposed pipeline in Story
County, and consequently create a situation where the IUB would approve the construction of the
pipeline but Summit would be unable to build it.  Therefore, the reasons for state preemption of
the ordinances' setbacks differs from those for federal preemption of the same requirements.

33

**ADD-80**

criterion for measuring acceptability, quality, or accuracy." *Standard* Black's Law Dictionary (11th ed. 2019).

Ordinance No. 311's emergency planning requirement fits this definition.  It requires pipeline companies to submit a "copy of an emergency response or preparedness plan . . . to assist with the County's emergency response planning."  [ECF No. 30-3 at 9].  Companies are allowed to submit "a preliminary or draft version of an emergency response plan that would meet the requirements of the federal Pipeline and Hazardous Materials Safety Administration."  *Id*. In isolation, this exchange of information is not a "standard."  However, the remaining portion of this requirement is a "standard" that can be fairly read as to set a criterion for regulating the safety of pipelines.  Specifically, the remaining portion states that "[t]he County will determine whether the information in the plan is sufficient for the County to plan its own emergency response and may request additional information."  *Id*.  This language puts the County in the position to determine whether the information provided in the emergency plan meets its expectations or, in other words, its "standards."  As the exclusive authority to regulate pipeline safety standards fall squarely with the Secretary of Transportation, the emergency plan provision is preempted.

## VII.    CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment is GRANTED[13] and Defendants' Motion for Summary Judgment is DENIED.  [ECF Nos. 30; 31].

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction "must . . . state its terms specifically . . . and describe in reasonable detail . . . the act or acts restrained."  Fed. R. Civ. P. 65(d)(1)(B)–(C).  The scope of the preliminary injunction is defined as follows:

---

[13] To the extent that Ordinance No. 306 is operative, its mandatory consultation requirement is not preempted and not encompassed by the injunction.

**ADD-81**

Appellate Case: 23-3760   Page: 81   Date Filed: 04/24/2024 Entry ID: 5386923

1. **IT IS ORDERED** that Defendants Story County, Iowa, the Story County Board of Supervisors, and each of the Supervisors in their official capacities are permanently enjoined from enforcement of Story County Ordinances No. 306 and 311 effective immediately. They may not enforce Ordinance No. 306's setback requirements, emergency plan requirement, minimum cover requirement, and critical natural resource area protections requirement in any capacity or through any instrumentality available to them. They may not enforce Ordinance No. 311's setback requirements, critical natural resource area protections requirement, emergency plan requirement, and authorizations requirement in any capacity or through any instrumentality available to them.

2. **IT IS FURTHER ORDERED** that Defendants shall immediately issue a written notice to all employees in the County who are involved in enforcing Ordinance No. 306 and Ordinance No. 311 or have oversight of such enforcement and notify them of the permanent injunction prohibiting enforcement of the ordinances.

3. **IT IS FURTHER ORDERED** that Defendants shall demonstrate its compliance with the Order by submitting an affidavit detailing its efforts to the Court within ten (10) days of entry of this Order.

IT IS SO ORDERED.

Dated this 4th day of December, 2023.

STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT

ADD-82

Appellate Case: 23-3760   Page: 82   Date Filed: 04/24/2024 Entry ID: 5386923