# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| No. 23-3758 | No. 23-3760 |
|---|---|
| WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, | WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, |
| Plaintiffs-Appellees, | Plaintiffs-Appellees, |
| vs. | vs. |
| SHELBY COUNTY, IOWA, et al., | STORY COUNTY, IOWA, et al., |
| Defendants-Appellants. | Defendants-Appellants. |

Appeal from the United States District Court for the
Southern District of Iowa

(1:22-cv-00020-SMR)
(4:22-cv-00383-SMR)

_____

## COMBINED BRIEF OF DEFENDANTS-APPELLANTS

_____

Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515 243-7611
Facsimile: 515-243-2149
jcraig@ahlerslaw.com
ATTORNEYS FOR
DEFENDANTS-APPELLANTS

## SUMMARY OF THE CASE

This is a consolidated appeal from district court orders permanently enjoining Shelby County, Iowa ("Shelby County") and Story County, Iowa ("Story County") (collectively, "Counties") from enforcing zoning ordinances regulating the use of land for hazardous liquid pipelines. Plaintiff Summit Carbon Solutions, LLC ("Summit") proposes to build a carbon dioxide pipeline across several Midwest states, including Iowa. Both Counties adopted zoning ordinances imposing setbacks and other requirements for such pipelines.

Rather than working with the Counties to comply with the ordinances and find mutually agreeable routes through the Counties, Summit filed these lawsuits seeking declaratory and injunctive relief that the zoning ordinances are preempted and unenforceable. On December 4, 2023, the district court granted summary judgment in favor of Summit in both cases, holding that some provisions of the ordinances were impliedly preempted by Iowa Code chapter 479B and others were expressly preempted by the Pipeline Safety Act.

The Counties request to be heard in oral argument on these important issues of local control. The Counties believe that 15 minutes is sufficient.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE ...................................................................i

TABLE OF CONTENTS ................................................... ii

TABLE OF AUTHORITIES ................................................ v

JURISDICTIONAL STATEMENT ........................................1

STATEMENT OF ISSUES ................................................2

STATEMENT OF THE CASE ............................................4

    A.    Overview of the Project and Regulatory Framework ..........................4

    B.    The Shelby County Zoning Ordinance and Litigation ........................8

    C.    The Story County Zoning Ordinance and Litigation .........................12

SUMMARY OF THE ARGUMENT ....................................16

ARGUMENT ....................................................................18

    I.    THE DISTRICT COURT ERRED IN GRANTING
        SUMMARY JUDGMENT IN FAVOR OF SUMMIT AND
        PERMANENTLY ENJOINING THE COUNTIES'
        ORDINANCES ................................................................18

        A.    Standard of Review ................................................18

        B.    Argument ................................................................18

            1.    The district court erred in addressing Summit's
                challenges to Story County's repealed ordinance
                because the claim is moot ............................... 19

            2.    The district court erred in holding that the Counties'
                zoning ordinances are impliedly preempted by Iowa
                Code chapter 479B .........................................20

Appellate Case: 23-3760    Page: 3    Date Filed: 05/01/2024 Entry ID: 5389091

a.     The district court failed to apply the demanding standards for conflict preemption required by Iowa law ...............................................21

b.     The district court erred in finding the setback requirements in both ordinances conflict preempted ...............................................28

c.     The district court erred in finding the pipeline company permitting requirement in the Shelby County ordinance conflict preempted ........36

d.     The district court erred in finding the landowner permitting requirement in the Shelby County ordinance conflict preempted ........38

e.     The district court erred in finding the trenchless construction requirement in the Story County ordinance conflict preempted...........40

f.     The district court erred in finding the authorization requirement in the Story County ordinance conflict preempted................................. 40

3.     The district court erred in holding that the Counties' zoning ordinances are expressly preempted by the federal Pipeline Safety Act ...............................................42

a.     The district court erred in finding that the setback requirements in the Story County ordinance are preempted.........................................45

b.     The district court erred in finding the emergency response provisions in both Counties' ordinances preempted............................ 55

c.     The district court erred in finding the abandonment provisions in the Shelby County ordinance preempted...............................................58

iii

CONCLUSION ................................................................ 60

CERTIFICATE OF COMPLIANCE ................................................ 61

CERTIFICATE OF FILING AND SERVICE ....................................... 62

iv

# TABLE OF AUTHORITIES

Cases                                                                Page(s)

*Advantage Media, L.L.C. v. City of Hopkins*,
    408 F.Supp.2d 780 (D. Minn. 2006) ............................................................ 2, 20
*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River*
    *Reservation v. Enbridge Energy Company, Inc.*,
    626 F.Supp.3d 1030 (W.D. Wisc. 2022) ...................................................... 3, 50
*BeeRite Tire Disposal/Recycling, Inc v. City of Rhodes*,
    646 N.W.2d 857 (Iowa Ct. App. 2002) ............................................................ 36
*Bellino Fireworks, Inc. v. City of Ankeny, Iowa*,
    332 F.Supp.3d 1071 (S.D Iowa 2018) ........................................................ Passim
*Bormann v. Board of Sup'rs In and For Kossuth Cnty.*,
    584 N.W.2d 309 (Iowa 1998) ............................................................................ 39
*Carroll Airport Comm'n v. Danner*,
    927 N.W.2d 635 (Iowa 2019) ...................................................... 2, 26, 37, 40
*Church v. City of St. Michael*,
    205 F. Supp. 3d 1014 (D. Minn. 2016) ............................................................ 19
*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992) .......................................................................................... 43
*City of Davenport v. Seymour*,
    755 N.W.2d 533 (Iowa 2008) .................................................................... Passim
*City of Des Moines v. Gruen*,
    457 N.W.2d 340 (Iowa 1990) ...................................................................... 24, 37
*Comprehensive Health of Planned Parenthood Great Plains v. Hawley*,
    903 F.3d 750 (8th Cir. 2018) ......................................................................... 2, 18
*Decatur County v. Public Employment Relations Bd.*,
    564 N.W.2d 394 (Iowa 1997) ............................................................................ 22
*Doe v. State*,
    943 N.W.2d 608 (Iowa 2020) ............................................................................ 34
*Fletcher v. Peck*,
    U.S. (6 Cranch) 87, 3 3 L.Ed. 162 (1810) ...................................................... 18
*Hensler v. City of Davenport*,
    790 N.W.2d 569 (Iowa 2010) ............................................................................ 24
*In Re: Dakota Access, LLC*,
    2016 WL 943929 (Mar. 10, 2016) ................................................................... 32
*Jahnke v. Deere & Company*,
    912 N.W.2d 136 (Iowa 2018) ............................................................................ 34
*Jones v. Rath Packing*,

Appellate Case: 23-3760    Page: 6    Date Filed: 05/01/2024 Entry ID: 5389091

430 U.S. 519 (1977) ................................................................... 43

*Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dept. of,*
999 F.2d 354 (8th Cir. 1993) ............................................... 6, 44

*Madden v. City of Iowa City,*
848 N.W.2d 40 (Iowa 2014) ..................................................... 24

*Mall Real Est., L.L.C. v. City of Hamburg,*
818 N.W.2d 190 (Iowa 2012) ................................................... 24

*Mandicino v. Kelly,*
158 N.W.2d 754 (Iowa 1968) ................................................... 23

*Maryland v. Louisiana,*
451 U.S. 725 (1981) ................................................................. 42

*McCarthy v. Ozark School Dist.,*
359 F.3d 1029 (8th Cir. 2004) ................................................. 19

*Perkins v. Bd. of Supervisors of Madison Cnty.,*
636 N.W.2d 58 (Iowa 2001) ................................................ 22, 23

*Phelps-Roper v. City of Manchester, Mo.,*
697 F.3d 678 (8th Cir. 2012) ........................................... 2, 19, 20

*Portland Pipe Line Corporation v. City of South Portland,*
288 F. Supp.3d 321 (D. Me. 2017) ....................................... 2, 48

*Randolph v. Rodgers,*
170 F.3d 850 (8th Cir. 1999) ................................................... 18

*Rice v. Santa Fe Elevator Corp.,*
331 U.S. 218 (1947) ........................................................... 43, 54

*Shaw v. Delta Air Lines, Inc.,*
463 U.S. 85 (1983) ..................................................................... 1

*St. Louis Effort for AIDS v. Huff,*
782 F.3d 1016 (8th Cir. 2015) ................................................. 54

*Suitum v. Tahoe Reg'l Plan. Agency,*
520 U.S. 725 (1997) ................................................................. 29

*Teague v. Cooper,*
720 F.3d 973 (8th Cir. 2013) ................................................... 19

*Texas Midstream Gas Servs. v. City of Grand Prairie,*
608 F.3d 200 (5th Cir. 2010) ........................................ 2, 48, 49, 54

*TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City,*
913 N.W.2d 1 (Iowa 2018) ....................................................... 22

*U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.,*
132 F.3d 1252 (8th Cir. 1998) ................................................. 52

*Warth v. Seldin,*
422 U.S. 490 (1975) ................................................................. 54

*Washington Gas Light Co. v. Prince George's County Council,* No. DKC 08-0967,

vi

2012 WL 832756 (D. Md. Mar. 9, 2012) ................................................................ 51

*Washington Gas Light Company v. Prince George's County Council*,
   711 F.3d 412 (4th Cir. 2013) ........................................................................ Passim

*Wuebker v. Wilbur-Ellis Co.*,
   418 F.3d 88, (8th Cir. 2005) ................................................................................. 54

*Zayed v. Associated Bank, N.A.*,
   913 F.3d 709 (8th Cir. 2019) ................................................................................ 29

## Statutes

28 U.S.C. § 1291 ........................................................................................................ 1
28 U.S.C. § 1331 ........................................................................................................ 1
49 U.S.C. § 60101 ................................................................................................... 1, 6
49 U.S.C. §§ 60101(a)(5), (18), (19), (22)(A)(i) ................................................... 59
49 U.S.C. §§ 60101(a)(18), (5) ............................................................................... 59
49 U.S.C. § 60102 ..................................................................................................... 3
49 U.S.C. § 60102(a)(1) ........................................................................................... 60
49 U.S.C. § 60102(a)(2) .......................................................................... 6, 43, 58, 59
49 U.S.C.A. § 60102(a)(2)(A) .................................................................................. 57
49 U.S.C. § 60104 ..................................................................................................... 3
49 U.S.C. § 60104(c) ....................................................................................... Passim
49 U.S.C. § 60104(e) ....................................................................................... Passim
Act of July 5, 1994, Pub. L. No. 103-272, Subtit. VIII, Ch. 601, 108 Stat. 745 .... 53
Iowa Code § 6B.2B .................................................................................................. 38
Iowa Code § 331.301(1) ........................................................................................... 23
Iowa Code § 331.301(3) ...................................................................................... 24, 37
Iowa Code § 331.301(3), (4), (6) ............................................................................... 2
Iowa Code § 331.301(6) ................................................................................... Passim
Iowa Code § 331.302(5) ........................................................................................... 23
Iowa Code § 331.302(5)(a), (b) ............................................................................... 23
Iowa Code § 335.24 .......................................................................................... 2, 23, 26
Iowa Code § 335.3(1) .......................................................................................... 22, 39
Iowa Code § 476A.5(3) ............................................................................................ 34
Iowa Code § 479B.1 ............................................................................................. 8, 30
Iowa Code § 479B.5(7) ................................................................................... Passim
Iowa Code §§ 335.3, 335.6 ...................................................................................... 22
United States Constitution Article VI ...................................................................... 42

vii

Appellate Case: 23-3760     Page: 8     Date Filed: 05/01/2024 Entry ID: 5389091

## Rules

Fed. R. App. P. 4(a)(1)(A) ................................................................. 1
Fed. R. App. P. 27(d)(2) ................................................................. 61
Fed. R. App. P. 32(a)(5) ................................................................. 61
Fed. R. App. P. 32(a)(6) ................................................................. 61
Fed. R. App. P. 32(f) ................................................................. 61

## Regulations

46 F.R. 38357, 38366 (July 27, 1981) ........................................... 53
49 C.F.R. § 1.97 ............................................................................. 6
49 C.F.R. §§190-199 ....................................................................... 6
49 C.F.R. § 195.2 ............................................................................ 59
49 C.F.R. § 195.210 .......................................................... 45, 52, 54
49 C.F.R. § 195.210(a) .................................................................. 53
49 C.F.R. § 195.402(c)(10) ............................................................ 59
49 C.F.R. §§ 195.214, 195.106, 195.444, and 195.222 ............... 44
49 C.F.R. §§ 195.402, 195.403, 195.416 ................................. 56, 57
Iowa Admin. Code r. 199-13.12(1) (479B) ................................. 8, 33
Iowa Admin. Code r. 199-13.7(2) (479B) ..................................... 32
Iowa Admin Code r. 199-13.3(1)(e) ............................................... 37
Iowa Admin Code r. 199-13.3(1)(e)(2) (479B) ............................. 41
Iowa Admin Code r. 199-13.3(1)(f) (479B) ................................... 37

## Other Authorities

5 Eugene McQuillin, *Municipal Corporations* § 15:18 .................. 26, 27

viii

# JURISDICTIONAL STATEMENT

A.   The district court had subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1331 because the complaints presented federal questions as to whether the Pipeline Safety Act, 49 U.S.C. § 60101 *et seq.*, preempts the Counties' zoning ordinances.  *See Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96 (1983).

B.   This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because these appeals are from the district court's final decisions granting summary judgment in favor of Summit and permanently enjoining the Counties' ordinances.

C.   These appeals are timely because the district court entered its final decisions on December 4, 2023, and the Counties filed their notices of appeal less than 30 days later on December 23, 2023.  *See* Fed. R. App. P. 4(a)(1)(A).

D.   These appeals are from final orders and judgments disposing of all claims.

1

## STATEMENT OF ISSUES

**I.** **Whether the district court erred in granting summary judgment in favor of Summit and permanently enjoining the Counties' ordinances.**

*Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750 (8th Cir. 2018)

    **1.** **Whether the district court erred in addressing Summit's challenges to Story County's repealed ordinance.**

*Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012)

*Advantage Media, L.L.C. v. City of Hopkins*, 408 F.Supp.2d 780 (D. Minn. 2006)

    **2.** **Whether the district court erred in finding that the Counties' zoning ordinances are conflict preempted by Iowa Code chapter 479B.**

*City of Davenport v. Seymour*, 755 N.W.2d 533 (Iowa 2008)

*Bellino Fireworks, Inc. v. City of Ankeny, Iowa*, 332 F.Supp.3d 1071 (S.D Iowa 2018)

*Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635 (Iowa 2019)

Iowa Code § 331.301(3), (4), (6)

Iowa Code § 335.24

Iowa Code § 479B.5(7)

    **3.** **Whether the district court erred in finding that the Counties' zoning ordinances are expressly preempted by the Pipeline Safety Act.**

*Washington Gas Light Company v. Prince George's County Council*, 711 F.3d 412 (4th Cir. 2013)

Appellate Case: 23-3760    Page: 11    Date Filed: 05/01/2024 Entry ID: 5389091

*Texas Midstream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010)

*Portland Pipe Line Corporation v. City of South Portland*, 288 F. Supp.3d 321 (D. Me. 2017)

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Company, Inc.*, 626 F.Supp.3d 1030 (W.D. Wisc. 2022)

49 U.S.C. § 60102

49 U.S.C. § 60104

3

## STATEMENT OF THE CASE

### A.    Overview of the Project and Regulatory Framework

Summit intends to build a carbon capture pipeline across Iowa, South Dakota, North Dakota, Minnesota, and Nebraska.  App. 17; 1:22-cv-00020.R.Doc. 1 at ¶ 28; App. 1028; 4:22-cv-00383.R.Doc. 28 at ¶ 28.  The pipeline will transport carbon dioxide from 30 facilities (primarily ethanol plants) to sequestration sites in North Dakota.  *Id.*  In Iowa, the proposed project will consist of more than 650 miles of pipeline and will travel through thirty counties, including Shelby County and Story County.  App. 14; 1:22-cv-00020.R.Doc. 1 at ¶¶ 28-30; App. 1028; 4:22-cv-00383.R.Doc. 28 at  ¶¶ 28-30.   The project impacts thousands of Iowa landowners; as of June 19, 2023, Summit has requested the right of eminent domain over 1,035 parcels of land.  App. 464-465; 1:22-cv-00020.R.Doc. 59-2 at 197-197; App. 1276-1277; 4:22-cv-00383.R.Doc. 31-1 at 155-156.  The easement rights Summit seeks to condemn will permanently restrict the building of structures within the pipeline corridor.  App. 479; 1:22-cv-00020.R.Doc. 59-2 at 211 (lines 19-22); App. 1282; 4:22-cv-00383.R.Doc. 31-1 at 161 (lines 19-22).

The taking of private property for carbon capture pipelines is a controversial issue in Iowa, with nearly 80% of Iowans opposing such use of eminent domain.[1]

---

[1]https://www.desmoinesregister.com/story/news/politics/iowa-poll/2023/03/14/iowa-carbon-capture-pipeline-use-eminent-domain-opposed-majority-iowa-poll/69982590007/.  This information was made part of the district

Public opposition to these pipelines is understandable given that they pose health and economic risks to Iowa residents. With respect to economic risks, "[t]he pipeline requires a permanent easement that restricts future development in the easement corridor. This will prevent landowners from building new structures within the easement and will prevent communities from developing new housing or business developments wherever the easement corridor passes through the county." App. 505; 1:22-cv-00020.R.Doc. 59-2 at 237 (lines 14-18); App. 1308; 4:22-cv-00383.R.Doc. 31-1 at 187 (lines 14-18).

With respect to health risks, on February 22, 2020, a carbon dioxide pipeline operated by Denbury Gulf Coast Pipelines ruptured near the community of Satartia, Mississippi. App. 360; 1:22-cv-00020.R.Doc. 59-2 at 92; App. 1231; 4:22-cv-00383.R.Doc. 31-1 at 110. Exposure to carbon dioxide can cause headaches, drowsiness, rapid breathing, confusion, increased cardiac output, elevated blood pressure, increased arrhythmias, and death by asphyxiation. *Id.* Two hundred residents of Satartia who surrounded the rupture were evacuated, and forty-five were taken to the hospital. *Id.* Local emergency responders were not informed of the rupture, or the unique nature of the safety risks posed by the pipeline. *Id.* Federal regulators concluded that this event demonstrated the need for "[i]mproved public engagement efforts to ensure public and emergency

court record at 1:22-cv-00020.R.Doc. 59-1 at 2 and 4:22-cv-00383.R.Doc. 31-2 at 2.

5

responder awareness of nearby $CO_2$ pipelines and pipeline facilities and what to do if a $CO_2$ release occurs." *Id.*

At the federal level, hazardous liquid pipelines are regulated by the Pipeline Safety Act ("PSA"), 49 U.S.C. § 60101 *et seq.* The PSA requires the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities," which "may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2). This regulatory authority has been delegated to the Pipeline Hazardous Materials Safety Administration ("PHMSA"). 49 C.F.R. § 1.97. In accordance with the PSA, PHMSA has enacted required safety standards for the design, construction, operation, and maintenance of pipelines. 49 C.F.R. Parts 190-199. State and county governments are expressly preempted from regulating safety standards. 49 U.S.C. § 60104(c); *see also Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dept. of Com.*, 999 F.2d 354, 359 (8th Cir. 1993). However, the field of safety standards is distinct from the field of location and routing of pipelines, which is expressly exempt from the PSA and not subject to federal regulation. 49 U.S.C. § 60104(e). ("This chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility.").

6

In a recent letter to Summit, PHMSA explained its views on the role of local governments in regulating hazardous liquid pipelines. PHMSA stated that it "continues to support and encourage all three levels of government—federal, state, and local—working collaboratively to ensure the nation's pipelines systems are constructed and operated in a manner that protects public safety and the environment." App. 914; 1:22-cv-00020.R.Doc. 78-1 at 16; App. 1730; 4:22-cv-00383.R.Doc. 46-1 at 16. "PHMSA believes pipeline safety is the shared responsibility of federal and state regulators as well as all other stakeholders, including pipeline operators, excavators, property owners, and local governments." App. 917; 1:22-cv-00020.R.Doc. 78-1 at 19; App. 1733; 4:22-cv-00383.R.Doc. 46-1 at 19. PHMSA specifically recognized the authority of local governments to regulate hazardous liquid pipelines through zoning:

> PHMSA cannot prescribe the location or routing of a pipeline and cannot prohibit the construction of non-pipeline buildings in proximity to a pipeline. Local governments have traditionally exercised broad powers to regulate land use, including setback distances and property development that includes development in the vicinity of pipelines. Nothing in the federal pipeline safety law impinges on these traditional prerogatives of local—or state— government, so long as officials do not attempt to regulate the field of pipeline safety preempted by federal law.

App. 916; 1:22-cv-00020.R.Doc. 78-1 at 18; App. 1732; 4:22-cv-00383.R.Doc. 46-1 at 18. PHMSA further approved of actions of local governments in "[r]estricting land use and development along pipeline rights-of-way through zoning, setbacks,

7

and similar measures," "[d]esigning local emergency response plans and training with regulators and operators," and "[i]mproving emergency response and evacuation plans in the event of a transmission pipeline incident." *Id.*

Within the state of Iowa, there is a process for obtaining a state permit to construct a hazardous liquid pipeline. *See* Iowa Code chapter 479B. The Iowa Utilities Board ("IUB") has been granted authority to "implement certain controls over hazardous liquid pipelines" and "to approve the location and route of hazardous liquid pipelines." Iowa Code § 479B.1. Chapter 479 "gives the board primary authority over the routing of pipelines." Iowa Admin. Code r. 199-13.12(1) (479B). IUB "may a grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper." Iowa Code § 479B.9. "A permit shall not be granted to a pipeline company unless the board determines that the proposed services will promote the public convenience and necessity." *Id.* On January 28, 2022, Summit filed a petition for a hazardous liquid pipeline permit which is pending with IUB. App. 18; 1:22-cv-00020.R.Doc. 1 at ¶ 32; App. 1029; 4:22-cv-00383.R.Doc. 28 at ¶ 32.

## B.  *The Shelby County Zoning Ordinance and Litigation*

Concerned citizens, taxpayers, and landowners submitted a petition to the Shelby County Board of Supervisors requesting it consider adoption of an ordinance specifically regulating hazardous liquid pipelines. App. 340-358; 1:22-

8

cv-00020.R.Doc. 59-2 at 72-90. On August 16, 2022, the Board referred to the Planning and Zoning Commission a proposed amendment to the County's zoning ordinance. App. 310-311; 1:22-cv-00020.R.Doc. 59-2 at 42-43. The Planning and Zoning Commission held a public hearing on the proposed amendment on September 23, 2022. App. 285-296; 1:22-cv-00020.R.Doc. 59-2 at 17-28. Public comments in support of the proposed ordinance were received from numerous community leaders. *Id.* Many of the comments stressed the need to regulate hazardous liquid pipelines to promote economic development, protect future development areas, and maintain property values. *Id.*

On September 30, 2022, the Planning and Zoning Commission recommended the Board of Supervisors adopt the ordinance. App. 386-390; 1:22-cv-00020.R.Doc. 59-2 at 118-123. The Commission explained that the zoning ordinance was intended to address three primary concerns: (1) the need for sufficient setbacks to protect the health, safety, and welfare of residents living near the proposed pipeline route and to preserve existing and future uses of land and structures; (2) the negative effect a pipeline in close proximity to existing structures could have on property values and tax revenues; and (3) the stifling of future growth and development, including housing developments, in areas adjacent to the pipeline route. *Id.*

Appellate Case: 23-3760    Page: 18    Date Filed: 05/01/2024 Entry ID: 5389091

The Board of Supervisors held public hearings on the proposed amendment on October 18, October 25, and November 1, 2022. App. 313-338, 435-448; 1:22-cv-00020.R.Doc. 59-2 at 45-70, 167-180. After hearing public comments, the Board approved the proposed zoning ordinance. App. 437; 1:22-cv-00020.R.Doc. 59-2 at 169. The ordinance became effective upon its final publication on November 11, 2022. App. 385, 436; 1:22-cv-00020.R.Doc. 59-2 at 117, 168. Among other things, the zoning ordinance established a conditional use permitting process for hazardous liquid pipelines; imposed setback requirements; required landowners entering into easement agreements with pipeline companies to obtain conditional use permits prior to entering in such agreements; required disclosures relating to emergency response and hazardous mitigation plans; and imposed land restoration requirements for abandoned pipelines. App. 273-284; 1:22-cv-00020.R.Doc. 59-2 at 5-16.

On November 15, 2022, Plaintiffs filed this lawsuit against the County, seeking declaratory and injunctive relief that the ordinance is preempted by Iowa Code chapter 479B and the PSA. App. 11-46; 1:22-cv-00020.R.Doc. 1. The County denied Plaintiffs' claims. App. 47-53; 1:22-cv-00020.R.Doc. 16.

In early 2023, the County learned that landowners were recording easement agreements with Summit without first obtaining a conditional use permit as required by the zoning ordinance. App. 466-470; 1:22-cv-00020.R.Doc. 59-2 at

10

198-202.   The County also learned that Summit was advising landowners in the County that they were not required to obtain permits.   App. 339; 1:22-cv-00020.R.Doc. 59-2 at 71.   The County sent letters to the landowners and Summit advising them of the permit requirements of the ordinance and warning that further violations could result in penalties.   App. 466-470; 1:22-cv-00020.R.Doc. 59-2 at 198-202.

In response, Summit filed a motion for temporary injunction on February 7, 2023, requesting that the district court enjoin the County from enforcing the ordinance.   App. 54-57; 1:22-cv-00020.R.Doc. 23.   The County resisted the motion.  1:22-cv-00020.R.Doc. 30.  On July 10, 2023, the district court entered its order granting Plaintiffs' motion for preliminary injunction.  Add. 3-39; App. 203-239; 1:22-cv-00020.R.Doc. 51.   The district court found that the setback and permitting requirements of the ordinance were conflict preempted by Iowa Code chapter 479B.  Add. 23-29; App. 223-229; 1:22-cv-00020.R.Doc. 51 at 21-27.   The district court found that the emergency response and abandonment provisions of the ordinance were expressly preempted by the PSA.  Add. 30-32; App. 230-232; 1:22-cv-00020.R.Doc. 51 at 28-30.   The district court enjoined the County from enforcing the ordinance.  Add. 39; App. 239; 1:22-cv-00020.R.Doc. 51 at 37.   The County filed a timely notice of appeal of the preliminary injunction order.  1:22-cv-00020.R.Doc. 63; *see also* Appeal No. 23-2818.

11

While the preliminary injunction appeal was pending, the parties filed cross-motions for summary judgment. App. 240-243, 266-268; 1:22-cv-00020.R.Doc. 58; 1:22-cv-00020.R.Doc. 59. On December 4, 2023, the district court granted Summit's motion for summary judgment, denied the County's motion for summary judgment, and entered a permanent injunction prohibiting the County from enforcing the zoning ordinance. Add. 40-47; App. 966-973; 1:22-cv-00020.R.Doc. 82. The district court's summary judgment decision largely incorporated by reference its prior preliminary injunction order. Add. 44; App. 970; 1:22-cv-00020.R.Doc. 82 at 5 ("For reasons fully articulated in its Preliminary Injunction Order, the Court finds the Ordinance is preempted by federal and state law."). On December 18, 2023, the clerk entered judgment in favor Summit. App. 974; 1:22-cv-00020.R.Doc. 84. The County filed a timely notice of appeal of the permanent injunction on December 23, 2023. App. 975; 1:22-cv-00020.R.Doc. 85.

On January 16, 2024, this Court dismissed the County's preliminary injunction appeal, holding that it became moot when the district court entered its permanent injunction. *See* Appeal No. 23-2818.

### C. The Story County Zoning Ordinance and Litigation

On October 18, 2022, the Story County Board of Supervisors held a public hearing on proposed Ordinance No. 306, an amendment to the Story County Zoning Ordinance regulating the use of land for hazardous materials pipelines.

12

App. 1132; 4:22-cv-00383.R.Doc. 31-1 at 11. On October 25, 2022, the Board held a second public hearing on the proposed ordinance. App. 1133; 4:22-cv-00383.R.Doc. 31-1 at 12. Following the public hearing, the Board waived the third reading as authorized by Iowa Code section 331.302(6)(a) and approved the ordinance. *Id.*

Ordinance No. 306 amended chapters 85 and 86 of the Story County Zoning Ordinance to establish hazardous materials pipelines as a principal permitted use in the County. App. 1211-1218; 4:22-cv-00383.R.Doc. 31-1 at 90-97. The ordinance added a definition of hazardous materials and imposed setback requirements for hazardous materials pipelines. *Id.* The setbacks were based on the diameter of the proposed pipeline. App. 1214-1218; 4:22-cv-00383.R.Doc. 31-1 at 93-97. The ordinance also provided for a reduction in setback requirements upon submission of a detailed emergency plan. App. 1214; 4:22-cv-00383.R.Doc. 31-1 at 93.

On November 14, 2022, Plaintiffs filed this lawsuit against the County seeking declaratory and injunctive relief that the ordinance is preempted by Iowa Code chapter 479B and the PSA. App. 977-1014; 4:22-cv-00383.R.Doc. 1. The County denied Plaintiffs' claims. App. 1015-1021; 4:22-cv-00383.R.Doc. 15.

On May 2, 2023, the Board set a public hearing for consideration of Ordinance No. 311, which would repeal and replace most of the provisions of Ordinance No. 306. App. 1125; 4:22-cv-00383.R.Doc. 31-1 at 4; *compare* App.

13

1211-1218; 4:22-cv-00383.R.Doc. 31-1 at 90-97, *with* App. 1219-1229; 4:22-cv-00383.R.Doc. 31-1 at 98-108. The Board held public hearings on Ordinance No. 311 on May 9, 2023, and May 16, 2023. App. 1128; 4:22-cv-00383.R.Doc. 31-1 at 7; App. 1129; 4:22-cv-00383.R.Doc. 31-1 at 8. Following the public hearings, the Board waived the third reading and approved Ordinance No. 311. *Id.*

Ordinance No. 311 repealed most of the amendments initially made by Ordinance No. 306, including the provisions related to emergency response plans and the sliding setback and depth requirements based on the size of the pipeline. *Compare* App. 1211-1218; 4:22-cv-00383.R.Doc. 31-1 at 90-97, *with* App. 1219-1229; 4:22-cv-00383.R.Doc. 31-1 at 98-108. Instead, Ordinance No. 311 established setback requirements of one quarter mile from dwellings, various residential and commercial areas, retirement and nursing homes, schools, hospitals, churches, and other places of assembly. App. 1225-1226; 4:22-cv-00383.R.Doc. 31-1 at 104-105. The ordinance also required a setback of one quarter mile from city boundaries and urban expansion areas, as identified in the County's comprehensive plan. *Id.* The ordinance required pipeline companies to provide the County with a copy of an emergency response plan sufficient for the County to plan its own emergency response, which could be preliminary or draft of the company's PMHSA plan. App. 1226; 4:22-cv-00383.R.Doc. 31-1 at 105. The ordinance also required pipeline companies to obtain all necessary state, federal,

and local permits and land use permissions prior to the start of construction. *Id.* The stated purpose of Ordinance No. 311 was to provide for the orderly development, regulation, and control of land in accordance with the County's comprehensive plan. App. 1219-1222; 4:22-cv-00383.R.Doc. 31-1 at 98-101.

Following the County's adoption of Ordinance No. 311, Plaintiffs filed an Amended Complaint challenging both Ordinance Nos. 306 and 311. App. 1022-1073; 4:22-cv-00383.R.Doc. 28. On August 21, 2023, the parties filed cross-motions for summary judgment. App. 1083-1086; 4:22-cv-00383.R.Doc. 30; App. 1119-1121; 4:22-cv-00383.R.Doc. 31. On December 4, 2023, the district court granted Summit's motion for summary judgment, denied the County's motion for summary judgment, and entered a permanent injunction prohibiting the County from enforcing Ordinance No. 306 or Ordinance No. 311. Add. 48-82; App. 1782-1816; 4:22-cv-00383.R.Doc. 55. The district court found that the setback, trenchless construction, and authorization requirements were impliedly preempted by Iowa Code chapter 479B, and the setback and emergency response requirements were expressly preempted by the PSA. Add. 67-81; App. 1801-1815; 4:22-cv-00383.R.Doc. 55 at 20-34. On December 18, 2023, the clerk entered judgment in favor of Summit. App. 1817; 4:22-cv-00383.R.Doc. 57. The County filed a timely notice of appeal on December 23, 2023. App. 1818; 4:22-cv-00383.R.Doc. 58.

15

# SUMMARY OF THE ARGUMENT

The district court erred in addressing Story County's Ordinance No. 306 because that ordinance was repealed and any challenge to it was moot.

The district court erred in finding the Counties' ordinances impliedly preempted by Iowa Code chapter 479B because there is no irreconcilable conflict. Summit can comply with both by obtaining a state permit and routing the pipeline through the Counties in a manner consistent with the setbacks and/or obtaining a variance. Iowa law expressly authorizes the Counties to impose zoning requirements which are higher or more stringent than state law, and nothing in chapter 479B indicates a legislative intent to supersede county zoning authority. To the contrary, chapter 479B expressly contemplates the applicability of local zoning ordinances.

The district court erred in finding the setbacks, emergency response, and abandonment provisions of the ordinances expressly preempted by the PSA. Setbacks are a component of location and routing, and the PSA excludes federal regulation of location and routing. The emergency response requirements are not a preempted safety standard because they do not dictate the contents of the pipeline company's federally mandated emergency response plan, but merely require the pipeline company to share information with the County so it can plan its own emergency response. Similarly, the Shelby County ordinance does not dictate how

16

a pipeline is safely brought out of service, which is what the PHMSA regulations address. Rather, the ordinance imposes land restoration requirements *after* the pipeline is "abandoned," meaning the use of the pipeline is discontinued such that there is no longer regulatory oversight by PHMSA. The PSA does not apply to abandoned pipelines.

Appellate Case: 23-3760     Page: 26     Date Filed: 05/01/2024 Entry ID: 5389091

## ARGUMENT

1. **THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF SUMMIT AND PERMANENTLY ENJOINING THE COUNTIES' ORDINANCES.**

### A. Standard of Review

The standard of review for a summary judgment decision is *de novo*. *Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999). The standard of review for the issuance of a permanent injunction is abuse of discretion. *Id.*

### B. Argument

"Invoking the Constitution to enjoin the laws of a state requires more than 'slight implication and vague conjecture.'" *Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750, 752 (8th Cir. 2018) (quoting *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162 (1810) (Marshall, C.J.)). "At a minimum, it requires adequate information and correct application of the relevant standard." *Id.* The district court's orders in these cases, enjoining county zoning regulations duly adopted by the elected representatives of the people, fail to meet this standard. As will be shown below, the district court misapplied Iowa preemption law by finding a conflict between two laws that are reconcilable and expanded the scope of federal preemption beyond the express boundaries set by Congress.

18

**1. The district court erred in addressing Summit's challenges to Story County's repealed ordinance because the claim is moot.**

The district court acknowledged that the substantive provisions of Ordinance No. 306 were repealed with the adoption of Ordinance No. 311. Add. 58, 64-65; App. 1792, 1798-1799; 4:22-cv-00383.R.Doc. 55 at 11, 17-18. Nonetheless, the district court proceeded to analyze whether Ordinance No. 306 is preempted. This was error because any challenge to Ordinance No. 306 is moot.

"When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot unless the problems are 'capable of repetition yet evad[ing] review.'" *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 687 (8th Cir. 2012) (quoting *McCarthy v. Ozark School Dist.*, 359 F.3d 1029, 1036 (8th 2004)). "Indeed, in land use disputes, a plaintiff no longer affected by a land use regulation is not entitled to injunctive or declaratory relief related to such regulation." *Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1030 (D. Minn. 2016). The mere possibility that the ordinance could be reenacted in the future is not sufficient to avoid mootness. *Phelps-Roper*, 697 F.3d at 687. Rather, the record must support "a reasonable expectation" that the earlier version of the ordinance will be reenacted. *Id.* This exception to mootness is rare and "typically involve[s] situations where it is virtually certain that the repealed law will be reenacted." *Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013).

Appellate Case: 23-3760    Page: 28    Date Filed: 05/01/2024 Entry ID: 5389091

Here, there is nothing in the record to support a reasonable expectation that Story County will reenact Ordinance No. 306. Story County adopted Ordinance No. 311 to replace Ordinance No. 306. *See Advantage Media, L.L.C. v. City of Hopkins*, 408 F.Supp.2d 780, 794 (D. Minn. 2006) (finding the exception to mootness did not apply where the ordinance was enjoined, repealed, and a new ordinance enacted). It is apparent that Ordinance No. 311 was intended to address concerns raised in this litigation that Ordinance No. 306—which based its setbacks on pipe diameter, blast radius, and emergency response plans—intruded on the Secretary of Transportation's exclusive authority under the PSA to establish "safety standards" for the design and construction of hazardous liquid pipelines. *See Phelps-Roper*, 697 F.3d at 687 (finding no reasonable expectation that the city would reenact the earlier version because the current ordinance was amended to correspond with recent case law). Because Ordinance No. 306 was repealed with no reasonable expectation of reenactment, Summit's challenges to Ordinance No. 306 were moot and the district court erred in considering them.

**2.  The district court erred in holding that the Counties' zoning ordinances are impliedly preempted by Iowa Code chapter 479B.**

The district court held that both Counties' ordinances are impliedly preempted by Iowa Code chapter 479B. In the Shelby County case, the district court held that the setbacks and permitting requirements of the ordinance are

20

conflict preempted by Iowa Code chapter 479B. Add. 24-29; App. 224-229; 1:22-cv-00020.R.Doc. 51 at 22-27; Add. 44-45; App. 970-971; 1:22-cv-00020R.Doc. 82 at 5-6. In the Story County case, the district court held that the setbacks, trenchless construction, and authorization requirements of the ordinance are conflict preempted by Iowa Code chapter 479B. Add. 67-75; App. 1801-1809; 4:22-cv-00383.R.Doc. 55 at 20-28. In reaching these conclusions, the district court fundamentally misapplied Iowa law on implied preemption.

### a. The district court failed to apply the demanding standards for conflict preemption required by Iowa law.

The district court recognized that Iowa Code chapter 479B "does not expressly assign a role to counties when determining the location of a pipeline," and "also does not expressly provide that counties have no role in the process." Add. 24; App. 224; 1:22-cv-00020.R.Doc. 51 at 22. Nonetheless, the district court found both Counties' ordinances impliedly preempted because of a "possibility" that IUB might approve the pipeline, but Summit would be unable to build it because of the setback requirements. Add. 25; App. 225; 1:22-cv-00020.R.Doc. 51 at 23; Add. 69; App. 1803; 4:22-cv-00383.R.Doc. 55 at 22. The district court erred in finding implied preemption on this basis because the requirements for implied preemption are much more demanding under Iowa law.

The Counties' ordinances are zoning regulations adopted under the specific and express authority granted to the Counties by the Iowa legislature in Iowa Code

chapter 335. "Zoning is a well-established municipal function." *Bellino Fireworks, Inc. v. City of Ankeny, Iowa*, 332 F.Supp.3d 1071, 1085 (S.D Iowa 2018). "Zoning decisions are an exercise of police powers the state delegates to municipalities" to promote "the health, safety, morals, or the general welfare of the community." *TSB Holdings, L.L.C. v. Bd. of Adjustment for City of Iowa City*, 913 N.W.2d 1, 14 (Iowa 2018). The legislature has "given county boards of supervisors the authority over county zoning matters." *Perkins v. Bd. of Supervisors of Madison Cnty.*, 636 N.W.2d 58, 65 (Iowa 2001) (citing Iowa Code §§ 335.3, 335.6). "[T]he board of supervisors may by ordinance regulate and restrict … the location and use of buildings, structures, and land for trade, industry, residence, or other purposes…." Iowa Code § 335.3(1). "In addition to the express powers granted by statute to the board of supervisors, many implied powers are authorized in order to properly perform its multiplicity of duties." *Perkins*, 636 N.W.2d at 65. There is a "strong presumption" of the validity of zoning ordinances. *Id.* at 67.

The fact that the Counties' zoning ordinances regulate a land use that is also regulated by state law does not render the ordinances invalid. Concurrent state and county regulation is expressly contemplated and authorized by Iowa law. *Decatur County v. Public Employment Relations Bd.*, 564 N.W.2d 394, 398 (Iowa 1997). After all, "counties … are not sovereign entities; they are subordinate

22

governmental instrumentalities created by the state to assist in carrying out state governmental functions." *Mandicino v. Kelly*, 158 N.W.2d 754, 758 (Iowa 1968). Thus, pursuant to Iowa Code section 331.302(5), "[a] county may by ordinance adopt by reference any portion of the Code of Iowa in effect at the time of the adoption" and "may provide that violations of the ordinance are county infractions…." Iowa Code § 331.302(5)(a), (b). In addition, Iowa Code section 331.301(6) provides that "[a] county shall not set standards and requirements which are lower or less stringent than those imposed by state law, but may set standards and requirements which are higher or more stringent than those imposed by state law, unless a state law provides otherwise." Iowa Code § 331.301(6). State law therefore provides a floor, but not a ceiling, on municipal action. In fact, in the zoning context, if a county zoning ordinance imposes "higher standards than are required in *any other statute* or local ordinance, the regulations made under [chapter 335] govern." Iowa Code § 335.24 (emphasis added).

The zoning authority of the board of supervisors is not unlimited. *Perkins*, 636 N.W.2d at 65. A county board of supervisors may not exercise its powers in a manner "inconsistent with the laws of the general assembly." Iowa Code § 331.301(1). Thus, "municipalities cannot act if the legislature has directed otherwise." *Bellino*, 332 F.Supp.3d at 1083. However, "[l]imitations on a municipality's power over local affairs are not implied; they must be imposed by

23

the legislature." *City of Des Moines v. Gruen*, 457 N.W.2d 340, 342-43 (Iowa 1990). A county may exercise its powers "subject *only* to limitations *expressly imposed* by state law." Iowa Code § 331.301(3) (emphasis added). "An exercise of a county power is not inconsistent with a state law unless it is irreconcilable with the state law." *Id.* § 331.301(4).

In determining whether the Iowa legislature has trumped local action, the court engages in a preemption analysis. *Madden v. City of Iowa City*, 848 N.W.2d 40, 49 (Iowa 2014). The Iowa Supreme Court has recognized three types of preemption: express preemption, implied conflict preemption, and implied field preemption. *Mall Real Est., L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 195 (Iowa 2012). "Where the legislature seeks to prohibit municipal action in a particular subject area, express preemption offers the highest degree of certainty with the added benefit of discouraging unseemly internecine power struggles between state and local governments." *City of Davenport v. Seymour*, 755 N.W.2d 533, 538 (Iowa 2008). Here, the district court relied on implied conflict preemption, finding that the Counties' ordinances conflict with Iowa Code chapter 479B.

"For conflict preemption to apply, an 'ordinance must be irreconcilable with state law.'" *Bellino*, 332 F.Supp.3d at 1083 (quoting *Hensler v. City of Davenport*, 790 N.W.2d 569, 585 (Iowa 2010)). "Implied preemption occurs where an

24

ordinance prohibits an act permitted by statute, or permits an act prohibited by statute." *Seymour*, 755 N.W.2d at 538. "The theory of this branch of implied preemption is that even though an ordinance may not be expressly preempted by the legislature, the ordinance cannot exist harmoniously with a state statute because the ordinance is diametrically in opposition to it." *Id.* at 539. In such cases, an express preemption clause would be "redundant in light of the mandatory legislative expression." *Id.* The legal standard for conflict preemption is "demanding." *Id.* "[E]very effort should be made to harmonize a local ordinance with a state statute…." *Id.* A local ordinance is not impliedly preempted unless it is "irreconcilable," which is a "hard-edged" term meaning that "the conflict must be unresolvable short of choosing one enactment over the other." *Id.* at 541-42. Thus, "the conflict must be obvious, unavoidable, and not a matter of reasonable debate." *Id.* at 539.

Here, neither Summit nor the district court identified any provision in the ordinances that irreconcilably conflicts with chapter 479B. The ordinances do not prohibit an act permitted by chapter 479B, or permit an act prohibited by chapter 479B. *Seymour*, 755 N.W.2d at 538. To the contrary, both the statute and the ordinances *permit* hazardous liquid pipelines. Under chapter 479B, a pipeline company can build a hazardous liquid pipeline upon IUB's issuance of a state permit. Under the Counties' zoning ordinances, a pipeline company that has

25

obtained a state permit can build a hazardous liquid pipeline by complying with the setbacks and other requirements of the ordinances. Chapter 479B does not contain its own setback requirements, and the County is expressly authorized by Iowa law to impose greater restrictions than state law. *See* Iowa Code § 331.301(6); Iowa Code § 335.24.

Conflict preemption does not apply if it is possible to comply with both laws. *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 649 (Iowa 2019). Here, Summit can comply with chapter 479B and the Counties' ordinances by obtaining a state permit *and* by routing the pipeline through the Counties in a manner consistent with the setbacks. Even if the setback requirements were impracticable for Summit's project, the Counties' zoning regulations allow Summit to seek a variance or special exception from the local Board of Adjustment. App. 282; 1:22-cv-00020.R.Doc. 59-2 at 14; App. 1702-1704; 4:22-cv-00383.R.Doc. 31-1 at 580-582.

"[T]he central question in a preemption case is not whether the legislature intended to grant authority to municipalities to act concerning a particular matter, but rather whether the legislature intended to deny municipalities the right to legislate on the subject." 5 Eugene McQuillin, *Municipal Corporations* § 15:18 (3d. ed). Here, chapter 479B "contains no language expressly or impliedly limiting a [county's] zoning power under Iowa Code chapter [335]." *Bellino*, 332

26

F.Supp.3d at 1086. To the contrary, chapter 479B *expressly contemplates* the applicability of local zoning ordinances, requiring the pipeline company to describe "[t]he relationship of the proposed project to the present and future land use and zoning ordinances." Iowa Code § 479B.5(7). Implied preemption "should not be found when the statutory scheme recognizes local regulations." McQuillin, § 15:18.

As the district court recognized, nothing in chapter 479B expressly addresses whether a municipality can impose setback requirements on hazardous liquid pipelines. Add. 24; App. 224; 1:22-cv-00020.R.Doc. 51 at 22. Thus, whether counties can do so "can only be characterized as a question which the legislature did not address." *Seymour*, 755 N.W.2d at 542. As such, there is no conflict preemption:

> Using the principles established by our case law regarding implied conflict preemption, namely, that a local ordinance is not impliedly preempted unless it is "irreconcilable," that every effort should be made to harmonize a local ordinance with a state statute, and that implied preemption only applies where a local ordinance prohibits what a state statute allows or allows what a state statute prohibits, we conclude that implied conflict preemption simply does not apply in this case.

*Id.*

Considering the demanding standards for conflict preemption, the district court clearly erred in finding the Counties' zoning ordinances preempted based on the mere "possibility" of a conflict. Conflict preemption only occurs when the

27

conflict is "obvious, unavoidable, and not a matter of reasonable debate."
*Seymour*, 755 N.W.2d at 539.

The district court nonetheless held that conflict preemption applied, finding that Shelby County's setbacks, pipeline company permitting, and landowner permitting requirements, and Story County's setbacks, trenchless construction, and authorization requirements, were conflict preempted by chapter 479B. As will be shown below, the district court erred in finding these provisions preempted.

### b. The district court erred in finding the setback requirements in both ordinances conflict preempted.

The district court held that the setback requirements in the ordinances are conflict preempted because "[c]ommon sense suggests these restrictions would eliminate all or almost all land in Shelby County on which an IUB approved pipeline could be built," and "pipelines are restricted significantly enough to prevent their operators from completing, or even beginning, to construct a pipeline in Story County after the approval from IUB." Add. 25; App. 225; 1:22-cv-00020.R.Doc. 51 at 23; Add. 68; App. 1802; 4:22-cv-00383.R.Doc. 55 at 21. The district court failed to support these findings with any citation to evidence and, in fact, the record is devoid of any such evidence. Whether Summit can route the pipeline through the Counties and comply with the setbacks is a matter of engineering, not common sense. However, Summit did not present any such evidence. Accordingly, there is no evidence in the record that the setback

28

requirements make it impossible to route the pipeline through the Counties. A summary judgment decision must be "based on sufficient probative evidence and not on mere speculation, conjecture, or fantasy." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019) (internal quotations omitted).

Moreover, even if the zoning ordinances made it impossible to route the pipeline through the Counties (which has not been shown), the Counties' zoning regulations allow Summit to seek a variance from the Board of Adjustment. App. 230; 1:22-cv-00020.R.Doc. 59-2 at 10; App. 1702-1704; 4:22-cv-00383.R.Doc. 31-1 at 580-582. As the Supreme Court has stated, "local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with one hand they may give back with the other." *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 738 (1997). The ability for Summit to obtain a variance from the setback requirements renders any alleged conflict not irreconcilable.

If Summit had worked with the Counties from the beginning to determine a route through the Counties that addressed "present and future land use and zoning ordinances," *see* Iowa Code § 479B.5(7), then Summit would be in a position to submit a proposed route to IUB that would be compliant with the Counties' ordinances and there would be no conflict between IUB's approved route and the ordinances. The fact that Summit's unilaterally chosen, preferred route does not

29

comply with the setbacks in the Counties' ordinances is not an irreconcilable conflict. IUB's authority is to "approve" the location and route of hazardous liquid pipelines, not to determine the route. Iowa Code § 479B.1. It is therefore incumbent on the pipeline company to propose a route that is compliant with applicable zoning ordinances. Summit's decision to select a route without consulting the Counties is a problem entirely of its own creation.

The evidence in the summary judgment record conclusively demonstrates that Summit could comply with the Counties' ordinances; it just doesn't want to. On September 13, 2023, the South Dakota Public Utilities Commission denied Summit's permit application because the pipeline's proposed route violated county ordinances, "making any representations within the Application that the Applicant would comply with all laws and regulations, including local ordinances, material misstatements of fact." App. 902; 1:22-cv-00020.R.Doc. 78-1 at 4; App. 1718; 4:22-cv-00383.R.Doc. 46-1 at 4. Summit had argued against dismissal of its application on the basis that the Commission could instead attach a condition to its permit requiring Summit to "come into compliance with all applicable local ordinances before construction." App. 904; 1:22-cv-00020.R.Doc. 78-1 at 6; App. 1720; 4:22-cv-00383.R.Doc. 46-1 at 6. Recently, Summit made public statements that "[m]oving forward, we are committed to working with the counties in South Dakota to find a mutually agreeable path through each county. This means

working within ordinances regarding applicability of waivers, etc., and more dynamic conversations around routing." App. 905;[2] 1:22-cv-00020.R.Doc. 78-1 at 7; App. 1721; 4:22-cv-00383.R.Doc. 46-1 at 7. Summit has stated that it intends to refile its application in South Dakota once it has a new route through the state. App. 906; 1:22-cv-00020.R.Doc. 78-1 at 8; App. 1722; 4:22-cv-00383.R.Doc. 46-1 at 8.

The fact that Summit has committed to working with counties in South Dakota to determine a mutually agreeable route that complies with the setback requirements of county ordinances establishes as a matter of law that it is not impossible for Summit to likewise comply with Iowa Code chapter 479B and the Counties' ordinances. If Summit can work with counties in South Dakota to determine a route that complies with county ordinances which would then be submitted to the South Dakota Public Utilities Commission for approval, there is no reason the same process cannot be followed in Iowa. In fact, Summit represented to IUB that it would do just that, promising "to ensure the construction and operation of the Project will adhere to applicable local and county land use and zoning restrictions." App. 457; 1:22-cv-00020.R.Doc. 59-2 at 185; App. 1260; 4:22-cv-00383.R.Doc. 31-1 at 139.

---

[2]Available online at https://iowacapitaldispatch.com/2023/10/03/summit-will-make-new-pipeline-permit-application-in-south-dakota/

31

In addition, the pipeline route is not static and is subject to change even *after* the permit is issued. The record shows that route changes are a routine part of the pipeline process. Summit's representative responsible for the routing and location of the pipeline, Erik Schovanec, testified that Summit holds a weekly "route variance meeting." App. 698; 1:22-cv-0020.R.Doc. 59-2 at 429 (36:17-25); App. 1501; 4:22-cv-00383.R.Doc. 31-1 at 379 (17-25). The route for this pipeline has been changed more than 950 times. App. 699; 1:22-cv-00020.R.Doc. 59-2 at 430 (37:5-11); App. 1502; 4:22-cv-00383.R.Doc. 31-1 at 380 (37:5-11). IUB's practice as reflected in the Dakota Access Pipeline proceeding is to issue the permit "conditioned upon receipt of all other required permits and authorizations." *In Re: Dakota Access, LLC*, No. HLP-2014-0001, 2016 WL 943929, at *35–36 (Mar. 10, 2016). If Summit cannot obtain a required permit for its route, Summit can file a petition for an amended permit and request approval of a changed route. *Id.* IUB has adopted a rule providing an expedited process for approving route changes after IUB's initial approval of the route. *See* Iowa Admin. Code r. 199-13.7(2) (479B).

Accordingly, the fact that the Counties' zoning ordinances may require changes to Summit's preferred (or even approved) route does not create an irreconcilable conflict. Chapter 479B requires pipeline companies to obtain many state, federal, and local permits, including permits to cross highways, railroads,

rivers, and other bodies of waters. Iowa Admin. Code r. 199-13.12; *see also* App. 370-371; 1:22-cv-00020.R.Doc. 59-2 at 102-103; App. 1234-1235; 4:22-cv-00383.R.Doc. 31-1 at 113-114 (containing Summit's state and federal permit tracker). A denial of any one of those permits could similarly impact Summit's ability to construct its pipeline along an IUB-approved route. This is not an irreconcilable conflict, but rather a function of other agencies having "a jurisdictional interest in the routing of the pipelines." Iowa Admin. Code r. 199-13.12(1) (479B).

The district court found it persuasive, however, that certain provisions of chapter 479B directly assign a role to counties, but the location provisions of the statute—sections 479B.8 and 479B.9—do not mention counties. Add. 25; App. 225; 1:22-cv-00020.R.Doc. 51 at 23; Add. 69; App. 1803; R.Doc. 55 at 22. The district court should not have given this omission any weight. "[T]he notion that the mere failure of the legislature to authorize invalidates municipal action is without merit." *Seymour*, 755 N.W.2d at 543. "[T]he silence of the legislature is not prohibitory but permissive." *Id*. Moreover, sections 479B.8 and 479B.9 do not mention *any* other entities, including highway authorities, railroad authorities, and environmental agencies. Nonetheless, IUB has recognized that these types of entities "have a jurisdictional interest in the routing of pipelines." Iowa Admin. Code r. 199-13.12(1) (479B).

33

In addition, other provisions in chapter 479B expressly contemplate the pipeline route being subject to county zoning ordinances. *See* Iowa Code § 479B.5(7) (requiring the pipeline company to describe the relationship of the proposed project to the present and future land use and zoning ordinances). Under Iowa law, statutes must be read "as a whole rather than looking at words and phrases in isolation." *Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020). A more glaring omission in chapter 479B is any indication that the legislature intended to supersede county zoning authority, something that is expressly present in other utility statutes. For example, Iowa Code chapter 476A, governing electric power generating facilities, contains the following provision:

> City and county zoning authorities designated as parties to the proceeding may appear on record and may state whether the facility meets city, county and airport zoning requirements. The failure of a facility to meet zoning requirements established pursuant to chapters 329, 335 and 414 shall not preclude the board from issuing the certificate and to that extent the provisions of this subsection shall supersede the provisions of chapters 329, 335 and 414.

Iowa Code § 476A.5(3).

Chapter 479B contains no similar language. This omission cannot be ignored: "Statutory text may express legislative intent by omission as well as inclusion, and we may not read language into the statute that is not evident from the language the legislature has chosen." *Jahnke v. Deere & Company*, 912 N.W.2d 136, 143 (Iowa 2018). The fact that the legislature indicated its intention

34

to supersede county zoning authority in chapter 476A and omitted comparable language in chapter 479B is strong evidence of legislative intent not to preempt county authority. *Id.*

Finally, the district court reasoned in the Story County case that implied preemption was appropriate because "there is an inherent need for uniform regulations across the state" and the "very nature of the case necessitates a uniform distance and siting standard throughout the state." Add. 70-71; App. 1804-1805; 4:22-cv-00383.R.Doc. 55 at 23-24. This is really an argument for field preemption, not conflict preemption. *See, e.g., Seymour*, 755 N.W.2d at 539 (explaining that field preemption applies "when the legislature has so covered a subject by statute as to demonstrate a legislative intent that regulation in the field is preempted by state law."). Regardless, the Iowa Supreme Court has expressly rejected the district court's reasoning. "Field preemption is a narrow doctrine that cannot be enlarged by judicial policy preferences." *Seymour*, 755 N.W.2d at 539. In determining whether field preemption applies, the court "does not entertain arguments that statewide regulation is preferable to local regulation or vice versa, but focuses solely on legislative intent as demonstrated through the language and structure of a statute." *Id.* The district court failed to identify any language in chapter 479B indicating a legislative intent to supersede county zoning ordinances.

35

Accordingly, the district court erred in finding the setback requirements conflict preempted.

### c. The district court erred in finding the pipeline company permitting requirement in the Shelby County ordinance conflict preempted.

The district court held that the requirement for pipeline companies to obtain a conditional use permit (Sections 8.3 and 8.5) in the Shelby County ordinance is conflict preempted because it "interferes with the IUB's authority" by "requir[ing] companies to submit an extensive application for a county permit after submission of a petition to the IUB."  Add. 26-27; App. 226-227; 1:22-cv-00020.R.Doc. 51 at 24-25.  However, the fact that the ordinance imposes additional requirements on Summit beyond the state permit does not render the ordinance conflict preempted.  This is expressly authorized by Iowa law.  *See* Iowa Code § 331.301(6) (authorizing counties to "set standards and requirements which are higher or more stringent than those imposed by state law, unless a state law provides otherwise."). As the Iowa Court of Appeals explained in *BeeRite Tire Disposal/Recycling, Inc. v. City of Rhodes*, if this statutory provision has any meaning at all, a municipality must be allowed to "further restrict" an activity regulated by state law, including through use of a permitting process.  646 N.W.2d 857, 860-61 (Iowa Ct. App. 2002); *see also Bellino*, 332 F.Supp.3d at 1093 (upholding local ordinance requiring fireworks retailer to obtain a temporary use permit).  Because the

36

County's zoning ordinance imposes greater burdens than state law, it is possible to comply with both laws and there is no conflict preemption. *Carroll Airport Comm'n*, 927 N.W.2d at 649.

The district court also found it persuasive that rule 199-13.3(1)(e) of the Iowa Administrative Code expressly requires pipeline companies to list permits that are required from state or federal agencies but does "not mention permits from local municipalities as being required for consideration for building a pipeline." Add. 27; App. 227; 1:22-cv-00020.R.Doc. 51 at 25. However, another subsection of that rule expressly requires pipeline companies to explain the relationship of the proposed pipeline to "present and future land use and zoning ordinances." Iowa Admin. Code r. 199-13.3(1)(f) (479B). This language is also in chapter 479B. *See* Iowa Code § 479B.5(7). IUB's failure to mention municipal zoning permits in one subsection of its rule, where zoning ordinances are specifically mentioned in another subsection of the same rule as well as in chapter 479B, does not suggest a legislative intent to usurp county zoning authority. "Limitations on a municipality's power over local affairs are not implied; they must be imposed by the legislature." *Gruen*, 457 N.W.2d at 342-43. A county may exercise its powers "subject *only* to limitations *expressly imposed* by state law." Iowa Code § 331.301(3) (emphasis added). Chapter 479B does not expressly limit county

37

zoning authority over hazardous liquid pipelines, and thus the district court erred in finding the pipeline permitting requirement conflict preempted.

### d. The district court erred in finding the landowner permitting requirement in the Shelby County ordinance conflict preempted.

The district court held that the landowner permitting requirement (Sections 8.3 and 8.6) in the Shelby County ordinance is conflict preempted because it "restricts Summit's ability to negotiate easements with landowners" as Summit is required to do before invoking eminent domain, *see* Iowa Code § 6B.2B, and "impacts" the negotiation process. Add. 28-29; App. 228-229; 1:22-cv-00020.R.Doc. 51 at 26-27. However, as discussed previously, Iowa law expressly authorizes counties to impose greater restrictions on activities regulated by state law. *See* Iowa Code § 331.301(6). And whether the ordinance "impacts" an activity also regulated by state law is not the correct standard to apply. The correct standard is "irreconcilable conflict." *Seymour*, 755 N.W.2d at 542. There is no irreconcilable conflict because the ordinance does not prohibit Summit from negotiating with landowners. They are free to do so. The ordinance merely requires that before *executing* a voluntary easement, the landowner must obtain a conditional use permit.

Additionally, there could be no irreconcilable conflict between the landowner permitting requirement and the legislature's delegation of authority to

38

IUB because, as IUB and Summit have both conceded, IUB does not have jurisdiction over the terms of voluntary easement agreements. *See* App. 811; 1:22-cv-00020.R.Doc. 59-2 at 542 ("The Utilities Board has no control over the content of easements voluntarily signed by landowners, and the terms of voluntary easements are subject to negotiations between the landowner(s) and the company."); App. 450; 1:22-cv-00020.R.Doc. 59-2 at 182 (objecting to discovery request in the IUB proceeding on the basis that "voluntary easements are private bilateral agreements that are not regulated by Chapter 479B, and are not related to any criteria set forth for obtaining a pipeline permit."). In contrast, counties have express statutory authority to regulate and restrict the use of land for industrial purposes. *See* Iowa Code § 335.3(1); *Bormann v. Board of Sup'rs In and For Kossuth Cnty.*, 584 N.W.2d 309, 316 (Iowa 1998). Shelby County has a legitimate interest in regulating easement agreements to protect the interests of adjoining landowners who may be negatively impacted by where a pipeline is proposed to be located on their neighbor's property.

Because IUB does not regulate such easements, nothing in chapter 479B conflicts with Shelby County's express, statutory zoning authority to regulate the use of easements for industrial purposes. Accordingly, the district court erred in finding the landowner permitting requirement conflict preempted.

39

### e. The district court erred in finding the trenchless construction requirement in the Story County ordinance conflict preempted.

The district court held that the requirement in the Story County ordinance to use trenchless construction methods in areas designated as critical natural resource areas is impliedly preempted by chapter 479B because "it requires pipeline companies to maintain the County's construction standards after the submission of a petition to the IUB." Add. 71-72; App. 1806-1807; 4:22-cv-00383.R.Doc. 55 at 25-26. The district court failed to explain how this creates an irreconcilable conflict with chapter 479B. If IUB approves a route through a critical natural resource area, the pipeline company can build the pipeline through that area by using trenchless construction. Conflict preemption does not apply if it is possible to comply with both laws. *Carroll Airport Comm'n*, 927 N.W.2d at 649. Chapter 479B does not address construction methods in critical natural resources areas. "[T]he silence of the legislature is not prohibitory but permissive." *Seymour*, 755 N.W.2d at 543. Accordingly, there is no irreconcilable conflict and the district court erred in striking down the trenchless construction provision.

### f. The district court erred in finding the authorization requirement in the Story County ordinance conflict preempted.

The district court held that the requirement in the Story County ordinance that pipeline companies obtain all required permits before starting construction in

40

Story County is impliedly preempted because IUB's regulations allow a pipeline company to "request board approval to begin construction on a segment of a pipeline prior to obtaining all necessary consents for construction of the entire pipeline." Add. 73; App. 1807; 4:22-cv-00383.R.Doc. 55 at 26 (quoting Iowa Admin. Code r. 199-13.3(1)(e)(2) (479B)). This is not an irreconcilable conflict. A conflict is irreconcilable only when the conflict is "obvious, unavoidable, and not a matter of reasonable debate." *Seymour*, 755 N.W.2d at 539.

Here, the district court's conflict is hypothetical. If Summit fails to request, or if IUB fails to grant, permission to build prior to obtaining all required permits, then there is no conflict between this requirement and chapter 479B. On the other hand, if IUB authorizes Summit to begin construction before obtaining all required permits, the ordinance just imposes an additional requirement before building in Story County. IUB's authorization would still have effect in other counties that don't have this requirement. The County is entitled to "set standards and requirements which are higher or more stringent than those imposed by state law, unless a state law provides otherwise." Iowa Code § 331.301(6). Nothing in chapter 479B prohibits counties from imposing additional zoning requirements on hazardous liquid pipelines. Accordingly, the district court erred in finding this provision preempted.

**3.    The district court erred in holding that the Counties' zoning ordinances are expressly preempted by the federal Pipeline Safety Act.**

The district court held in both cases that portions of the ordinances are expressly preempted by the PSA.  In the Story County case, the district court held that the setback and emergency response requirements of Ordinance No. 311 are preempted.  Add. 78-80; App. 1812-1814; 4:22-cv-00383.R.Doc. 55 at 31-33.  In the Shelby County case, the district court curiously did *not* find the setback requirements preempted by the PSA, but did find the emergency response (Section 8.11) and abandonment (Section 8.12) provisions preempted.  Add. 30-32; App. 230-232; 1:22-cv-00020.R.Doc. 51 at 28-30; Add. 45-46; App. 971-972; 1:22-cv-00020.R.Doc. 82 at 6-7.  As will be shown below, the district court erred in finding these provisions preempted because they fall outside the scope of the PSA's preemption clause.

Article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  Art. VI, cl. 2. Thus, it is well settled that any state law that conflicts with federal law is "without effect."  *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  However, the preemption analysis "starts with the assumption that the historic police powers of the States [are] not to be superseded by … Federal Act unless that [is] the clear and

42

manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The purpose of Congress is the "ultimate touchstone" of the preemption analysis. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). That purpose may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing*, 430 U.S. 519, 525 (1977).

"When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone*, 505 U.S. at 517 (internal citations and quotations omitted). In other words, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.* In such cases, the court "need only identify the domain expressly pre-empted" by the statute. *Id.*

The PSA requires the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities," which "may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2). These safety standards apply to

43

"owners or operators of pipeline facilities." 49 U.S.C.A. § 60102(a)(2)(A). The

PSA contains an express preemption provision: "A state authority may not adopt or

continue in force safety standards for interstate pipeline facilities or interstate

pipeline transportation." 49 U.S.C. § 60104(c). Because Congress has expressly

defined the preemptive reach of the PSA, the Court's preemption analysis "need

look no further than the express statutory language." *Kinley Corp.*, 999 F.2d at

358.

The express statutory language preempts only the adoption or continuation

of "safety standards." 49 U.S.C. § 60104(c). Thus, for example, state and local

authorities are expressly preempted from adopting standards relating to such things

as pipeline seams, pipe wall thickness, leak detection equipment, qualifications of

welders, etc. *See, e.g.,* 49 C.F.R. §§ 195.214, 195.106, 195.444, and 195.222. In

these areas, the "Congressional grant of exclusive federal regulatory authority

precludes state decision-making in this area altogether and leaves no regulatory

room for the state to either establish its own safety standards or supplement the

federal safety standards." *Kinley Corp.*, 999 F.2d at 359. However, Congress also

included in the PSA a provision expressly *limiting* the scope of preemption. The

PSA states that "[t]his chapter does not authorize the Secretary of Transportation to

prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e).

Thus, while Congress intended to give the Secretary of Transportation exclusive

44

authority over pipeline safety standards, it is equally clear that Congress intended to allow state and local governments to determine the location and routing of pipelines. Both expressions of Congressional intent must be given effect.

### a. The district court erred in finding that the setback requirements in the Story County ordinance are preempted.

The district court held in the Story County case that the setback requirements in Ordinance No. 311 are expressly preempted by the PSA because "setbacks are within the field of safety standards, not within the field of location and routing." Add. 80; App. 1814; 4:22-cv-00383.R.Doc. 55 at 33. According to the district court, because PHMSA has adopted its own setback requirements in 49 C.F.R. § 195.210, "the ordinance creates a dual safety regulation that competes with the Secretary of Transportation's broad spectrum of duties and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Add. 78; App. 1812 4:22-cv-383.R.Doc. 55 at 31 (internal quotations omitted). The district court's holding is contrary to the express terms of the statute and the great weight of authority.

The setbacks in Ordinance No. 311 regulate where a pipeline can be located in relation to other structures, zoning districts, and city limits. As such, the setbacks regulate the "location or routing of a pipeline facility" and are, therefore, expressly excluded from federal regulation under the PSA. 49 U.S.C. § 60104(e). This conclusion is supported by numerous court decisions holding that local zoning

45

and land use regulations are not preempted safety standards under the PSA even if safety is considered by the local government.

In *Washington Gas Light Company v. Prince George's County Council*, 711 F.3d 412 (4th Cir. 2013), the pipeline company sought approval from the county to build a liquefied natural gas storage facility. *Id.* at 414. The county denied the request because the county zoning plans prohibited all industrial usage near the proposed facility. *Id.* at 415. The pipeline company filed a complaint in federal court seeking declaratory and injunctive relief that the county zoning plan was preempted by the PSA and unenforceable. *Id.* at 416. The pipeline company argued that county zoning plans were preempted expressly, impliedly, and by conflict. *Id.* at 420. The Fourth Circuit Court of Appeals disagreed "on all counts." *Id.*

The court found that because the county zoning plans were not safety regulations, they did not come within the express preemption provision of the PSA. *Id.* at 421. The court reviewed the specific goals of the zoning plan and determined they were proper land use regulations. *Id.* The court found it "of no moment" that the county zoning plan had the effect of completely prohibiting the pipeline company from using its preferred location because "[l]ogically, the power to impose a zoning requirement includes the power to preclude any proposed usage of the zoned area that cannot comply with such requirement." *Id.* The court also

46

rejected the pipeline company's argument that the zoning plans were "safety regulations in disguise." *Id.* The court stated that "[e]ven assuming safety concerns played some part in the enactment of the County Zoning Plans, those concerns would have been merely incidental to the overall purpose of the County Zoning Plans" which is "insufficient to justify a finding that the County Zoning Plans were, in fact, safety regulations." *Id.* at 421-22.

The court also rejected the pipeline company's field preemption and conflict preemption arguments. The court noted that "[b]ecause the County Zoning Plans are beyond the scope of the PSA's express preemption provision, it is unlikely that they are impliedly preempted." *Id.* at 422. With respect to field preemption, the court held that Congress did not intend to occupy the field of natural gas facility siting because "the PSA expressly circumscribes the Secretary of Transportation's role in this area, indicating '[t]his chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility.'" *Id.* (quoting 49 U.S.C. § 60104(e)). Finally, the court rejected the pipeline company's conflict preemption argument. The court reasoned that the purpose of the PSA was to create federal minimum safety standards, and the county's ordinance did not stand as an obstacle to that purpose because the zoning plans were not safety standards. *Id.*

47

In *Texas Midstream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010), a gas company sought to construct an interstate natural gas pipeline facility in Grand Prairie, Texas. *Id.* at 203. Under the city's zoning regulations, the facility would have to comply with a 300-foot setback requirement. *Id.* at 204. The gas company sought a declaration that the setback requirement was preempted by the PSA. The Fifth Circuit framed the issue as "whether the setback requirement is a 'safety standard.'" *Id.* at 211. The court held that "[i]t is not." *Id.* The court noted that the setback requirement was primarily aimed at "ensur[ing] that bulky, unsightly, noisy compressor stations do not mar neighborhood aesthetics." *Id.* While the setback requirement might have an incidental effect on safety, it did not convert the setback into a safety standard because it was "not a safety standard in letter, purpose, or effect," and, therefore, "[i]t may remain in force." *Id.* at 211-12.

In *Portland Pipe Line Corporation v. City of South Portland*, 288 F.Supp.3d 321 (D. Me. 2017), a pipeline company proposed to construct a new crude oil loading terminal in South Portland, Maine. In response, the city enacted a zoning ordinance prohibiting new crude oil loading infrastructure projects in the harbor. *Id.* at 385. The ordinance was enacted in part because of health and environmental concerns about the proposed project. *Id.* at 384. The pipeline company sued the

48

city on a number of grounds, including that the ordinance was preempted by the PSA because the ordinance regulated pipeline safety. *Id.* at 408.

The court granted summary judgment in favor of the city. The court recognized that "the preemptive scope of the PSA, as expressed in § 60104(c), is explicitly limited by § 60104(e)." *Id.* at 430. Thus, "Congress did not intend the PSA to preempt state and local authority 'to prescribe the location or routing of a pipeline facility.' " *Id.* (quoting 49 U.S.C. § 60104(e)). The court reasoned that state and local zoning powers "are only to be displaced by clear congressional intent, and here there is explicit intent to allow them." *Id.* Thus, "it is unlikely Congress intended to remove this local police power merely because it enacted safety standards whenever a pipeline or pipeline related activity is otherwise permitted." *Id.* at 431. Citing *Washington Gas Light* and *Texas Midstream*, the court concluded that "local zoning prohibitions are not preempted by pipeline safety regulations." *Id.*

The court also disavowed the "need to conduct a searching inquiry into the purpose or intent of the Ordinance" because the focus of the preemption analysis is "on the intent of the federal law and the effect of the local law on that federal law's goals." *Id.* at 434. Concentrating on whether the local action was prompted by safety concerns "would potentially invalidate a wide range of state and local laws, even though facially proper under state and local police power." *Id.* The court

49

held that "any overlapping concern about 'safety' that the City Council may have had when it enacted the Ordinance is not sufficient to convert a ban on loading crude oil into a competing 'safety standard' preempted under the PSA." *Id.*

Finally, in *Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Reservation v. Enbridge Energy Company, Inc.*, 626 F.Supp.3d 1030 (W.D. Wisc. 2022), the court considered a dispute between a Native American tribe and an oil and natural gas pipeline operator. Due to long-term easement agreements between the parties, the pipeline was constructed partly on reservation land. *Id.* at 1036. The tribe become concerned with the potential environmental impacts of the pipeline and declined to renew the pipeline company's easement. *Id.* When the pipeline company refused to remove the pipeline from the reservation, the tribe filed suit against the pipeline company for trespass. *Id.* The pipeline company argued that the tribe's trespass claim was barred by the PSA because the tribe was withholding its consent to renewed easements because of safety concerns. *Id.* at 1048-49. The court was not persuaded: "The glaring problem with this argument is that while the Band's refusal to consent to easements may be based in part on safety concerns (at least environmental in nature), it is *not* based on any imposition of safety *standards*." *Id.* at 1049 (emphasis in original). The court noted that the pipeline company had failed to identify any legal authority

50

requiring a landowner "to grant or renew an easement for a pipeline across its land simply because it has concerns about the safety of doing so." *Id.*

The above cases demonstrate that local regulation of the location and routing of pipelines is not preempted by the PSA. Such regulations fall within the traditional police powers of the states and do not qualify as "safety standards" within the meaning of 49 U.S.C. § 60104(c). As found by the district court in *Washington Gas Light*, "[w]hen the same statute simultaneously authorizes one entity to set safety standards and does not authorize that entity to make siting decisions, the only logical interpretation is that **location is not a safety standard**." *Washington Gas Light Co. v. Prince George's Cnty. Council*, No. DKC 08-0967, 2012 WL 832756, at *8 (D. Md. Mar. 9, 2012), *aff'd*, 711 F.3d 412 (4th Cir. 2013) (emphasis added). The fact that safety is considered as part of a pipeline siting decision does not convert such action into a preempted safety standard. After all, "safety considerations play a role in all zoning decisions." *Id.* at *10. It would be absurd to hold that state and local authorities have jurisdiction over pipeline location and routing but that such authorities are prohibited from considering safety when exercising that jurisdiction. Such a holding would be contrary to the very purpose of the PSA which is to *improve* pipeline safety. *See* 49 U.S.C. § 60102(a)(1). It would also effectively allow PHMSA to dictate siting and routing decisions in contravention of Congress' intent in enacting 49 U.S.C. § 60104(e).

Congress clearly intended to leave siting and routing authority in the hands of the states and did not attempt to limit what policy factors they may consider.

The district court failed to discuss or even acknowledge the above cases. Instead, the court focused on the fact that PHMSA has adopted a purported setback regulation at 49 C.F.R. § 195.210, and thereby concluded that Story County's setbacks were preempted. Add. 78-80; App. 1812-1814; 4:22-cv-00383.R.Doc. 55 at 31-33. The regulation states:

> (a) Pipeline right-of-way must be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly.
>
> (b) No pipeline may be located within 50 feet (15 meters) of any private dwelling, or any industrial building or place of public assembly in which persons work, congregate, or assemble, unless it is provided with at least 12 inches (305 millimeters) of cover in addition to that prescribed in § 195.248.

49 C.F.R. § 195.210

Subpart (a) purports to direct pipeline operators to avoid certain facilities. However, PHMSA has no authority to "prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e). Accordingly, this regulation is ultra vires and invalid. *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998) ("An agency's promulgation of rules without valid statutory authority implicates core notions of the separation of powers, and we are required by Congress to set these regulations aside."). The source of the conflict between

52

the PHMSA regulation and the statutory prohibition against location and routing appears to be a timing issue: The regulation was adopted in 1981, while the statutory provision was not enacted until 1994. *See* 46 F.R. 38357, 38366 (July 27, 1981); Act of July 5, 1994, Pub. L. No. 103-272, Subtit. VIII, Ch. 601, 108 Stat. 745. Thus, Congress voided any regulatory effect of 49 C.F.R. § 195.210(a) to control pipeline routing when it adopted 49 U.S.C. § 60104(e).

Subpart (b) of the regulation is not really a setback. It allows construction within 50 feet of facilities if the pipeline has an additional foot of cover, and thus has no practical impact on route. This subpart is a depth of cover requirement and not a location requirement. This was confirmed by PHMSA during a public meeting held in Des Moines on May 31, 2023. Harold Winnie, PHMSA Program Manager, responded to a question about PHMSA's setback requirements by explaining that while PHMSA promulgates certain depth requirements, "as far as the safety setbacks, we don't regulate the setbacks on pipelines."[3] To the extent this regulation could be construed as a location requirement rather than a depth of cover requirement, it would likewise be invalid pursuant to 49 U.S.C. § 60104(e).

While federal regulations can preempt state laws, they do so only "if the agency, acting within the scope of its delegated authority, intends them to."

---

[3] Available at https://www.onlinevideoservice.com/clients/PHMSA/053123/ at 1:34:24 to 1:35:12. This information was made part of the district court record at 1:22-cv-00020.R.Doc. 59-1 at 10 and 4:22-cv-00383.R.Doc. 31-2 at 9.

*Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 887 (8th Cir. 2005). "In the interest of avoiding unintended encroachment on the authority of the States, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021–22 (8th Cir. 2015) (internal quotations omitted). "This presumption is overcome if it was the 'clear and manifest purpose of [the agency]' to supersede state authority." *Wuebker*, 418 F.3d at 887 (quoting *Rice*, 331 U.S. at 230).

Here, any location or setback requirement in 49 C.F.R. § 195.210 is outside the scope of PHMSA's delegated authority because the PSA does "does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e). "A regulation promulgated by an administrative agency cannot expand the unambiguously expressed preemptive scope set by Congress." *Texas Midstream*, 608 F.3d at 211. In addition, land use and zoning are traditional powers of state and local governments. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 508 (1975) ("zoning laws and their provisions … are peculiarly within the province of state and local legislative authorities."). Nothing in PHMSA's regulations demonstrates a "clear and manifest purpose" to supersede state authority. To the contrary, PHMSA has specifically recognized the authority of local governments to regulate hazardous liquid pipelines through zoning:

54

> PHMSA cannot prescribe the location or routing of a pipeline and cannot prohibit the construction of non-pipeline buildings in proximity to a pipeline. Local governments have traditionally exercised broad powers to regulate land use, including setback distances and property development that includes development in the vicinity of pipelines. Nothing in the federal pipeline safety law impinges on these traditional prerogatives of local—or state—government, so long as officials do not attempt to regulate the field of pipeline safety preempted by federal law.

App. 916; 1:22-cv-00020.R.Doc. 78-1 at 18; App. 1732; 4:22-cv-00383.R.Doc. 46-1 at 18.

Accordingly, the district court erred in finding the setback requirements in Story County's ordinance preempted by the PSA and PHMSA's regulations.

### b. The district court erred in finding the emergency response provisions in both Counties' ordinances preempted.

The district court held that the emergency response provisions in both Counties' ordinances are expressly preempted by the PSA. Add. 46; App. 972; 1:22-cv-00020.R.Doc. 82 at 7; Add. 81; App. 1815; 4:22-cv-00383.R.Doc. 55 at 34. However, as the district court correctly noted in the Story County case, merely requiring a pipeline company to provide a copy of its PHMSA emergency response plan to the County is an "exchange of information," not a preempted "safety standard." Add. 81; App. 1815; 4:22-cv-00383.R.Doc. 55 at 34. That is precisely what both ordinances require. Under the Story County ordinance, a pipeline company is required to provide the County a copy of an emergency response plan which "may be a preliminary or draft version" of its PHMSA plan. App. 1226;

55

4:22-cv-00383.R.Doc. 31-1 at 105. Under the Shelby County ordinance, if PHMSA has adopted regulations specifically related to emergency response (which it has, *see* 49 C.F.R. §§ 195.402, 195.403, 195.416), then the pipeline company is required to provide "documentation of compliance with PHMSA regulations." App. 282; 1:22-cv-00020.R.Doc. 59-2 at 10.

However, both ordinances also require the pipeline company to provide additional information to assist the Counties in their own emergency response planning. *See* App. 282; 1:22-cv-00020.R.Doc. 59-2 at 14 (requiring the pipeline company to describe how they will work with the County's first responders in the event of an emergency); App. 1226; 4:22-cv-00383.R.Doc. 31-1 at 105 (providing that the County may request additional information if the emergency response plan is not sufficient for the County to plan is own emergency response). The district court found that this converted what would otherwise be an "exchange of information" into a preempted safety standard. Add. 81; App. 1815; 4:22-cv-00383.R.Doc. 55 at 34. This was error.

Merely requesting information from a pipeline company is not a "safety standard" because it does not purport to dictate the contents of the pipeline company's federally mandated, internal response plan. The Counties are not regulating the pipeline company's risk assessment, emergency procedure manual, or emergency response training, topics governed by federal regulations. *See, e.g.,*

56

49 C.F.R. §§ 195.402, 195.403, 195.416. Rather, these requirements are intended to provide the Counties with information necessary for them to perform their own legal obligations under Iowa Code chapter 29C to engage in emergency response and hazard mitigation planning. Requirements related to the Counties' own emergency response planning are outside the scope of the PSA, which only applies to "owners or operators of pipeline facilities." 49 U.S.C.A. § 60102(a)(2)(A). In fact, in a recent letter addressed to Summit, PHMSA specifically recognized the authority of local governments in "[d]esigning local emergency response plans and training with regulators and operators" and "[i]mproving emergency response and evacuation plans in the event of a pipeline release." App. 916; 1:22-cv-00020.R.Doc. 46-1 at 18; App. 1732; 4:22-cv-00383.R.Doc. 46-1 at 18. Thus, PHMSA encourages "[s]haring appropriate information with state or local governments and emergency planners, which may include dispersion models or emergency response plans," because doing so "may help stakeholders make risk-informed decisions." App. 917; 1:22-cv-00020.R.Doc. 46-1 at 19; App. 1733; 4:22-cv-00383.R.Doc. 46-1 at 19.

Accordingly, the district court erred in holding that merely requesting information from a pipeline company to assist in the Counties' emergency response planning constitutes a preempted safety standard.

57

### c. The district court erred in finding the abandonment provisions in the Shelby County ordinance preempted.

The district court held that the abandonment provisions in the Shelby County ordinance (Section 8.12) are preempted because the PSA gives exclusive authority to the Secretary of Transportation to regulate abandoned and discontinued pipelines. Add. 46; App. 972; 1:22-cv-00020.R.Doc. 82 at 7. However, section 8.12 of the ordinance only imposes land restoration requirements *after* the pipeline is "abandoned," which is defined in the ordinance to mean "the use of the Hazardous Liquid Pipeline has been discontinued such that there is no longer regulatory oversight of the Pipeline by PHMSA." App. 284; 1:22-cv-00020.R.Doc. 59-2 at 16. The PSA does not apply to pipelines that have been abandoned and thus the district court erred in finding section 8.12 of the ordinance preempted.

Under the PSA, the Secretary of Transportation is required to prescribe minimum safety standards for "pipeline transportation" and "pipeline facilities." 49 U.S.C. § 60102(a)(2). Correspondingly, state authorities are expressly preempted from adopting or continuing in force safety standards for interstate "pipeline facilities" or interstate "pipeline transportation." 49 U.S.C. § 60104(c). The term "pipeline facility" is defined in pertinent part as a "hazardous liquid pipeline facility," meaning a "pipeline, a right of way, a facility, a building, or equipment **used or intended to be used in transporting hazardous liquid**." 49

58

U.S.C. §§ 60101(a)(18), (5) (emphasis added). The term "pipeline transportation" is defined in pertinent part as "transporting hazardous liquid," meaning "the movement of hazardous liquid by pipeline, or the storage of hazardous liquid incidental to the movement of hazardous liquid by pipeline…." *Id.* §§ 60101(a)(19), (22)(A)(i).

A pipeline is "abandoned" when it is permanently removed from service. 49 C.F.R. § 195.2. PHMSA has adopted regulations governing the process of abandoning a pipeline, including "safe disconnection from an operating pipeline system, purging of combustibles, and sealing abandoned facilities." 49 C.F.R. § 195.402(c)(10). Once those steps have been completed and the pipeline is abandoned, the pipeline is no longer "used or intended to be used in transporting hazardous liquid" and thus would not qualify as either a "pipeline facility" or "pipeline transportation." 49 U.S.C. §§ 60101(a)(5), (18), (19), (22)(A)(i). As such, the Secretary of Transportation has no authority to adopt safety standards for abandoned pipelines under 49 U.S.C. § 60102(a)(2), and state and local authorities are not preempted from regulating them under 49 U.S.C. § 60104(c). Accordingly, the district court erred in finding Section 8.12 of the Shelby County ordinance preempted by the PSA.

## **CONCLUSION**

The district court erred in holding that the Counties' ordinances are impliedly preempted by Iowa Code chapter 479B and expressly preempted by the PSA. Accordingly, the district court should be reversed, the preliminary injunction vacated, and the case remanded back to the district court with instructions to enter judgment in favor of the Counties.

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
jcraig@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS-APPELLANTS

60

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,981 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

3.     The electronic version of this brief was generated by printing to pdf from the original word processing file.  It has been scanned for viruses and it is virus-free in compliance with Local Rule 28A(h).

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
jcraig@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS-APPELLANTS

61

## CERTIFICATE OF FILING AND SERVICE

I hereby certify on April 30, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
jcraig@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS-
APPELLANTS

62