## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| No. 23-3758 | No. 23-3760 |
|---|---|
| WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, | WILLIAM COUSER and SUMMIT CARBON SOLUTIONS, LLC, |
| Plaintiffs-Appellees, | Plaintiffs-Appellees, |
| vs. | vs. |
| SHELBY COUNTY, IOWA, et al., | STORY COUNTY, IOWA, et al., |
| Defendants-Appellants. | Defendants-Appellants. |

Appeal from the United States District Court for the
Southern District of Iowa

(1:22-cv-00020-SMR)
(4:22-cv-00383-SMR)

_____

### APPELLANTS' PETITION FOR REHEARING EN BANC
_____

Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515 243-7611
Facsimile: 515-243-2149
jcraig@ahlerslaw.com

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... 2

TABLE OF AUTHORITIES ................................................................... 4

INTRODUCTION AND STATEMENT UNDER
FED. R. APP. P. 40(b)(2) ...................................................................6

ARGUMENT ........................................................................................ 9

  I. The panel majority erred in finding that the Counties' zoning
     ordinances preempted based on the alleged safety motivation of the
     ordinances because such an analysis is contrary to longstanding
     precedent, creates an unworkable standard for local governments, and is
     contrary to the record.. ...................................................................9

       A.   The panel majority's focus on the motive of the Counties in enacting
            the ordinances is contrary to longstanding precedent of the
            Supreme Court.....................................................................10

       B.   The panel majority's decision creates an unworkable standard
            whereby local governments lack a clear standard for determining
            when the lawful consideration of safety becomes an unlawful and
            preempted "safety standard." ...........................................13

       C.   The record does not support the panel majority's determination that
            the Counties' ordinances are safety standards. ..................14

  II. The panel majority erred in addressing federal preemption before state
     preemption because doing so violated the constitutional
     avoidance doctrine. . ...................................................................16

  III. The panel's majority's decision conflicts with decisions from the Fourth
      Circuit and Fifth Circuit holding that local zoning ordinances are not
      preempted safety standards. ...........................................................18

CONCLUSION ...................................................................................22

CERTIFICATE OF COMPLIANCE .................................................. 23

Appellate Case: 23-3760   Page: 2   Date Filed: 07/03/2025 Entry ID: 5533908

CERTIFICATE OF FILING AND SERVICE ...................................................... 24

Appellate Case: 23-3760     Page: 3     Date Filed: 07/03/2025 Entry ID: 5533908

## TABLE OF AUTHORITIES

Cases                                                    Page(s)

*Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*
467 U.S. 138 (1984)...........................................................................7, 16
*Ambassador Books & Video, Inc. v. City of Little Rock, Arkansas*.
20 F.3d 858 (8th Cir. 1994)..............................................................7, 10
*Arizona v. California*
283 U. S. 423 (1931)....................................................................... 10, 12
*Bell Atl. Maryland, Inc. v. Prince George's Cnty., Maryland*
212 F.3d 863 (4th Cir. 2000).....................................................................17
*BellSouth Telecommunications, Inc. v. Town of Palm Beach*
252 F.3d 1169 (11th Cir. 2001) ........................................................7, 17
*Columbia Venture, LLC v. Dewberry & Davis, LLC*
604 F.3d 824 (4th Cir. 2010)............................................................7, 17
*Ehlis v. Shire Richwood, Inc.*
367 F.3d 1013 (8th Cir. 2004)...............................................................16
*Gulf Oil Co. v. Bernard*
452 U.S. 89 (1981)............................................................................7, 16
*Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dept. of Com.*
999 F.2d 354 (8th Cir. 1993)........................................................................9
*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*
461 U.S. 190 (1983).........................................................................12
*Palmer v. Thompson*
403 U. S. 217 (1971)............................................................................10
*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984).................................................................................16
*Portland Pipe Line Corp. v. City of S. Portland*
288 F. Supp. 3d 321 (D. Me. 2017) ........................................ 13, 20, 22
*Rowe v. New Hampshire Motor Transp. Assn.*
552 U. S. 364 (2008)..............................................................................10
*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*
559 U. S. 393 (2010)..............................................................................10
*Texas Midstream Gas Servs. v. City of Grand Prairie*
608 F.3d 200 (5th Cir. 2010)........................................................ 8, 19, 20
*United States v. O'Brien*
391 U.S. 367 (1968).............................................................................7, 10
*Virginia Uranium, Inc. v. Warren*
587 U.S. 761 (2019)........................................................................7, 10, 11

4

*Washington Gas Light Company v. Prince George's County Council*
   711 F.3d 412 (4th Cir. 2013) ................................................................ 8, 18, 19, 21
*Webb v. Exxon Mobil Corp.*
   856 F.3d 1150 (8th Cir. 2017) ....................................................................17

Statutes

49 U.S.C. § 60101 ............................................................................................6
49 U.S.C. § 60102(a)(1) ..................................................................................14
49 U.S.C. § 60102(a)(2) .......................................................................... 9, 15, 21
49 U.S.C. § 60104(c) ........................................................................................9
49 U.S.C. § 60104(e) ........................................................................................9
Iowa Code § 335.5(1) ......................................................................................15
Iowa Code § 357A.2 ........................................................................................16
Iowa Code § 414.23 ........................................................................................16

Rules

Fed. R. App. P. 32(a)(5) ..................................................................................23
Fed. R. App. P. 32(a)(6) ..................................................................................23
Fed. R. App. P. 32(f) ......................................................................................23
Fed. R. App. P. 40(b)(2) ...................................................................................6
Fed. R. App. P. 40(d)(4)(A) .............................................................................23

Appellate Case: 23-3760     Page: 5     Date Filed: 07/03/2025 Entry ID: 5533908

## INTRODUCTION AND STATEMENT
## UNDER FED. R. APP. P. 40(b)(2)

Shelby County, Iowa, and Story County, Iowa (the "Counties"), have enacted zoning ordinances pertaining to hazardous liquid pipelines. The ordinances impose setbacks and other requirements when a pipeline company proposes to route a pipeline through the respective counties. Summit Carbon Solutions, LLC ("Summit") intends to build a carbon capture pipeline across Iowa and through the Counties. Summit filed suit against the Counties seeking declaratory and injunctive that the Counties' zoning ordinances are expressly preempted by the Pipeline Safety Act ("PSA"), 49 U.S.C. § 60101 *et seq.*, and impliedly preempted by Iowa Code chapter 479B. The district court agreed with Summit and enjoined the zoning ordinances. On appeal, the panel upheld the district court's decision, with one judge dissenting in part. As pertinent here, the panel majority held that the setbacks in the ordinances were preempted "safety standards" under the PSA because the Counties were motivated in part by safety concerns when they enacted the zoning ordinances.

Rehearing en banc is appropriate for the following reasons:

*First*, the panel majority's decision conflicts with decisions of the Supreme Court and the Eighth Circuit holding that the Court should not inquire into the motives of state and local laws. The panel majority determined that the setbacks in the ordinance were preempted safety standards under the Pipeline Safety Act by looking "beyond the rationale offered [for the ordinances] to evidence of the law's

6

purpose" and determining that the Counties' "primary motivation" in adopting the zoning ordinances was safety. Panel Decision at 8. This holding conflicts with the "familiar principle of constitutional law" that this Court will not strike down a legislative enactment on the basis of an "alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). The Supreme Court's "precedents have long warned against undertaking potential misadventures into hidden state legislative intentions without a clear statutory mandate for the project." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 776 (2019) (collecting cases). The Eighth Circuit has also recognized this principle in its own decisions. *See, e.g., Ambassador Books & Video, Inc. v. City of Little Rock, Arkansas*. 20 F.3d 858, 863 (8th Cir. 1994) (stating that "[i]nquiries into congressional motives or purposes are a hazardous matter," and that "the principle . . . is equally applicable to municipal ordinances").

*Second*, the panel majority's decision is contrary to the constitutional avoidance doctrine as articulated by the Supreme Court and as applied by the Circuit Courts to questions of federal preemption under the Supremacy Clause. *See, e.g., Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010); *BellSouth Telecommunications, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001). Rather than first addressing whether the setbacks were preempted by state

7

law, the panel majority proceeded directly to a federal preemption analysis under the PSA. This resulted in the panel majority reaching a constitutional question that it may not have needed to address.

*Third*, the panel majority's decision conflicts with authoritative decisions from the Fourth and Fifth Circuits. *See Washington Gas Light Company v. Prince George's County Council*, 711 F.3d 412 (4th Cir. 2013); *Texas Midstream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010). Those decisions held that proper land use regulations are not preempted "safety standards" under the Pipeline Safety Act, even if safety is considered. This is consistent with the views of the federal regulator, PHMSA. In contrast, the panel majority determined the Counties' zoning laws, particularly their setbacks, are preempted by the PSA because they were motivated in part by safety concerns. Therefore, the panel majority's decision introduces inconsistency and confusion into the relationship between federal and local regulations of pipelines because a different standard now exists in the Eighth Circuit than in the Fourth and Fifth Circuits.

8

**ARGUMENT**

I.   **The panel majority erred in finding the Counties' zoning ordinances preempted based on the alleged safety motivation of the ordinances because such an analysis is contrary to longstanding precedent, creates an unworkable standard for local governments, and is contrary to the record.**

The PSA authorizes the Secretary of Transportation to "prescribe minimum safety standards" related to the "design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2). State and local governments are expressly preempted from adopting competing safety standards. 49 U.S.C. § 60104(c); *see also Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dept. of Com.*, 999 F.2d 354, 359 (8th Cir. 1993). However, notably absent from the foregoing list are "safety standards" related to the location and routing of pipelines. In fact, the PSA expressly excludes federal regulation of location and routing: "This chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e).

Rather than undertaking a straightforward analysis of whether the Counties' setbacks are "safety standards" relating to the "design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities," which are preempted, or whether they are "location or routing" regulations, which are not preempted, the

9

panel majority instead undertook a misadventure into local legislative intent. As will be shown below, this was error.

> **A.** **The panel majority's focus on the motive of the Counties in enacting the ordinances is contrary to longstanding precedent of the Supreme Court.**

In analyzing whether the zoning ordinances were preempted, the panel majority stated that it "looks beyond the rationale offered" by the Counties and instead would search for "evidence of the law's purpose" to determine whether the "primary motivation" of the ordinances was safety. Panel Decision at 7-8. This is contrary to the Supreme Court's precedents which have "long warned against undertaking potential misadventures into hidden state legislative intentions without a clear statutory mandate for the project." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 776 (2019) (citing *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U. S. 393, 404–405 (2010); *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U. S. 364, 373–374 (2008); *Palmer v. Thompson*, 403 U. S. 217, 225 (1971); *Arizona v. California*, 283 U. S. 423, 455 n. 7 (1931)); *see also United States v. O'Brien*, 391 U.S. 367, 383 (1968) (stating that "[i]nquiries into congressional motives or purposes are a hazardous matter," and "[i]t is a familiar principal of constitutional law that this Court will not strike down an otherwise constitutional statue on the basis of an alleged illicit legislative motive."). The Eighth Circuit has recognized this principle in its own decisions. *See, e.g., Ambassador Books & Video,*

10

*Inc. v. City of Little Rock, Arkansas*. 20 F.3d 858, 863 (8th Cir. 1994) (stating that "[i]nquiries into congressional motives or purposes are a hazardous matter," and that "the principle . . . is equally applicable to municipal ordinances").

The problems with the panel majority's "primary motivation" approach are well known and well documented. As explained in the lead opinion in *Virginia Uranium*, the effect of regular federal judicial inquiries into state legislative intentions would be to "stifle deliberation in state legislatures and encourage resort to secrecy and subterfuge," contrary to the "open and vigorous debate that our Constitution recognizes as vital to testing ideas and improving law." 587 U.S. at 775. Federal courts would have to allow depositions of state and local lawmakers and hale them into court to cross-examine them about their subjective motivations in passing a statute or ordinance. *Id.* "And at the end of it all, federal courts would risk subjecting similarly situated persons to radically different legal rules as judges uphold and strike down materially identical state regulations based only on the happenstance of judicial assessments of the 'true' intentions lurking behind them." *Id.* at 775-76.

The Court also noted the "well-known conceptual and practical" concerns with inquiring into state legislative intent. *Id.* at 776. "State legislatures are composed of individuals who often pursue legislation for multiple and unexpressed purposes, so what legal rules should determine when and how to ascribe a particular

11

intention to a particular legislator?" *Id.* "What if an impermissible intention existed but wasn't necessary to her vote?" *Id.* "And what percentage of the legislature must harbor the impermissible intention before we can impute it to the collective institution?" *Id.* Thus, inquiring into state law motives "often prove unsatisfactory ventures" because "[w]hat motivates one legislator to vote for a statute is not necessarily what motivates scores of others to enact it." *Id.* at 777.

In this case, the PSA contains no "clear congressional instruction" requiring the Court to inquire into the purposes of state and local laws. Unlike the statute at issue in *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 210 (1983), the PSA makes no mention of state law purpose, motive, or intent. Thus, it was error for the panel majority to inquire into the motives of the Counties in enacting the zoning ordinances. *State of Arizona*, 283 U.S. at 455 ("Into the motives which induced members of Congress to enact the Boulder Canyon Project Act, this court may not inquire."). The panel majority's decision will undoubtedly result in local governments engaging in "secrecy and subterfuge" to hide any safety motivation, and will lead to situations where identical setback ordinances are treated differently for federal preemption purposes based merely on the federal judiciary's determination of the "primary motivation" of the ordinances.

12

**B. The panel majority's decision creates an unworkable standard whereby local governments lack a clear standard for determining when the lawful consideration of safety becomes an unlawful and preempted "safety standard."**

In finding the setback provisions in the Counties' zoning ordinances equated to "safety standards," the panel majority announced a vague and unworkable standard. The panel majority wrote, "This holding does not prohibit local governments from considering safety, nor prevent them from enacting all zoning ordinances, as the Counties suggest. This court emphasizes the distinction between safety *standards*—which the PSA preempts—and safety *considerations*—which the PSA does not preempt." Panel Decision at 9. While the panel majority emphasizes a distinction exists, local governments are left with no clear standard for determining when a safety consideration becomes a safety standard. How much safety is too much safety? And whose intent controls when the ordinance was passed by multiple boards members having different motivations? As the dissent recognized, zoning ordinances "are typically, and understandably, driven by multiple concerns, including economic, environment, and safety." Panel Decision at 19 (Kelly, C.J., dissenting in part). The majority's focus on whether an ordinance was motivated by safety concerns will undoubtedly "invalidate a wide range of state and local laws, even though facially proper under state and local police power." *Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321, 434 (D. Me. 2017).

13

The practical effect of the panel majority's decision is to create a regulatory void. If counties cannot regulate routing based on safety concerns, then state authorities like the Iowa Utilities Commission can't either. This results in a situation where PHMSA can regulate safety standards but can't regulate the location and routing of pipelines, and state authorities can regulate the location and routing of pipelines but can't consider safety. Thus, *no one* can make routing decisions based on safety. This is an absurd result. While attempting to maintain the PSA's scope of federal authority, the panel majority's ruling undercuts the Act's purpose of providing "adequate protection against risks to life and property posed by pipeline transportation." 49 U.S.C. § 60102(a)(1).

### C. The record does not support the panel majority's determination that the Counties' ordinances are safety standards.

The panel majority's decision also ignored those parts of the record demonstrating that the Counties were motivated by traditional land use concerns in addition to safety. The Shelby County ordinance was intended to address three primary concerns: (1) the need for sufficient setbacks to protect the health, safety, and welfare of residents living near the proposed pipeline route and to preserve existing and future uses of land and structures; (2) the negative effect a pipeline in close proximity to existing structures could have on property values and tax revenues; and (3) the stifling of future growth and development, including housing developments, in areas adjacent to the pipeline route. App. 386-390; 1:22-cv-

14

00020.R.Doc. 59-2 at 118-123.  The purpose of Story County's Ordinance No. 311 was to provide for the orderly development, regulation, and control of land in accordance with the County's comprehensive plan.  App. 1219-1222; 4:22-cv-00383.R.Doc. 31-1 at 98-101.  The ordinance does not mention safety at all.

The panel majority, however, focused on the number of references to "safety" in the Shelby County ordinance.  This superficial analysis ignored the fact that in Iowa, all county zoning ordinances must be "designed to…secure safety."  Iowa Code § 335.5(1).  It is a requirement of the use of the police power.  The panel majority also pointed to the equal application of the Counties' setbacks "to economically developed and remote areas" alike as indicative of the setbacks being safety standards.  Panel Decision at 8.  However, generally applicable setbacks across several types of land use is a strong indication that these are land use regulations, not safety standards. Even if the Counties had a concern about safety (a statutory requirement for county zoning in Iowa), the relevant question is whether the PSA's definition of safety standards includes location and routing requirements. It clearly does not. *See* 49 U.S.C. §§ 60102(a)(2), 60104(e).

Additionally, the panel majority determined the Counties' "primary motivation" for imposing setbacks was safety.  However, it did not consider whether each individual setback was adopted with a safety concern. For example, Shelby County adopted a two-mile setback from the city limits of incorporated cities.  App.

15

279; 1:22-cv-00020.R.Doc. 59-2 at 11. This two mile buffer was part of the County's comprehensive plan prior to the adoption of the ordinance and is intended to allow for future city growth. App. 288; 1:22-cv-00020.R.Doc. 59-2 at 20 (9:20-10:12). It is based on Iowa cities' extra territorial zoning authority and a city's right to serve water within two miles of city limits. *See* Iowa Code §§ 414.23 and 357A.2. That two-mile buffer has nothing to do with safety. Similarly, Story County's quarter mile setback was based on historical land division practices. App. 1220; 4:22-cv-00383.R.Doc. 31-1 at 99. That setback distance also has nothing to do with safety. It was thus error for the panel majority to nullify all of the Counties' setbacks based on a blanket assertion that they are safety standards.

## II. The panel majority erred in addressing federal preemption before state preemption because doing so violated the constitutional avoidance doctrine.

"[A] fundamental rule of judicial restraint [is]. . . that [federal courts] will not reach constitutional questions in advance of the necessity of deciding them." *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984). Instead, "federal courts must consider nonconstitutional ground for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1019 (8th Cir. 2004) (declining to reach a question of federal statutory preemption after resolving the case on state tort grounds); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984) ("a federal

16

court may resolve a case solely on the basis of a pendent state-law claim … and that in fact the court usually should do so in order to avoid federal constitutional questions….").

"[F]ederal preemption of state law is a constitutional question because it is premised on the Supremacy Clause of the United States Constitution, and when a party provides alternative independent state law grounds for disposing of a case, courts should not decide the constitutional question of preemption before considering the state law grounds." *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010); *see also Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1157 (8th Cir. 2017) ("Because we conclude the claims fail under Arkansas law, we need not consider issues of federal preemption . . . ."); *BellSouth Telecommunications, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001) (holding that state preemption should be considered before federal preemption); *Bell Atl. Maryland, Inc. v. Prince George's Cnty., Maryland*, 212 F.3d 863, 865–66 (4th Cir. 2000) (holding that the district court committed reversible error "by deciding the constitutional question of preemption in advance of considering the state law questions upon which the case might have been disposed of.").

On appeal, the Counties asked the panel to first decide whether the district court erred in finding sections of the zoning ordinances to have been impliedly

17

preempted by state law, and subsequently to review the preemption holdings under federal law. However, the panel majority opened its analysis with the Supremacy Clause of the federal Constitution and dove directly into a federal preemption analysis under the PSA. Panel Decision at 5. As a result, the panel did not address whether the setbacks were preempted under state law. Panel Decision at 15 n. 3. This was backwards and resulted in the panel reaching a constitutional question that it may not have needed to address, contrary to the constitutional avoidance doctrine.

**III.**    **The panel majority's decision conflicts with decisions from the Fourth Circuit and Fifth Circuit holding that local zoning ordinances are not preempted safety standards.**

The panel majority's decision that zoning setbacks are preempted safety standards under the PSA conflicts with decisions from the Fourth and Fifth Circuits. In *Washington Gas Light Company v. Prince George's County Council*, 711 F.3d 412 (4th Cir. 2013), the pipeline company sought approval from the county to build a liquefied natural gas storage facility. *Id.* at 414. The county denied the request because the county zoning plans prohibited all industrial usage near the proposed facility. *Id.* at 415. The pipeline company filed a complaint in federal court seeking declaratory and injunctive relief that the county zoning plan was preempted by the PSA and unenforceable. *Id.* at 416. The pipeline company argued that county zoning plans were preempted expressly, impliedly, and by conflict. *Id.* at 420. The Fourth Circuit Court of Appeals disagreed "on all counts." *Id.*

18

The court held that because the county zoning plans were not safety regulations, they did not come within the express preemption provision of the PSA. *Id.* at 421. The court reviewed the zoning plan and determined they were proper land use regulations. *Id.* The court found it "of no moment" that the county zoning plan had the effect of completely prohibiting the pipeline company from using its preferred location because "[l]ogically, the power to impose a zoning requirement includes the power to preclude any proposed usage of the zoned area that cannot comply with such requirement." *Id.* The court also rejected the pipeline company's argument that the zoning plans were "safety regulations in disguise." *Id.* The court held that even if safety concerns played a part in the enactment of the county zoning plans, this was "insufficient to justify a finding that the County Zoning Plans were, in fact, safety regulations." *Id.* at 421-22.

In *Texas Midstream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010), a gas company sought to construct an interstate natural gas pipeline facility in Grand Prairie, Texas. *Id.* at 203. Under the city's zoning regulations, the facility would have to comply with a 300-foot setback requirement. *Id.* at 204. The gas company sought a declaration that the setback requirement was preempted by the PSA. The Fifth Circuit framed the issue as "whether the setback requirement is a 'safety standard.'" *Id.* at 211. The court held that "[i]t is not." *Id.* While the setback requirement might have an incidental effect on safety, it did not convert the

19

setback into a safety standard because it was "not a safety standard in letter, purpose, or effect," and, therefore, "[i]t may remain in force." *Id.* at 211-12. *See also Portland Pipe Line Corporation*, 288 F.Supp.3d at 431-434 (holding that "local zoning prohibitions are not preempted by pipeline safety regulations," and disavowing the "need to conduct a search inquiry into the purpose or intent of the Ordinance.").

The above decisions are consistent with the views of PHMSA itself. PHMSA "continues to support and encourage all three levels of government—federal, state, and local—working collaboratively to ensure the nation's pipeline systems are constructed and operated in a manner that protects public safety and the environment." App. 914; 1:22-cv-00020.R.Doc. 78-1 at 16. PHMSA recognizes the authority of local governments to "contribute in many ways to the safety of their citizens," including through "[r]estricting land use and development along pipeline rights-of-way through zoning, setbacks, and similar measures." App. 914; 1:22-cv-00020.R.Doc. 78-1 at 18. According to PHMSA, "Nothing in the federal pipeline safety law impinges on these traditional prerogatives of local—or state—government, so long as officials do not attempt to regulate the field of pipeline safety preempted by federal law." *Id.*

The decisions in *Washington Gas Light* and *Texas Midstream*, and the guidance from PHMSA, make it clear that the PSA does not prohibit state and local

Appellate Case: 23-3760     Page: 20     Date Filed: 07/03/2025 Entry ID: 5533908

governments from considering safety when routing pipelines or enacting zoning ordinances. Rather, the PSA only prohibits state and local governments from attempting to regulate the preempted field of pipeline safety standards relating to the "design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2). In other words, a county cannot adopt an ordinance that is nominally a zoning ordinance but has the actual effect of regulating things like pipe diameter, pipe wall thickness, etc. which are the exclusive prerogative of PHMSA.[1] That is why the courts in *Washington Gas Light* and *Texas Midstream* reviewed the zoning ordinances to ensure they were proper land use regulations and not "safety standards in disguise."

The panel majority's decision, however, turns that analysis on its head. Rather than examining whether the Counties' zoning ordinances are proper land use regulations, the panel majority instead focused on whether the zoning ordinances had a safety motivation. Such an analysis is not supported by the language of the PSA, is contrary to the decisions in *Washington Gas Light* and *Texas Midstream*, is contrary to the views of PHMSA, and will "potentially invalidate a wide range of

---

[1] That was the problem with Story County's original ordinance and why it was repealed. It included a sliding setback based on pipe diameter. App. 1216; 4:22-cv-00383.R.Doc. 31-1 at 95. Thus, it could have been viewed as an attempt by the County to indirectly regulate pipe diameter through zoning.

state and local laws, even though facially proper under state and local police power."

*Portland Pipe Line Company*, 288 F.Supp.3d at 434.

## CONCLUSION

The panel majority's decision is contrary to longstanding precedent rejecting the inquiry into the motives of state and local legislation, creates an unworkable standard for local governments, violates the constitutional avoidance doctrine, and is inconsistent with decisions from the Fourth and Fifth Circuit and the views of PHMSA. Accordingly, the Court should rehear this matter en banc.

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
Email: jcraig@ahlerslaw.com
ATTORNEYS FOR APPELLANTS

22

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 40(d)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,883 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

3.      The electronic version of this document was generated by printing to pdf from the original word processing file.  It has been scanned for viruses and it is virus-free in compliance with Local Rule 28A(h).

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
Email: jcraig@ahlerslaw.com
ATTORNEYS FOR APPELLANTS

Appellate Case: 23-3760     Page: 23     Date Filed: 07/03/2025 Entry ID: 5533908

## CERTIFICATE OF FILING AND SERVICE

I hereby certify on July 3, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jason M. Craig*
Jason M. Craig (AT0001707)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: (515) 243-7611
Facsimile: (515) 243-2149
Email: jcraig@ahlerslaw.com
ATTORNEYS FOR APPELLANTS

4911-6845-8578-2\22102-021

24